**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ROBERT I. TOUSSIE,

                        Plaintiff,

      -against-

WILLIAMS & CONNOLLY, LLP,
JOSEPH G. PETROSINELLI,
DAVID A. FORKNER,
JONATHAN E. PAHL,
LUPKIN & ASSOCIATES, PLLC,
JONATHAN D. LUPKIN, and
REBECCA C. SMITHWICK,

                        Defendants.

No. 1:20-cv-5921 (DG) (RLM)

---

### ANSWER OF DEFENDANTS WILLIAMS & CONNOLLY LLP, JOSEPH G. PETROSINELLI, DAVID A. FORKNER, AND JONATHAN E. PAHL TO ROBERT I. TOUSSIE'S AMENDED COMPLAINT

Williams & Connolly LLP ("**W&C**"), Joseph G. Petrosinelli, David A. Forkner and Jonathan E. Pahl (together with W&C, the "**W&C Defendants**") *won a $7.8 million judgment* for Plaintiff Robert Toussie ("**Toussie**") and his brother Michael (together, the "**Toussies**") in an arbitration before Hon. E. Leo Milonas (the "**Arbitrator**").[1] That is exactly what Toussie wanted. After the Arbitrator issued the Arbitration Award, Toussies' adversaries made numerous settlement overtures, including an informal proposal that would have provided him with a secured payment stream and relieve him of trying to collect from a potentially judgment-proof debtor. *The W&C Defendants recommended to him that he pursue a settlement and take a secured payment stream, warning him that he may not be able to collect on the lump sum*

---

[1]     All terms not defined by the W&C Defendants have the meanings ascribed to them in the Amended Complaint.

***award given a secured creditor who had priority over him.***  He refused.  He wanted a judgment, and he wanted it now.  And what the W&C Defendants warned about came to pass:  Toussie got his $7.8 million judgment but, in the end, has been unable to collect on it.

The Complaint turns these facts inside out—falsely alleging that the W&C Defendants failed to advise Toussie of the alleged offer to provide him a secured interest, and failed to advise him that he might not be able to collect on his judgment.  In fact the W&C Defendants provided just that advice, and he rejected it.  The falsity of Toussie's allegations is proven by contemporaneous correspondence, detailed below.  The W&C Defendants did forward the alleged settlement offer to Toussie, did warn him of the possibility he might not otherwise collect, and did recommend that he pursue settlement.  But Toussie rejected that advice.  He has only himself to blame for his current buyer's remorse.

Below are the enumerated allegations in the Amended Complaint, followed by the W&C Defendants' response to each allegation.  The W&C Defendants emphatically deny all allegations of negligence and breach of fiduciary duty.  To the extent not expressly admitted, the allegations of the Amended Complaint are hereby denied. To each of the Amended Complaint's numbered paragraphs, the W&C Defendants answer as follows:

1.    <u>Allegations</u>: This is an action for legal malpractice brought by Toussie against Williams & Connolly, LLP, Joseph G. Petrosinelli, David A. Forkner, Jonathan E. Pahl, Lupkin & Associates, PLLC, Jonathan D. Lupkin and Rebecca C. Smithwick, his legal counsels in the action entitled "In the Matter of the Application of Robert Toussie and Michael Toussie v. Coastal Development, LLC and Richard Fields" filed in the Supreme Court of the State of New York, County of New York, under Index No. 650227/2016 which sought to compel an arbitration regarding the Toussies' enforcement of their rights pursuant to a Participation

Agreement between those parties dated September 1, 2000 and the Settlement Agreement dated February 10, 2006 (the "Coastal Litigation"). These law firms, and their respective attorneys, were retained to protect Toussie's interests in the Coastal Litigation. As Toussie's counsel, the Defendants were responsible for, among other things, providing legal representation to Toussie in connection with the Arbitration proceedings and the judgment entered in the Coastal Litigation. Critical to carrying out this duty, the Defendants were responsible for properly advising Toussie regarding the enforcement of his rights pursuant to the Participation Agreement and the Settlement Agreement including, but not limited to, creation of a judgment in favor of Toussie and his brother, Michael Toussie (the "Judgment") and against Richard Fields and Coastal Development, LLC, and the repercussions of entry of that Judgment on the enforcement of Toussie's rights under the Participation Agreement and the Settlement Agreement. Toussie relied on the Defendants to litigate the contract enforcement matters, to provide legal advice concerning the effect of the entry of that Judgment in the Coastal Litigation, to calculate how that Judgment would affect Toussie's ability to enforce same on the assets of Richard Fields and Coastal Development, LLC and to analyze questions of priority that would affect the Judgment with regard to the multi-million dollar debt held by Stabilis Fund IV, LP through its' wholly owned subsidiary, SFIV SS-1, LLC, as creditors of Richard Fields and Coastal Development, LLC.

Answer:  Paragraph 1 of the Amended Complaint contains legal conclusions as to which no response is required.  To the extent any response is required, the W&C Defendants deny the allegations in paragraph 1 of the Amended Complaint, except admit that Toussie purports to bring an action for legal malpractice and that the W&C Defendants served as counsel to Toussie and his brother, Michael Toussie (together, the "**Toussies**"), in the Coastal Litigation.

2.      <u>Allegations</u>: Toussie's claim against the Defendants arises out of the Defendant's [*sic*] negligence in performing their duties, including their failure to adequately advise Toussie of the choice between accepting the Judgment or accepting a continuing stream of payments to him, regarding the effect of the entry of that Judgment in the Coastal Litigation and what effect it would have on the Toussie's ownership rights in the Participation Interest granted him under the Participation Agreement and the Settlement Agreement, the priority which secured debt owed by Richard Fields and Coastal Development, LLC to Stabilis Fund IV, LP and its' wholly owned subsidiary, SFIV SS-1, LLC (the "Secured Debt") would have over the Judgment and the ability of Toussie to enforce the Judgment against the assets of Richard Fields and Coastal development, LLC given the junior secured status accorded to the Judgment as a matter of law compared to the Secured Debt. The Defendant's [*sic*] malpractice culminated in their arranging the entry of the Judgment in the Coastal Litigation on July 17, 2017 which effectively terminated Toussie's Participation Interests in the Tranche B Payments paid to Coastal Development, LLC in which Toussie (and others) held a 11.7847% ownership interest and relegated Toussie's rights to that of a junior judgment creditor subject to the rights of a senior secured lender who asserts an $80 million priority over the Judgment which is secured by all the present and future assets of Coastal Development, LLC and Richard Fields and renders the Judgment, therefore, illusory, worthless and unenforceable. The senior priority debt far exceeds any possible payout on the junior judgment such that Toussie will not receive any payments. The Defendants had a duty and obligation as Toussie's counsel to identify the financial and legal effect of agreeing to the Judgment on the Toussie Participation Interest pursuant to the Participation Agreement and the Settlement Agreement and advise Toussie of the legal effect of same.

Answer: Paragraph 2 of the Amended Complaint contains legal conclusions as to which no response is required.  To the extent any response is required, the W&C Defendants admit that judgment was entered in the Coastal Litigation on July 17, 2017, lack knowledge or information sufficient to form a belief as to the truth of the allegation that the "senior priority debt far exceeds any possible payout on the junior judgment such that Toussie will not receive any payments," and otherwise deny the allegations in paragraph 2 of the Amended Complaint.  On April 27, 2017, the W&C Defendants sent an email to the Toussies reiterating that there were risks to enforcing judgment:

> Bob & Michael:
>
> Yesterday afternoon, Justice Ramos confirmed the arbitration award. He rejected Coastal and Fields' arguments, and ruled in your favor, finding that the arbitration was conducted fairly and that Justice Milonas was authorized to issue the award.
>
> Here's what happens next: we will need to "settle" a written order with the court, and then we will ask the court to enter judgment. Due to a backlog, the process of entering judgment can take several months.
>
> Coastal and Fields' secured lender has said it will begin seizing assets once judgment is entered. That threat of course gives us additional leverage. Now is the time for Coastal/Fields to put their best offer on the table if they want to resolve this matter. We understand that your preference to date has been to proceed to judgment enforcement. But, as we have discussed, there are risks in doing so. We should set up a time early next week to discuss our strategy going forward. Please let us know your availability.

See Ex. 1 (4/27/2017 email from J. Pahl to M. Toussie and R. Toussie, copying D. Forkner, J. Lupkin and J. Petrosinelli, re: Coastal/Fields – Privileged & Confidential (emphasis added), with attached letter).

The W&C Defendants also forwarded to the Toussies an April 25, 2017 letter from Carmen Beauchamp Ciparick, formerly Senior Associate Judge of the New York Court of Appeals and counsel to some of Coastal's creditors, describing the proposed settlement.  See Ex. 2 (4/25/2017 letter from C. Ciparick to J. Pahl and J. Lupkin) (the "**April 25 Letter**").  In the

April 25 Letter, which recites that it was written to allow Toussie to "meaningfully choose between accepting the proposed settlement (i.e. a security interest in the Seminole cash flow plus attorney's fees) or seeking to enforce a judgment" (*id.* at 1), Judge Ciparick outlined what the creditors believed as the risks of proceeding to judgment:

> Additionally, <u>we believe that your clients' refusal to accept a lien to secure the Toussie Seminole cash flow plus legal fees may have the following adverse consequences</u> for them:
>
> 1. **Diminished Guaranty Value.** The value of Fields' personal guaranty … will be diminished dramatically if judgment is entered. <u>Any foreclosure on assets … will result in a significantly decreased recovery from any sale in foreclosure and less funds available to pay a judgment, as numerous other creditors have security interests in those assets and such a judgment would be subordinate to those interests.</u>
>
> 2. **Termination of Casino Cash Flow.** <u>The Seminole Tribe … may terminate all obligations to Fields</u>, claiming it cannot be obligated to continue business with Fields based on his financial circumstances. …
>
> 3. **Appeal of Toussie Judgment/Enforcement Litigation Uncertainty.** Fields will appeal the Toussie judgment. That lack of resolution … will impede any Toussie efforts to collect anything in the event assets do become available in the future. There will thus be additional attorney's fees for all parties incurred and no resolution for possibly an additional two years.
>
> 4. **Zero Toussie Cash Flow.** Pending the anticipated over two years of appeals and enforcement proceedings, including likely disputes with competing creditors, <u>the Toussies will receive no cash flow from their contract with Fields as they would have a judgment, and the monthly payment obligation would cease.</u>
>
> 5. **Unlikely Recovery of Attorney's Fees.** Even if the Toussies eventually are able to enforce a judgment over the next decade, the costs that the Toussies will incur to collect such a judgment will likely be high given the numerous creditors involved and are not likely to be recoverable.

*See id.* at 2 (underscoring added; bold in original).

On May 3, 2017, the W&C Defendants sent another email to the Toussies outlining the "two primary options" available to them—proceeding to enforce judgment or pursuing a settlement that would allow the Toussies to become a *secured* creditor with the right to receive monthly payments directly from Power Plant—as well as advising Toussie of the risks of pursuing judgment enforcement. *See* Ex. 3 (5/3/2017 email from J. Pahl to R. Toussie and M. Toussie, copying D. Forkner and J. Lupkin re: Coastal/Fields – Privileged & Confidential). The W&C Defendants explained Toussie's choices in detail and ended the email by <u>recommending settlement</u>:

> Bob & Michael:
>
> As you know, Justice Ramos confirmed the arbitration award last week. The award is for nearly $6.7 million, representing the present value of your portion of the Seminole stream payments, plus slightly more than $800K to compensate you for attorneys' fees incurred through the end of the arbitration. Here are the two primary options we see and some likely milestones for each:
>
> **Option 1: Pursue judgment enforcement**
> - The order confirming the award will be "settled" and judgment entered. That process will take several months.
> - Coastal and Fields have said they will appeal the judgment.
>   - An appeal can take substantial time - perhaps a year or longer.
>   - Coastal/Fields would ask the appellate court to reverse Justice Ramos' order and vacate the arbitration award.
>   - The appeal will add to your legal bills.
> - <u>Ed Wallace has said Coastal/Fields will not post an appeal bond, so judgment collection efforts would begin</u>.
> - <u>With a judgment of this size, Coastal/Fields' lender(s) could declare a default</u>.
>   - <u>Upon a default, a race to seize assets would begin</u>. That race might proceed in bankruptcy; it might not.
>   - <u>You would stop receiving the $41K you receive per month</u>.
> - With a judgment, you would get discovery into Coastal/Fields' assets but would have to pay lawyers to investigate.
>   - You would have to pay lawyers to pursue the assets, perhaps in multiple jurisdictions, and then collect.

- o The structure of Coastal/Fields' corporate hierarchy could hinder your efforts to collect the judgment.
  - o You could pursue legal action against other creditors and banks, but doing so would be costly and the outcome uncertain.
- The appeal could complicate judgment collection, delaying any recovery (if any) and adding to your costs.
- To recover legal fees incurred since the arbitration (and those going forward), you would have recourse only to the Fields' guaranty.
  - o That guaranty may not be worth much if he defaults.
  - o You may need to initiate a new legal proceeding to obtain those fees. That proceeding may or may not be successful.
- <u>If Coastal/Fields and their lenders are to be believed, there is a significant risk you could go through the entire process, add substantially to your costs and fees, and recover nothing</u>.

**Option 2: Use your leverage to pursue a favorable settlement**

- Ideally, the settlement would need to have the following elements:
  - o You would receive your monthly payments directly from Power Plant.
  - o You would be paid your attorney's fees. .
  - o <u>You would become a *secured* creditor with rights to seize your portion of the stream upon future defaults - and Coastal and Fields' secured lender (Stabilis) would recognize the validity of your interest</u>.
- In light of the order confirming the arbitration award, we might seek other terms, possibly including:
  - o Asking for the $7,500 per month that you gave up in the last iteration of the dispute
  - o Trying to obtain pre-judgment interest on the arbitration award.
  - o Seeking carve-outs from the settlement to allow you to pursue claims against certain entities.

<u>Based on what we know, Option 2 provides a clearer path forward</u>. It would allow you to receive your payment stream directly from Power Plant, thus separating yourselves from Coastal and Fields. Coastal/Fields' secured lender would recognize the validity of your interest. Both of those developments would substantially improve your position over where you were in October 2015 when this began. Furthermore, you would recover your attorneys' fees.

*Id.* at 1-2 (underscoring added; bold in original).

These communications prove that, contrary to allegations in the Amended Complaint,

Defendants (i) advised Toussie of the risks of proceeding to enforce judgment, and

(ii) recommended pursuing a settlement that would have provided Toussie a continuing interest in payments due under the participation agreement (with amendments thereto, the **"Participation Agreement"**).  Toussie rejected that advice.

3.      Allegations: The Defendants' failure to properly carry out their duties to Toussie is all the more egregious because the Defendants vigorously touted their special expertise in handling contract enforcement actions.  That purported expertise led Toussie to retain the Defendants for the Coastal Litigation.  However, in spite of the Defendants [*sic*] highly promoted experience with contract enforcement litigation, the Defendants failed to properly advise Toussie of the complete financial effect the Judgment would have on Toussie's ownership rights and ability to collect breach of contract damages in the Participation Agreement and failed to advise Toussie that there was a senior secured lender who asserts an $80 million priority over all of the assets of Coastal Development LLC and Richard Fields (both present and future), which it [*sic*] knew or should have known existed, and which would render the Judgment illusory, worthless and unenforceable as a matter of law.

Answer: The W&C Defendants deny the allegations in paragraph 3 of the Amended Complaint, except lack knowledge or information sufficient to form a belief as to the truth of the allegation regarding Toussie's reason for retaining Defendants.  As quoted above, the W&C Defendants expressly warned Toussie of the risks in trying to collect on the judgment, and that Stabilis was a secured lender with priority over Toussie.

4.      Allegations: In failing to properly advise Toussie of the legal effect of the entry of the Judgment on Toussie's ownership rights pursuant to the Participation Agreement and Settlement Agreement and on Toussie's ability to enforce the Judgment given the superior lien of Stabilis Fund IV, LP and its' wholly owned subsidiary SFIV SS-1, LLC on all of Richard Fields

and Coastal Development, LLC's assets, both present and future, the Defendants, failed to exercise the care, skill, and diligence required of members of the legal profession.

Answer: The W&C Defendants deny the allegations in paragraph 4 of the Amended Complaint.

5.    Allegations: As a direct and proximate result of the Defendants' malpractice, Toussie has suffered and continues to suffer substantial damages.

Answer: The W&C Defendants deny the allegations in paragraph 5 of the Amended Complaint.

6.    Allegations: Plaintiff Robert Toussie is a resident of the County of Kings, State of New York.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Amended Complaint.

7.    Allegations: Defendant Williams & Connolly LLP is a limited liability partnership, with its principal office located at 725 Twelfth Street, N.W. Washington, D.C. 20005.

Answer: The W&C Defendants admit the allegations in paragraph 7 of the Amended Complaint.

8.    Allegations: Defendants, Joseph G. Petrosinelli, David A. Forkner, Jonathan E. Pahl, are attorneys associated with Williams & Connolly, LLP and maintain a business address at 725 Twelfth. [*sic*] Street, N.W. Washington, D.C. 20005.

Answer: The W&C Defendants admit that Joseph G. Petrosinelli and David A. Forkner are each Partners of Williams & Connolly LLP and maintain a business address at 725 Twelfth Street, N.W. Washington, D.C. 20005.  The W&C Defendants further admit that Jonathan E.

Pahl is an attorney who was formerly employed by Williams & Connolly LLP. The W&C Defendants deny the remaining allegations of paragraph 8 of the Amended Complaint.

9.      Allegations: Defendant Lupkin & Associates, PLLC is a professional limited liability company with its principal office located at 80 Broad Street, Suite 1301, New York, NY 10004.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 9 of the Amended Complaint.

10.     Allegations: The Defendants Jonathan D. Lupkin and Rebecca C. Smithwick are attorneys associated with Lupkin & Associates, PLLC and maintain a business address at 80 Broad Street, Suite 1301, New York, NY 10004.

Answer:  The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 10 of the Amended Complaint.

11.     Allegations: In 2000, Coastal Development LLC ("Coastal") and Richard Fields ("Fields"), along with another entity, Native American Development LLC ("NAD"), hoped to develop two Hard Rock branded casino projects in Florida on land belonging to the Seminole Tribe of Florida (the "Tribe").

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 11 of the Amended Complaint.

12.     Allegations: Coastal and NAD formed an entity, Power Plant Entertainment LLC ("Power Plant"), which entered into agreements with the Tribe to develop the casinos.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 12 of the Amended Complaint.

13.    <u>Allegations</u>: The agreements entitled Power Plant to certain casino revenues and profits.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 13 of the Amended Complaint.

14.    <u>Allegations</u>: The Toussies invested $2.88 million with Richard Fields and Coastal Development, LLC in return for a participation interest (11.7847%) to be paid into a separate bank account as the "property of the Toussies".

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 14 of the Amended Complaint, except admit upon information and belief that the Toussies invested $2.88 million pursuant to the Participation Agreement, and the rights of the parties to the Participation Agreement were set forth in the Participation Agreement.  The W&C Defendants respectfully refer the Court to the Participation Agreement for its contents.

15.    <u>Allegations</u>: On September 1, 2000, Claimants Robert and Michael Toussie (the "Toussies") and Coastal and Fields entered into a participation agreement (the "Participation Agreement").

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 15 of the Amended Complaint and respectfully refer the Court to the Participation Agreement for its contents.

16.    <u>Allegations</u>: The Participation Agreement obligated the Toussies to invest several million dollars into Power Plant for the purpose of enabling Coastal and Fields to develop the casinos.

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 16 of the Amended Complaint.

17.   <u>Allegations</u>: Coastal in turn "s[old], transfer[red], grant[ed] and convey[ed] to the [Toussies] an undivided 11.7647 percent participation interest" in all "distributions," as defined by the Participation Agreement, that Coastal receives from Power Plant or with respect to the casinos.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 17 of the Amended Complaint, except aver that, upon information and belief, the Participation Agreement conveyed to the Toussies an undivided 11.7647% participation interest in the Distributions (as defined in the Participation Agreement), "if, as and when received by Coastal," and respectfully refer the Court to the Participation Agreement for its terms.

18.   <u>Allegations</u>: The Participation Agreement required that Coastal establish a segregated bank account into which Coastal would receive distributions and hold the Toussies' share for their benefit, as their property.  Specifically, paragraph 6(b) states: "Within 30 days after the date hereof Coastal shall establish a separate bank account at a New York City bank into which all cash Distributions receivable by Coastal shall be deposited, from which all Distributions received by Coastal shall be disbursed, and into which no other funds shall be deposited.  11.7647% of the Distributions deposited in such account shall be for the account of the [Toussies] in respect of the Participation Interest and, accordingly, shall be the property of the [Toussies]."

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 18 of the Amended Complaint, and respectfully refer the Court to the Participation Agreement for its terms.

19.    <u>Allegations</u>: On September 1, 2000, Fields executed a guaranty (the "Guaranty") in which he personally guaranteed payment and performance of Coastal's obligations in the Participation Agreement.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 19 of the Amended Complaint and respectfully refer the Court to the Guaranty for its terms.

20.    <u>Allegations</u>: In the Guaranty, Fields promised to reimburse the Toussies for "any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) paid or incurred by the [Toussies] in enforcing (other than wrongfully) this Guaranty[.]"

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 20 of the Amended Complaint, and respectfully refer the Court to the Guaranty for its terms.  The W&C Defendants aver that in the Arbitration Award, the Arbitrator awarded the Toussies $812,340 for attorneys' fees incurred in the Coastal Litigation, finding (Arbitration Award ¶63) that the "$812,340 of attorneys' fees the Toussies incurred is reasonable in light of the amounts in controversy and the nature of the proceeding.  The billing rates are within the normal range for work of this type, the staffing of the matter was reasonable, and the amount of work appropriate for hard-fought litigation, especially given Coastal and Fields' conduct."

21.    <u>Allegations</u>: The Toussies paid Coastal $2.88 million, fulfilling their funding obligations.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 21 of the Amended Complaint.

22.     <u>Allegations</u>: After the casinos opened, Coastal and Fields began receiving tens of millions of dollars of distributions but did not pay the Toussies.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 22 of the Amended Complaint.

23.     <u>Allegations</u>: When Fields and Coastal refused to pay the Toussies pursuant to the Participation Agreement, the Toussies filed a lawsuit against Coastal and Fields in the Supreme Court of the State of New York, New York County under Index No. 04/601540.

<u>Answer</u>: In response to paragraph 23 of the Amended Complaint, the W&C Defendants admit that the Toussies filed a lawsuit against Coastal and Fields in the Supreme Court of the State of New York, New York County, Index No. 601540/2004, and admit upon information and belief the remaining allegations in paragraph 23.  The W&C Defendants further aver that the Toussies were represented by W&C, which filed the lawsuit on their behalf.

24.     <u>Allegations</u>: The parties executed a settlement agreement on February 10, 2006, in which Coastal and Fields agreed to pay the Toussies more than $10.6 million constituting payments then due under the Participation Agreement (the "Settlement Agreement").

<u>Answer</u>: The W&C Defendants admit the allegations in paragraph 24 of the Amended Complaint, except clarify that the "parties" to the Settlement Agreement were the Toussies, Fields, Coastal and, by their nominee father, Isaac Toussie and Danielle Toussie, and respectfully refer the Court to the Settlement Agreement for its terms.  The W&C Defendants further aver that, through the Settlement Agreement, W&C secured for the Toussies a lump sum of more than $10.6 million—in itself more than triple the Toussies' original investment of $2.88 million.

25.     Allegations: The Settlement Agreement contains a provision requiring the parties to resolve any further disputes regarding the Toussies' rights under the Participation Agreement via arbitration.

Answer: The W&C Defendants deny the allegations in paragraph 25 of the Amended Complaint, except admit that the Settlement Agreement required certain disputes to be resolved by arbitration, and respectfully refer the Court to the Settlement Agreement for its terms.

26.     Allegations: In April 2007, Power Plant and the Tribe resolved certain disputes between them through a settlement agreement (the "Seminole Settlement").

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 26 of the Amended Complaint.

27.     Allegations: Pursuant to the Seminole Settlement Power Plant received a lump sum payment of $643,580,730.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 27 of the Amended Complaint, and aver that, upon information and belief, of the $643,580,730 received by Power Plant, Coastal received a lump sum payment in excess of $200 million.  After Coastal refused to pay the Toussies their share of the $200 million distribution, the Toussies commenced an arbitration—in which they were represented by W&C—resulting in another recovery for the Toussies, this one for more than $27 million, almost ten times the Toussies' original $2.88 million investment.

28.     Allegations: The Seminole Settlement was structured as a loan, such that Power Plant would pay back the lump sum amount over time. To accomplish that, the Seminole Settlement re-allocated revenues from the Seminole casinos. Some revenues, called Tranche A, would be used to repay the loan. Other revenues, called Tranche B, would go to Power Plant.

Answer:  The W&C Defendants admit upon information and belief the allegations in paragraph 28 of the Amended Complaint, and respectfully refer the Court to the Seminole Settlement for its contents.

29.    Allegations: The Tranche B payments paid to Power Plant from the Tribe are set at $925,000 per month.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Amended Complaint, except admit upon information and belief that at one time the Tranche B payments required to be paid to Power Plant by the Tribe were set at $925,000 per month, and respectfully refer the Court to the Seminole Settlement for its terms.

30.    Allegations: The Tranche B payments have been paid to Power Plant from the Tribe every month since the Seminole Settlement went into effect.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Amended Complaint.

31.    Allegations: The Tranche B payments are scheduled to continue to be paid to Power Plant from the Tribe until April 2029.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Amended Complaint, except admit upon information and belief that at one time the Tranche B payments were scheduled to be paid to Power Plant from the Tribe until April 2029.

32.    Allegations: Coastal owns 45 percent of Power Plant, and $416,250 is 45 percent of the monthly Tranche B payments. Toussie's portion of this monthly payment is $48,970.56[1].

Answer: The W&C Defendants deny the allegations in paragraph 32 of the Amended Complaint, except admit upon information and belief that at one time Coastal owned 45% of Power Plant, that $416,250 was 45% of the monthly Tranche B payments, that under the terms of the Participation Agreement, the Toussies' portion of this monthly payment was $48,970.56, and that the Arbitration Award discontinued the obligation of the Toussies to reimburse Coastal and Fields for $7,500 per month of expenses, and respectfully refer the Court to the Participation Agreement, Seminole Settlement, and Arbitration Award for their contents.

33.    Allegations: Coastal and Fields began using debt to finance Fields's luxury lifestyle. They bought homes in New York City, Westchester County, and Miami; property in Texas; and both a home and ranch in Wyoming. They bought thoroughbred horses and two Gulfstream airplanes. Id. (a "G-1159A Aircraft" and "GIV Aircraft").

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 33 of the Amended Complaint.

34.    Allegations: Soon, however, they could not keep up with their obligations. Coastal and Fields had borrowed nearly $30 million from Bank of America to purchase the Wyoming ranch.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 34 of the Amended Complaint.

---

[1]    Pursuant to a provision of the Settlement Agreement, the Toussies [*sic*] payment was reduced by $7,500.00 to $41,470.56. This reduction was discontinued in the Arbitration Award.

35.     Allegations: By July 2011, Coastal and Fields were in default of their obligations to Bank of America.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 35 of the Amended Complaint.

36.     Allegations: Coastal and Fields refinanced their debt to Bank of America in 2012, pledging the Tranche B payments through a lockbox.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 36 of the Amended Complaint, and aver that under the terms of the Coastal pledge (the "**Coastal Pledge Agreement**") and other agreements, Coastal pledged not just the Tranche B payments, but also a "lien on and security interest in, all of [Coastal's] right, title and interest in, to and under" Coastal's "membership interests" in Power Plant, as well as to all "distributions of cash" from Power Plant, and that such security interest was "absolute, irrevocable and unconditional." The W&C Defendants respectfully refer the Court to the Coastal Pledge Agreement for its terms.

37.     Allegations: The pledge was "absolute, irrevocable, and unconditional" and secured by a UCC-1 Security Agreement.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 37 of the Amended Complaint, and respectfully refer the Court to the referenced Security Agreement for its contents.

38.     Allegations: A UCC-1 Security Agreement was filed against Richard Fields in the New York State Department of State on February 17, 2012.

Answer: The W&C Defendants deny the allegations in paragraph 38 of the Amended Complaint, except admit upon information and belief that on February 17, 2012, two UCC

financing statements were filed by Bank of America ("**B of A**") against Fields with the New York Department of State ("**Fields UCC Financing Statements**"), and respectfully refer the Court to the Fields UCC Financing Statements for their contents.

39.   <u>Allegations</u>: A UCC-1 Security Agreement was filed against Coastal Development LLC in the Delaware Department of State on February 17, 2012.40.  Coastal also eliminated the segregated account that protected the Toussies.

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 39 of the Amended Complaint, except admit upon information and belief that on February 17, 2012, two UCC financing statements were filed by B of A against Coastal with the Delaware Department of State ("**Coastal UCC Financing Statements**"), and respectfully refer the Court to the Coastal UCC Financing Statements for their contents.

40.   <u>Allegations</u>: Pursuant to an irrevocable payment direction and authorization letter, Coastal instructed Power Plant to deposit all Coastal's distributions including the Toussies' share into a "lockbox" account at Bank of America. Coastal pledged that account to the bank under a separate security agreement, also secured by a UCC filing.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 40 of the Amended Complaint, except clarify upon information and belief that Power Plant instructed U.S. Bank National Association to "disburse the 45% share of the Tranche B payments payable to [Coastal]" into a "lockbox account" at B of A, and that by a payment direction and authorization letter ("**Payment Direction Letter**"), Coastal authorized B of A to "debit" the lockbox account and "apply any and all such amounts to the payment" of Coastal's obligations under the Credit Agreement between Coastal and B of A, and that such authorization was "irrevocable" and could not be "revoked, modified or cancelled unless agreed to in writing

by" B of A.  The W&C Defendants respectfully refer the Court to the February 17, 2012 letter from Power Plant to U.S. Bank National Association and the Payment Direction Letter for their contents.

41.    <u>Allegations</u>: Coastal concealed the loan and pledge of distributions and did not disclose them to the Toussies.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 41 of the Amended Complaint.

42.    <u>Allegations</u>: The 2012 credit agreement did not resolve the ever-worsening financial troubles of Coastal and Fields who entered into a fourth forbearance agreement with the Bank of America in April 2012.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 42 of the Amended Complaint and respectfully refer the Court to the fourth forbearance agreement for its terms.

43.    <u>Allegations</u>: Further defaults occurred in 2012, 2013, and 2014, leading to fifth, sixth, and seventh forbearance agreements between Coastal and Fields and the Bank of America.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 43 of the Amended Complaint and respectfully refer the Court to the referenced agreements for their terms.

44.    <u>Allegations</u>: In November 2013, Coastal borrowed an additional $2.3 million from Bank of America under the terms of the credit agreement.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 44 of the Amended Complaint and respectfully refer the Court to the terms of the referenced credit agreement for its contents.

45.    <u>Allegations</u>: In 2014, an entity owned by Fields failed to pay the principal owed on the loan securing Fields' GIV Gulfstream aircraft which constituted a default under the Bank of America loan agreements.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 45 of the Amended Complaint.

46.    <u>Allegations</u>: Covenants in the 2012 credit agreement precluded Fields from further mortgaging his properties yet he secretly borrowed more anyway. Fields tried hiding that activity from Bank of America by securing the loans with "pocket mortgages" (mortgages fully executed but not recorded) insisting that "these liens can not [sic] be recorded!!" but the lenders eventually recorded the mortgages anyway.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 46 of the Amended Complaint.

47.    <u>Allegations</u>: Once recorded, Bank of America learned of the side deals and issued notices of default in November 2014 and let the forbearance agreements expire.49. [*sic*] In 2015, Coastal and Fields ceased providing the Toussies with CPA statements verifying the distributions Coastal received.50. [*sic*] By no later than October 1, 2015, Bank of America began sweeping the lockbox account and seizing the distributions Coastal received from Power Plant.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 47 of the Amended Complaint.

48.    <u>Allegations</u>: In or about October, 2015 Coastal and Fields stopped making payments to the Toussies.

<u>Answer</u>: The W&C Defendants admit upon information and belief the allegations in paragraph 48 of the Amended Complaint.

49.    Allegations: In October, 2015 Fields disclosed to the Toussies that he had "pledged the Seminole stream" to Bank of America, but even then, did not disclose that he pledged the Toussies' share.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 49 of the Amended Complaint.

50.    Allegations: On November 13, 2015, the Toussies initiated the Coastal Litigation seeking arbitration of their rights in the Tranche B payments pursuant to the Participation Agreement.

Answer: The W&C Defendants admit the allegations in paragraph 50 of the Amended Complaint.

51.    Allegations: On or before January 18, 2016 Toussie retained Williams & Connolly LLP in the Coastal Litigation.

Answer: The W&C Defendants admit the allegations in paragraph 51 of the Amended Complaint and respectfully refer the Court to the November 11, 2015 engagement letter among Williams & Connolly LLP, Robert Toussie, and Michael Toussie, attached hereto as Ex. 4 ("**Engagement Letter**"), for its contents.

52.    Allegations: The Defendants Joseph G. Petrosinelli, David A. Forkner, Jonathan E. Pahl appeared in the Coastal Litigation on behalf of Williams & Connolly.

Answer: The W&C Defendants admit the allegations in paragraph 52 of the Amended Complaint, except aver that Petrosinelli, Forkner, and Pahl entered appearances on behalf of the Toussies.

53.    Allegations: The Toussies also retained Lupkin & Associates PLLC as local counsel in the Coastal Litigation.

Answer: The W&C Defendants admit the allegations in paragraph 53 of the Amended Complaint.

54.    Allegations: The Defendants Jonathan Lupkin and Rebecca C. Smithwick appeared in the Coastal Litigation on behalf of Lupkin & Associates PLLC.

Answer: The W&C Defendants admit the allegations in paragraph 54 of the Amended Complaint, except aver that Lupkin and Smithwick entered appearances on behalf of the Toussies.

55.    Allegations: On January 19, 2016 Defendant attorneys filed a Verified Petition seeking to compel Fields and Coastal to engage in arbitration regarding their failure to comply with their obligations under the Participation Agreement.

Answer: The W&C Defendants admit the allegations in paragraph 55 of the Amended Complaint.

56.    Allegations: On or about January 19, 2016 the Supreme Court of the State of New York, New York County (the "Supreme Court") issued an Order directing Fields and Coastal to show cause why they should not be compelled to participate in arbitration.

Answer: The W&C Defendants admit the allegations in paragraph 56 of the Amended Complaint.

57.    Allegations: On or about February 12, 2016 Fields and Coastal filed a cross-motion seeking to compel the parties to engage in arbitration with the American Arbitration Association.

Answer: The W&C Defendants admit the allegations in paragraph 57 of the Amended Complaint.

58.    Allegations: On February 17, 2016 the Defendant, Rebecca C. Smithwick, filed an application to allow other Defendant attorneys, Joseph G. Petrosinelli, David A. Forkner and Jonathan E. Pahl to appear in the Coastal Litigation *pro hac vice*.

Answer: The W&C Defendants admit the allegations in paragraph 58 of the Amended Complaint.

59.    Allegations: On February 17, 2016 the Defendant, Jonathan Lupkin, filed Affirmations in Support of the *pro hac vice* admissions of the Defendants, Joseph G. Petrosinelli, David A. Forkner and Jonathan E. Pahl.

Answer: The W&C Defendants admit the allegations in paragraph 59 of the Amended Complaint except aver that the electronic docket for *Toussie, et al. v. Coastal Development, LLC, et al.*, No. 650227/2016 (Sup. Ct. N.Y. Cnty.), identifies Rebecca Smithwick as the filer for the referenced affirmations.

60.    Allegations: On March 2, 2016 the Supreme Court granted the motions to allow the Defendant attorneys Joseph G. Petrosinelli, David A. Forkner and Jonathan E. Pahl to appear in the Coastal Arbitration *pro hac vice*.

Answer: The W&C Defendants admit the allegations in paragraph 60 of the Amended Complaint.

61.    Allegations: In April 2016, Coastal and Fields agreed to a stipulated partial final award in which they agreed to make up $295,612.39 of missed payments. On August 11, 2016 the Supreme Court entered a Partial Judgment in the amount of $295,612.39 in favor of the Toussies and against Fields and Coastal (the "Partial Judgment").

Answer: The W&C Defendants admit the allegations in paragraph 61 of the Amended Complaint except aver that the August 11, 2016 judgment entered by the New York State

Supreme Court included prejudgment interest, costs, and disbursements in addition to the principal amount of $295,612.39, for a total amount of $300,799.51.

62.    Allegations: On or about November 8, 2016 Fields and Coastal satisfied the Partial Judgment.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Amended Complaint, except admit upon information and belief that the Toussies received a payment in November 2016 in satisfaction of the Partial Judgment.

63.    Allegations: In June 2016, while the arbitration was pending, and unbeknownst to the Toussies, Fields and Coastal entered into an arrangement with SFIV SS-1, LLC ("SFIV"), which, upon information and belief is owned in whole or in part by Stabilis Fund IV, LP ("Stabilis"), wherein Stabilis arranged to purchase the outstanding indebtedness which Fields and Coastal owed to Bank of America.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Amended Complaint, except admit upon information and belief that Fields and Coastal entered into an arrangement with SFIV, that SFIV is managed by Stabilis Capital Management, and that pursuant to that arrangement SFIV executed the Stabilis Forbearance Agreement with Coastal and Fields, and the W&C Defendants aver that: (i) neither the W&C Defendants nor the Toussies were aware of the Stabilis Forbearance Agreement at the time it was executed, and (ii) during the course of the Coastal Litigation, the W&C Defendants learned of the Stabilis Forbearance Agreement and informed the Toussies of its material terms.  The W&C Defendants respectfully refer the Court to the Stabilis Forbearance Agreement for its terms.

64.    Allegations: In exchange for Fields and Coastal entering into an agreement wherein some or all of the assets and income stream held by Fields' numerous LLC's, including Power Plant and the Toussie Tranche B payments, would be paid to Stabilis through a lockbox that only Stabilis controlled (the "Stabilis Forbearance Agreement").

Answer: The W&C Defendants deny the allegations in paragraph 64 of the Amended Complaint, except admit upon information and belief that pursuant to the Stabilis Forbearance Agreement certain payments would be paid to SFIV through a "lockbox" account, and respectfully refer the Court to the Stabilis Forbearance Agreement for its terms.

65.    Allegations: Through the Stabilis Forbearance Agreement, Coastal and Fields took out $13 million more in debt, secured by the pledge.

Answer: The W&C Defendants admit upon information and belief the allegations in paragraph 65 of the Amended Complaint and respectfully refer the Court to the Stabilis Forbearance Agreement for its terms.

66.    Allegations: On February 15, 2017 Stabilis Fund IV, LP and its' [*sic*] wholly owned subsidiary SFIV SS-1, LLC filed an Assignment of the UCC-1 against Richard Fields with the New York State Department of State.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Amended Complaint, except admit upon information and belief that on February 15, 2017, SFIV filed with the New York Department of State an assignment of the February 17, 2012 UCC Financing Statement with initial filing number 201202170098126 that identified Richard Fields as debtor.

67.   <u>Allegations</u>: On September 7, 2016 Stabilis Fund IV, LP and its' [*sic*] wholly owned subsidiary SFIV SS-1, LLC filed a Continuation of the UCC-1 against Coastal Development, LLC with the Delaware Department of State.

<u>Answer</u>: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Amended Complaint, except admit upon information and belief that on September 7, 2016, SFIV filed with the Delaware Department of State a continuation of the February 17, 2012 UCC Financing Statement with initial filing number 20120645285 that identified Coastal Development, L.L.C. as debtor.

68.   <u>Allegations</u>: During the Coastal Arbitration the Defendants were advised of the terms of the Stabilis Forbearance Agreement which included that Fields and Coastal had pledged all of their current and future assets to the satisfaction of the Stabilis' debt.

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 68 of the Amended Complaint, except admit that during the Arbitration they were advised of the terms of the Stabilis Forbearance Agreement, and respectfully refer the Court to the Stabilis Forbearance Agreement for its terms.

69.   <u>Allegations</u>: During the Coastal Litigation the Defendants were advised that the Stabilis' debt was secured by filing of UCC-1 Financing Statements.

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 69 of the Amended Complaint, except admit that they were aware that the Coastal and Fields' debt with B of A was secured by the Fields UCC Financing Statements and Coastal UCC Financing Statements, and that SFIV had acquired a secured interest in Coastal and Fields' debt with B of A.

70.    Allegations: During the Coastal Litigation the Defendants were advised that Stabilis was claiming to be owed in excess of 80 million dollars all of which was secured by the UCC-1 Financing Statements that had previously been filed by Bank of America.

Answer: The W&C Defendants admit the allegations in paragraph 70 of the Amended Complaint.

71.    Allegations: During the Coastal Litigation Coastal and Fields' accountant Joseph McNulty ("McNulty") testified that the terms of that Stabilis Forbearance Agreement are "very punitive" by including an interest rate set at 15 percent with penalty interest rates of 18 percent, then 24 percent.

Answer: The W&C Defendants admit the allegations in paragraph 71 of the Amended Complaint and respectfully refer the Court to the Stabilis Forbearance Agreement and the record of the arbitration proceeding for their contents.

72.    Allegations: During the Coastal Litigation McNulty candidly acknowledged that "I do not know if there will be any other defaults" by Coastal and Fields to Stabilis.

Answer: In response to paragraph 72 of the Amended Complaint, the W&C Defendants admit that during the Coastal Litigation, Joseph McNulty testified, "I do not know if there will be any other defaults," and admit upon information and belief that he so testified "candidly."

73.    Allegations: During the Coastal Litigation McNulty acknowledged that Coastal and Fields would need to sell large commercial real-estate assets by June 2017 to avoid defaulting on the Stabilis Forbearance Agreement and would need to sell even more by December 2017 to pay off their debt and remove the pledge and offered nothing more than speculation about whether that was likely.

Answer: The W&C Defendants admit the allegations in paragraph 73 of the Amended Complaint.

74.    Allegations: On December 20, 2016 the Hon. Leo F. Milonas issued an Arbitration Award in the Coastal Litigation (the "Arbitration Award").

Answer: The W&C Defendants admit the allegations in paragraph 74 of the Amended Complaint, except aver that the Hon. E. Leo Milonas—not the Hon. Leo F. Milonas—issued the Arbitration Award on December 20, 2016, and further aver that the Arbitration Award awarded Toussie more than $7 million in damages, plus attorney's fees and that W&C thereby secured a complete victory for Toussie.

75.    Allegations: The Arbitration Award made several incorrect and detrimental findings of fact which adversely affected the Toussies.

Answer: The W&C Defendants deny the allegations in paragraph 75 of the Amended Complaint.

76.    Allegations: The Arbitration Award incorrectly determined that Coastal and Fields had pledged the Toussie's portion of the Tranche B Payments to the Bank of America to secure the Bank of America loan.

Answer: In response to paragraph 76 of the Amended Complaint, the W&C Defendants admit that the Arbitration Award concluded that Fields and Coastal pledged Toussie's portion of the Tranche B payments to B of A, and deny that that conclusion was incorrect.  The W&C Defendants aver that in a subsequent litigation brought by Toussie (represented by the attorney who filed the original complaint in this action), *Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881, at *1 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019), the New York Supreme Court came to the same conclusion, holding, "[t]here is no legal support for carving plaintiff's participation interest in

certain payments that it was once entitled to from Coastal out of defendants' perfected security interest in, among other things, <u>all of Coastal's interest in the equity of Power Plant</u>" (emphasis in original). The First Department affirmed the Supreme Court's decision on November 5, 2020. *See Toussie v. SFIV SS-1, LLC*, 2020 WL 6493970 (1st Dep't Nov. 5, 2020). The W&C Defendants further aver that Toussie is legally precluded from relitigating these issues in the present action.

77.    <u>Allegations</u>: Contrary to this finding the Bank of America Pledge & Security Agreement exempted the Toussie's Tranche B payments as collateral thereunder according to their unambiguous terms which specifically excluded distributions in which Coastal had no "right, title and interest".

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 77 of the Amended Complaint and respectfully refer the Court to the referenced Pledge & Security Agreement for its contents. The W&C Defendants aver that the Arbitration Award correctly concluded that Fields and Coastal pledged the Toussies' portion of the Tranche B payments to B of A, as the pledged collateral included Coastal's "right, title and interest in, to and under" all Distributions received from Power Plant, including the share of the Distributions payable to the Toussies under the Participation Agreement. The W&C Defendants also respectfully refer the Court to the Credit Agreement between Fields, Coastal, and B of A, which specifically identified the property of Coastal that was excluded from collateral. Amounts payable to the Toussies were not included in that definition of excluded collateral.

78.    <u>Allegations</u>: The Bank of America Security Agreement also excluded the Toussie Tranche B Payments wherein it stated that "...in no event shall the Collateral include any...contract or property right to the extent that a security interest is prohibited by or in violation

of (i) any law...applicable to such pledgor, or (ii) a term, provision or condition of any...contract, property right or agreement..."

Answer: The W&C Defendants deny the allegations in paragraph 78 of the Amended Complaint and respectfully refer the Court to the referenced Security Agreement for its contents. The W&C Defendants further aver that the provision of the Security Agreement referenced in paragraph 78 of the Amended Complaint creates a carve-out from the books and records collateral pledged by Coastal but is not applicable to payments owed to the Toussies under the Participation Agreement.

79.    Allegations: The UCC-1 Financing Statements which were filed by Bank of America to secure the Coastal and Fields Note contained this same collateral exclusion language.

Answer: The W&C Defendants deny the allegations in paragraph 79 of the Amended Complaint, except admit upon information and belief that the referenced UCC filings contain the same language as the Security Agreement, which creates a carve-out from the books and records collateral pledged by Coastal but is not applicable to payments owed to the Toussies under the Participation Agreement, and respectfully refer the Court to the referenced UCC filings and Security Agreement for their contents.

80.    Allegations: Inasmuch as there can be no argument that the pledging of the Toussie Payments by Coastal to BOA for the purposes of securing Coastal's debt to Bank of America would result in violations of "law", a "term" of the Participation Agreement and Toussies' "property rights" in the Toussie Payments, by the unambiguous terms of the Bank of America Security Agreement, the Toussie Payments were excluded as collateral.

Answer: The W&C Defendants deny the allegations in paragraph 80 of the Amended Complaint and aver that in litigation Toussie previously brought through one of the attorneys

appearing for him in the present action, he claimed that the scope of the collateral pledged to Bank of America excluded his participation interest, and the New York Supreme Court rejected that contention, finding it was not "a fair reading" of Coastal and Fields' agreement with B of A and that "nothing prohibited Bank of America from getting a security interest in Coastal's rights to payment …."  Ex. 5 (10/29/19 Hearing Tr. at 6:13-19, 15:10-16:4, filed in *Toussie v. SFIV SS-1, LLC*, No. 160279/2018, NYSCEF No. 114).  The W&C Defendants respectfully refer the Court to the agreements referenced in paragraph 80 of the Amended Complaint for their contents.

81.    Allegations: The Arbitration Award nevertheless improperly found that the Stabilis Forbearance Agreement reaffirmed the pledge of the Toussie's [*sic*] share of Tranche B Payments.

Answer: In response to paragraph 81 of the Amended Complaint, the W&C Defendants admit that the Arbitration Award concluded that the Stabilis Forbearance Agreement reaffirmed the pledge of Toussie's share of the Tranche B payments and deny all other allegations in paragraph 81 of the Amended Complaint, including that such conclusion was improper.  The W&C Defendants aver that Fields and Coastal pledged Toussie's portion of the Tranche B payments to B of A, and when Stabilis purchased the debt Fields and Coastal owed to B of A, Coastal and Fields agreed that all security interests held by B of A—including the interests in the Tranche B payments—would secure Coastal and Fields' obligations to SFIV.

82.    Allegations: However, under the Stabilis Forbearance Agreement the senior secured lender could acquire no additional rights than Bank of America had acquired under the Bank of America Loan documents.

<u>Answer</u>: Paragraph 82 of the Amended Complaint contains legal conclusions as to which no response is required.  To the extent any response is required, the W&C Defendants deny the allegations in paragraph 82 of the Amended Complaint and respectfully refer the Court to the referenced agreements for their contents.

83.    <u>Allegations</u>: The Stabilis Forbearance Agreement could not have reaffirmed the pledge of the Toussies' share of the Tranche B Payments because Coastal and Fields did not pledge the Toussies' share under the unambiguous wording of the Bank of America Loan documents.

<u>Answer</u>: The W&C Defendants deny the allegations in paragraph 83 of the Amended Complaint, and aver that in litigation Toussie previously brought through one of the attorneys appearing for him in the present action, he claimed that the scope of the collateral pledged to B of A excluded his participation interest, and the New York Supreme Court rejected that contention, finding it was not "a fair reading" of Coastal and Fields' agreement with B of A and that "nothing prohibited Bank of America from getting a security interest in Coastal's rights to payment …." Ex.  5 (10/29/19 Hearing Tr. at 6:13-19, 15:10-16:4, filed in *Toussie v. SFIV SS-1, LLC*, No. 160279/2018, NYSCEF No. 114).  The W&C Defendants respectfully refer the Court to the agreements referenced in paragraph 83 of the Amended Complaint for their contents.

84.    <u>Allegations</u>: The Defendants failed to object to the finding in the Arbitration Award that Coastal and Fields had pledged the Toussie Tranche B Payments.

<u>Answer</u>: The W&C Defendants admit the allegations in paragraph 84 of the Amended Complaint, and aver that their strategic choice not to object was reasonable—indeed, clearly correct—because: (i) the doctrine of *functus officio* barred the Arbitrator from amending the Arbitration Award, and (ii) the Arbitration Award's findings that Coastal and Fields had pledged

34

Toussie's share of the Tranche B payments were correct, as every court that has considered the issue has concluded—in litigation brought by Toussie represented by one of the attorneys appearing for him in the present action.  *See Toussie v. SFIV SS-1 LLC,* 2019 WL 5865881, at *1 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019); *Toussie v. SFIV SS-1, LLC*, 2020 WL 6493970 (1st Dep't Nov. 5, 2020).

85.    Allegations: The Defendants failed to object to the finding in the Arbitration Award that Coastal and Fields had reaffirmed the pledge of the Toussie Tranche B Payments in the Stabilis 89 [*sic*]. The Defendants failed to advise Toussie that this finding could have preclusive effect on his efforts to enforce his rights under the Participation Agreement.

Answer: The W&C Defendants deny the allegations in paragraph 85 of the Amended Complaint, except admit that they did not lodge an objection to the Arbitration Award's findings, and aver that the strategic choice not to object was reasonable—indeed, clearly correct—because: (i) the doctrine of *functus officio* barred the Arbitrator from amending the Arbitration Award; and (ii) the Arbitration Award's findings that Coastal and Fields had pledged Toussie's share of the Tranche B payments were correct, as every court that has considered the issue has concluded—in litigation brought by Toussie represented by one of the attorneys appearing for him in the present action.  *See Toussie v. SFIV SS-1 LLC,* 2019 WL 5865881, at *1 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019); *Toussie v. SFIV SS-1, LLC*, 2020 WL 6493970 (1st Dep't Nov. 5, 2020).

86.    Allegations: The Defendants failed to advise Toussie that these findings could have preclusive effect on his efforts to enforce his rights under the Participation Agreement.

Answer:  The W&C Defendants deny the allegations in paragraph 86 of the Amended Complaint.

35

87.    <u>Allegations</u>: The Defendants moved to confirm the Arbitration Award in the Supreme Court on December 29, 2016. They did not raise any issues set forth above.

<u>Answer</u>: The W&C Defendants admit the allegations in paragraph 87 of the Amended Complaint, and aver that their strategic choice not to object was reasonable—indeed, clearly correct—because: (i) the grounds for judicially attacking an arbitration award are extraordinarily limited and did not apply, as there was no fraud, corruption or misconduct by the Arbitrator, nor was there "manifest disregard of the law," and (ii) the Arbitration Award's findings that Coastal and Fields had pledged Toussie's share of the Tranche B payments were correct, as every court that has considered the issue has concluded—in litigation brought by Toussie, represented by one of the attorneys appearing for him in the present action. *See Toussie v. SFIV SS-1 LLC,* 2019 WL 5865881, at *1 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019); *Toussie v. SFIV SS-1, LLC*, 2020 WL 6493970 (1st Dep't Nov. 5, 2020).

88.    <u>Allegations</u>: On February 16, 2017 the Coastal Litigation was referred to the Alternative Dispute Resolution Program of the Supreme Court ("ADR") in an effort to negotiate a settlement between the Toussies, Fields and Coastal (the "Settlement Conference").

<u>Answer</u>: The W&C Defendants admit the allegations in paragraph 88 of the Amended Complaint.

89.    <u>Allegations</u>: Upon information and belief, at the Settlement Conference Fields and Coastal were current with the Tranche B Payments due under the Participation Agreement.

<u>Answer</u>: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 of the Amended Complaint.

90.    <u>Allegations</u>: Upon information and belief, at the Settlement Conference representatives of Stabilis Fund, LP appeared and intervened in the negotiations.

Answer: The W& C Defendants deny the allegations in paragraph 90 of the Amended Complaint, except admit that representatives of Stabilis attended the mediation session held in March 2017.

91.    Allegations: Upon information and belief, at the Settlement Conference Fields and Coastal, with the consent of Stabilis Fund, LP, proposed to settle the Coastal Litigation by entering into an agreement which would allow the Toussies to continue to receive the payments due them under the Participation Agreement.

Answer: The W&C Defendants deny the allegations in paragraph 91 of the Amended Complaint, except admit that, at the mediation session held in March 2017, there was discussion about allowing the Toussies to receive payments under the Participation Agreement, but aver that no concrete settlement was offered during the mediation session held in March 2017.

92.    Allegations: Upon information and belief, at the Settlement Conference, the Defendants herein refused to enter into a settlement agreement with Coastal and Fields unless it contained a provision that their attorneys' fees would be paid in full.

Answer: The W&C Defendants deny the allegations in paragraph 92 of the Amended Complaint.

93.    Allegations: At the time of the Settlement Conference the Defendants were claiming Attorneys' fees in excess of $812,340.00.

Answer: The W&C Defendants deny the allegations in paragraph 93 of the Amended Complaint, except admit that at the time of the March 2017 mediation session, Toussie had incurred $965,777.66 for W&C's representation in the Coastal Litigation and had paid W&C $575,545.42 of the amounts incurred.

94.    Allegations: On April 16, 2017 the Supreme Court issued an Order referring the Coastal Litigation to the Alternative Dispute Resolution Program of the Commercial Division ("ADR") (the "ADR Order").

Answer: The W&C Defendants deny the allegations in paragraph 94 of the Amended Complaint.

95.    Allegations: The ADR Order directed that the parties to the Coastal Litigation participate in the ADR proceedings in an attempt to resolve the matter.

Answer: The W&C Defendants deny the allegations in paragraph 95 of the Amended Complaint.

96.    Allegations: In furtherance of the attempts of the parties to the Coastal Litigation to settle the matter, Scott M. Esterbrook, Esq., counsel for SFIV, provided written assurances to the parties to the Coastal Litigation that SFIV would grant "a *pari passu* lien on the Toussies Participation Interest and the payments made by Coastal in accordance therewith in an amount not to exceed $41,470.56 per month, provided that the Toussie Case and all related litigation is concluded in all respects with prejudice…"

Answer: In response to paragraph 96 of the Amended Complaint, the W&C Defendants lack knowledge or information sufficient to form a belief as to SFIV's motive in sending the referenced letter (the "**Lender Letter**," Ex. 6), and admit that the Lender Letter, which was filed in the Coastal Litigation (NYSCEF No. 106), and shared with the Plaintiff, stated in part as follows:

> Please allow this letter to confirm that [SFIV] is prepared to permit [Coastal and Fields] to grant Robert and Michael Toussie (the 'Toussies') a *pari passu* lien on the Toussie's [*sic*] participation interest and the payments made by Coastal in accordance therewith in an amount not to exceed $41,470.56 per month, provided that the Toussie Case and any related litigation is concluded in all respects with prejudice.

* * *

It is [SFIV's] understanding that … the issue of attorney's fees must still be addressed in the Toussie Case.  Accordingly, the Lender's willingness to consent to [Coastal and Fields] granting the lien for the benefit of the Toussies is only available if there are no other unresolved issues in the Toussie Case.

* * *

Please note that while you are authorized in good faith to advise the Court of the Lender's position, any consent or agreement that the Lender is willing to make pursuant to the terms of this letter shall not be effective or binding absent a definitive agreement memorializing the settlement agreement contemplated herein in form and substance satisfactory to [SFIV].

Ex. 6 at 1-2.  The W&C Defendants respectfully refer the Court to the Lender Letter for its contents.

97.    Allegations: The written assurances provided by SFIV were based upon its' understanding that "Justice Milonas' [*sic*] based his arbitration decision based upon his assertion that he lacked authority to grant meaningful specific performance. The Lender is prepared to afford the lien rights (nothwithstanding [*sic*] the fact that we do not believe that the Toussies are entitled to them) in order to provide the necessary authority to render specific performance with respect to the Toussies rights to a cash flow participation interest over time. This enhances the Toussies' rights provided in their participation agreement."

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97 of the Amended Complaint, except admit that the Lender Letter stated in part:

We understand that Judge Milonas[] based his arbitration decision on his assertion that he lacked the power to grant meaningful specific performance.  The Lender is prepared to afford the lien rights described above (notwithstanding the fact that we do not believe the Toussies are entitled to them) in order to provide the necessary authority to render specific performance with respect to the Toussie rights to a cash flow participation interest over time.  This enhances the Toussie's [*sic*] rights provided in their participation agreement."

Ex. 6 at 1.  The W&C Defendants respectfully refer the Court to the Lender Letter (*id.*) for its contents.

98.    Allegations: SFIV was only willing to extend to the Toussies the *pari passu* lien in the event that the Defendants herein waived any claim to attorneys' fees which issue was still pending in the Coastal Litigation at that time.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of the Amended Complaint, except deny that the Lender Letter states that SFIV was willing to extend the lien only if Defendants "waived any claim to attorneys' fees," and further aver that after the Lender Letter was filed, Coastal's creditors suggested settlements that included reimbursement for Toussie's attorney's fees. *See, e.g.*, Ex. 2 (April 25 Letter) (stating that *Toussie's* "refusal to accept a lien to secure the Toussie Seminole cash flow plus legal fees" would have adverse consequences for him).

99.    Allegations: The Defendants failed to advise the Plaintiff of the offer of extending a *pari passu* lien on the Tranche B Payments by SFIV.

Answer: The W&C Defendants deny the allegations in paragraph 99 of the Amended Complaint and aver that they affirmatively disclosed the purported *pari passu* lien "offer" to the Toussies, who rejected it in writing almost immediately.  On April 3, 2017, the W&C Defendants sent an email to Robert Toussie and Michael Toussie apprising them of updates in the Coastal Litigation, specifically including that "Coastal and Fields have filed papers asking to supplement the record with a letter from their lender offering to grant you a security interest in $41K per month of stream payments," and attaching the Lender Letter that contained the purported "offer."  *See* Ex. 7 (4/3/2017 email from J. Pahl to R. Toussie *et al*., attaching the Lender Letter).  In an April 3, 2017 email from Michael Toussie to the W&C Defendants and Robert Toussie, the Toussies categorically rejected the *pari passu* lien "offer," writing, "We don't want a lien…we OWN it.  It is our property."  *See* Ex. 8 (4/3/2017 email from M. Toussie

40

to J. Pahl *et al*. (emphasis added)).  In an April 21, 2017 email, Robert Toussie emphasized that he viewed the *pari passu* lien "offer" as unfair because "FAIRNESS WOULD DICTATE THAT IN ANY CASE STABILIS SHOULD BE [] SUBORDINATE TO US."  *See* Ex. 9 (4/21/2017 email from R. Toussie to J. Pahl, *et al*. (capitalization and underlining in original)).

100.    Allegations: The Defendants failed to advise the Plaintiff of the significant benefits that the *pari passu* lien on the Tranche B Payments would provide to the Toussies. The Defendants failed to advise the Plaintiff that if he elected to reject the SFIV settlement offer his Participation Interest would terminate.

Answer: The W&C Defendants deny the allegations in paragraph 100 of the Amended Complaint.  On April 27, 2017, and again on May 3, 2017, the W&C Defendants advised the Toussies that if they rejected settlement and proceeded to enforce judgment, payments under the Participation Agreement would terminate.  *See* Ex. 1 (4/27/2017 email from J. Pahl to R. Toussie, *et al*., forwarding April 25 Letter); Ex. 3 (5/3/2017 email from J. Pahl to R. Toussie, *et al*.) (stating that by pursuing judgment "You would stop receiving the $41K you receive per month.").  The W&C Defendants further aver that they informed the Toussies multiple times that there were risks in proceeding to judgment.  *See, e.g.*, Ex. 1 (4/27/2017 email from J. Pahl to R. Toussie, *et al*.); Ex. 3 (5/3/2017 email from J. Pahl to R. Toussie, *et al*.) ("If Coastal/Fields lenders are to be believed, there is a significant risk you could go through the entire process, add substantially to your costs and fees, and recover nothing.").  And the W&C Defendants further aver that they recommended to the Toussies accepting a settlement that included a secured interest in the payment stream.  *Id*. (5/3/2017 email from J. Pahl to R. Toussie, *et al.*) (proposing settlement idea that would allow Toussies to receive their "monthly payments directly from Power Plant" and "become a *secured* creditor with rights to seize [their] portion of the stream

41

upon future defaults – and Coastal and Fields' secured lender (Stabilis) would recognize the validity of [the Toussies'] interest") (italics in original); *id.* ("Based on what we know, Option 2 [pursuing settlement] provides a clearer path forward.").

101.    Allegations: The Defendants failed to advise the Plaintiff that if he elected to reject the SFIV settlement offer that SFIV could assert a lien over the Toussies portion of the Tranche B Payments. The Defendants failed to advise the Plaintiff that the lien which SFIV could assert on the Tranche B Payments was in excess of 80 million dollars.

Answer: The W&C Defendants aver that the Amended Complaint contains two paragraphs numbered 101, deny the allegations in the first paragraph numbered 101, and aver that (i) the W&C Defendants informed the Toussies that Stabilis had acquired more than $80 million in debt (*see* Ex. 10 (draft brief at 2 n.3)), (ii) informed Toussie that SFIV was a "senior secured lender" (*see, e.g.*, Ex. 7 (4/3/2017 email from J. Pahl to R. Toussie, attaching Lender Letter) (characterizing SFIV as the "senior secured lender" to Coastal and Fields), and (iii) as a sophisticated real estate investor, Toussie understood that the scope of SFIV's secured interest would allow it to assert a lien over the Toussies' portion of the Tranche B payments.

101.    Allegations: The Defendants failed to advise the Plaintiff that SFIV could assert its lien on all of the current and future assets and income of Fields and Coastal.

Answer: The W&C Defendants aver that the Amended Complaint contains two paragraphs numbered 101 and, with respect to the second paragraph numbered 101, admit that the W&C Defendants did not "advise the Plaintiff that SFIV could assert its lien on all of the current and future assets and income of Coastal and Fields," but aver that the Stabilis Forbearance Agreement does not provide a lien for "all of the current and future assets and

income of Coastal and Fields," and respectfully refer the Court to the Stabilis Forbearance Agreement for its terms.

102.   Allegations: As a result of the Defendants' demand that their attorneys' fees be paid in full by Fields and Coastal no settlement was agreed upon.

Answer: The W&C Defendants deny the allegations in paragraph 102 of the Amended Complaint, and aver that during settlement negotiations, which continued into August 2017, Coastal/Fields and their creditors continued to offer settlements that included reimbursement for Toussie's legal fees, and that Toussie—not the W&C Defendants—rejected those offers.  For example, in Judge Ciparick's April 25, 2017 letter to Pahl and Lupkin—sent nearly a month after the Lender Letter—Judge Ciparick described the proposed settlement as including "a lien to secure the Toussie Seminole cash flow plus legal fees" (emphasis added).  See Ex. 2 (April 25 Letter).

103.   Allegations: The Toussies paid in excess of $812,340.00 to the Defendants for their representation in the Coastal Litigation.

Answer: In response to paragraph 103 of the Amended Complaint, the W&C Defendants lack knowledge or information sufficient to determine how much the Lupkin Defendants were paid, deny that W&C was paid $812,340 for its representation of Toussie in the Coastal Litigation, admit that Toussie paid W&C $725,545.42 for its representation in the Coastal Litigation, and aver that Toussie has failed to pay $305,811.06 of the amounts he incurred for representation by W&C under the terms of the Engagement Letter.

104.   Allegations: On July 17, 2017 the Supreme Court entered the Judgment in the Coastal Litigation in the amount of $7,857,642.50.

<u>Answer</u>: The W&C Defendants admit the allegations in paragraph 104 of the Amended Complaint.

105.    <u>Allegations</u>: Inasmuch as the Judgment was entered on July 17, 2017, its priority is junior to that of Secured Debt owed by Fields and Coastal to Stabilis Fund IV, LP and its wholly owned subsidiary SFIV SS-1, LLC.

<u>Answer</u>: Paragraph 105 of the Amended Complaint contains legal conclusions as to which no response is required.  To the extent any response is required, the W&C Defendants admit the allegations in paragraph 105 of the Amended Complaint.

106.    <u>Allegations</u>: Upon information and belief, Stabilis Fund IV, LP and its' [*sic*] wholly owned subsidiary SFIV SS-1, LLC is owed in excess of 80 million dollars.

<u>Answer</u>: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106 of the Amended Complaint.

107.    <u>Allegations</u>: Upon information and belief, all of Fields and Coastal's assets, both present and future, have been pledged to Stabilis Fund IV, LP and SFIV SS-1, LLC in satisfaction of the Secured Debt.

<u>Answer</u>: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107 of the Amended Complaint.

108.    <u>Allegations</u>: All of Toussie's efforts to enforce the Judgment have been thwarted by Stabilis Fund IV, LP and SFIV SS-1, LLC. As a matter of law, the priority of the Secured Debt is superior to the Judgment as well as to any judgment in favor of Plaintiff. The amount of the Secured Debt vastly exceeds the entire revenue stream forecast to be received by Coastal. As no revenue stream will reach Coastal, no revenue of any variety will reach Plaintiff pursuant to the Judgment.

Answer: Paragraph 108 of the Amended Complaint contains legal conclusions as to which no response is required.  To the extent any response is required, the W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108 of the Amended Complaint.

109.    Allegations: The Toussies continued to be owed the full amount of the Judgment together with any accrued and unpaid interest and attorneys' fees. Under no foreseeable circumstance will a single dollar be collected.

Answer: The W&C Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 of the Amended Complaint.

**FIRST CAUSE OF ACTION**

110.    Allegations: Toussie repeats and realleges each and every allegation contained above as if fully set forth herein.

Answer: The W&C Defendants repeat and incorporate their responses to the allegations referred to in paragraph 110 of the Amended Complaint as if set forth fully herein and otherwise deny the allegations in paragraph 110 of the Amended Complaint.

111.    Allegations: Williams & Connolly, LP and Lupkin & Associates, PLLC, the law firms hired to represent Toussie, and their associates provided Toussie with legal advice in connection with the Coastal Litigation, departed from good practice, failed to calculate the value or collectability of the Judgment, failed to consider whether earlier and superior liens existed, failed to determine whether, as a matter of law, the Judgement [*sic*] was uncollectible, whether Coastal was, in effect, judgment proof because of earlier filed superior liens, failed to determine which of the two possible choices could yield any payments to Plaintiff, failed to advise plaintiff on the financial effect of attempting to execute upon the judgment in the face or earlier, superior

liens, failed to advise the client about the choice at all, made a selection of participating in the Judgment rather than agreeing to accept continuing payments from the tranche, failed to engage in legal reasoning, failed to research and determine the existence of earlier superior liens and the value of those earlier superior liens, and in general failed to exercise the care, skill, and diligence commonly possessed and exercised by members of the legal profession in negligently and incompetently representing Toussie's interests in the Coastal Litigation.

Answer: The W&C Defendants deny the allegations in paragraph 111 of the Amended Complaint.

112.    Allegations: Williams & Connolly, LP and Lupkin & Associates, PLLC's and their associates' negligent representation and failure to advise Toussie that the entry of the Judgment would result in the termination of his rights under the Participation Agreement was a departure from good practice, which proximately led to a poor economic result. The departure and selection of the Judgment over continuing payments rendered him a junior creditor of Fields and Coastal, who had pledged all of their present and future assets in satisfaction of an 80-million-dollar debt which had priority over the Judgment, constituted a further departure from good practice.

Answer: The W&C Defendants deny the allegations in paragraph 112 of the Amended Complaint.

113.    Allegations: This departure, in which the attorneys selected the Judgment over a continuing payment of the tranche proximately led to the negative financial outcome for Plaintiff.

Answer: The W&C Defendants deny the allegations in paragraph 113 of the Amended Complaint.

114.     Allegations: "But for" this departure in failing to research, calculate, determine whether there were earlier superior liens which would render the Judgment uncollectible, and negligent selection there would have been a better outcome.

Answer: The W&C Defendants deny the allegations in paragraph 114 of the Amended Complaint.

115.     Allegations: That better outcome would have been for the Plaintiff to accept the *pari passu* lien being offered by SFIV which would allow the Tranche B payments to continue being paid to Plaintiffs. The payments would have been $$41,470.56 [*sic*] per month for through and including April, 2029 comprising the amount of $6,013.231.20.

Answer: The W&C Defendants deny the allegations in paragraph 115 of the Amended Complaint.

116.     Allegations: "But for" defendants' departure from good practice, Plaintiff would have recovered this amount.

Answer: The W&C Defendants deny the allegations in paragraph 116 of the Amended Complaint.

117.     Allegations: As a further departure Williams & Connolly, LP [*sic*] and Lupkin & Associates, PLLC's and their associates' failure to perform the task it was hired to perform (i.e., inter alia, protect the Toussies' rights in the Coastal Litigation) was a departure from good practice.

Answer: The W&C Defendants deny the allegations in paragraph 117 of the Amended Complaint.

118.     Allegations: The Arbitration Award made findings that were contrary to law, in excess of the power of the Arbitrator, contrary to the facts, displaying a manifest disregard of the

law refusing to apply lien law which was well defined, explicit and clearly applicable to the case, with an evident material mistake in the analysis of whether a third party can grant a lien over assets not within its possession or control.

Answer: The W&C Defendants deny the allegations in paragraph 118 of the Amended Complaint, and aver that the Arbitration Award correctly concluded that Fields and Coastal pledged Toussie's portion of the Tranche B payments to Bank of America, and later to Stabilis, as every court that has considered the issue has concluded—in litigation brought by Toussie represented by one of the attorneys appearing for him in the present action. *See Toussie v. SFIV SS-1 LLC,* 2019 WL 5865881, at *1 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019); *Toussie v. SFIV SS-1, LLC*, 2020 WL 6493970 (1st Dep't Nov. 5, 2020).

119.    Allegations: Defendants failed to seek to have the Arbitrator review the award, failed to seek to vacate the award on these bases and failed to make motions to renew, review, seek a rehearing or later to vacate the award before Supreme Court.

Answer: The W&C Defendants deny the allegations in paragraph 119 of the Amended Complaint, except admit that they did not seek to have the Arbitrator review the Arbitration, seek to vacate the Arbitration Award, or make motions to renew, review, or seek a rehearing, and aver that their strategic choice not to take any of those actions was reasonable—indeed, clearly correct—because: (i) the doctrine of *functus officio* barred the Arbitrator from amending the Arbitration Award; (ii) the grounds for judicially attacking an arbitration award are extraordinarily limited and did not apply; and (iii) the Arbitration Award's findings that Coastal and Fields had pledged Toussie's share of the Tranche B payments were correct, as every court that has considered the issue has concluded—in litigation brought by Toussie represented by one of the attorneys appearing for him in the present action. *See Toussie v. SFIV SS-1 LLC,* 2019

WL 5865881, at *1 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019); *Toussie v. SFIV SS-1, LLC*, 2020 WL 6493970 (1st Dep't Nov. 5, 2020).

120.    Allegations: Williams & Connolly, LP [*sic*] and Lupkin & Associates, PLLC's and their associates' departures in the representation and the failure to object to the findings in the Arbtitration [*sic*] Award that Coastal and Fields had pledged the Toussies' portion of the Tranche B Payments to Bank of America to secure the Bank of America, constituted depatures [*sic*] from good practice.

Answer: The W&C Defendants deny the allegations in paragraph 120 of the Amended Complaint.

121.    Allegations: Williams & Connolly, LP and Lupkin & Associates, PLLC's and their associates' departures in the representation and the failure to object to the findings in the Arbtitration [*sic*] Award that Coastal and Fields had reaffirmed the pledge of the Toussies' portion of the Tranche B Payments to Bank of America in the Stabilis Forbearance Agreement, constituted a departure from good practice.

Answer: The W&C Defendants deny the allegations in paragraph 121 of the Amended Complaint.

122.    Allegations: Defendants' departures in the handling of the Arbitration Award proximately led to a negative financial result. Not only did the departures lead to negligent selection of the Judgment over continuing payments from the tranche, but the failures to challenge the Arbitration award [*sic*] led to the loss of funds not paid from the onset of the withheld payments through the date of the Arbitration Award. This sum, after offset for partial payment was $7,524,701 plus interest from 2017.

Answer: The W&C Defendants deny the allegations in paragraph 122 of the Amended Complaint.

123.    Allegations: But for these departures, Plaintiff would have been successful in recouping additional sums. Because Defendants failed to undertake the necessary and required acts as outlined above, Plaintiff was proximately blocked from an otherwise successful claim for the monies described.

Answer: The W&C Defendants deny the allegations in paragraph 123 of the Amended Complaint.

124.    Allegations: As a direct and proximate result of Williams & Connolly, LP [*sic*] and Lupkin & Associates, PLLC's and their associates, Toussie has suffered actual damages in the amount of 6,013,231.20 together with interest from July 17, 2017.

Answer: The W&C Defendants deny the allegations in paragraph 124 of the Amended Complaint.

## SECOND CAUSE OF ACTION

125.    Allegations: Plaintiff re-alleges the allegations contained in preceding paragraphs with the same force and effect as if separately set forth and numbered herein.

Answer: The W&C Defendants repeat and incorporate their responses to the allegations referred to in paragraph 125 of the Amended Complaint as if set forth fully herein, and otherwise deny the allegations in paragraph 125 of the Amended Complaint.

126.    Allegations: By virtue of the attorney-client relationship, Defendants owed Plaintiff a fiduciary duty to deal fairly, honestly and with undivided loyalty, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the client's interests over their own, performing the work in a timely

fashion, not incurring unnecessary work or expenses, acquainting the firm with up-to-date

information on the rights and liabilities in the subject area and in general, being knowledgeable

about how to prosecute this constitutional violation and unconstitutional taking matter, file an

adequate complaint and not file incompetent pleadings.

Answer: The W&C Defendants state that Paragraph 126 of the Amended Complaint

contains legal conclusions as to which no response is required, and deny the allegations in

paragraph 126 to the extent they characterize the representation of the Toussies as one related to

a "constitutional violation and unconstitutional taking matter."

127.    Allegations: Defendants were under a duty to Plaintiff to act for it, to act correctly

for it, and to avoid conflicts of interest in its representation of Plaintiff by performing work that

was unnecessary, contra-indicated, not solely for its benefit firm and of no benefit to the client,

to give advice for Plaintiff's benefit on all matters within the scope of the representation of

Plaintiff and not to place their own interests ahead of Plaintiff's.

Answer: Paragraph 127 of the Amended Complaint contains legal conclusions as to

which no response is required.

128.    Allegations: Defendants were under a fiduciary duty to avoid engaging in

conduct which caused financial harm to Plaintiff and to avoid engaging in conduct, which was

unnecessary, counter-productive, counter-indicated, or simply wrongful.

Answer: Paragraph 128 of the Amended Complaint contains legal conclusions as to

which no response is required.

129.    Allegations: While acting as an attorney for, and performing work for Plaintiff,

Defendants inserted attorney fee claims, negotiated for payment of attorney fees, all paid to

themselves, refused to resolve the case in favor of Plaintiff, vetoed settlement proposals that did

not contain payment to the attorneys, put their interest in payments to themselves at a higher priority than seeking to resolve Plaintiff's claims in his favor.

Answer: The W&C Defendants deny the allegations in paragraph 129 of the Amended Complaint.

130.    Allegations: Defendants performed legal work that was of no value, caused delay and lost the opportunity to obtain adequate and fair compensation for Plaintiff's injuries and damages. This contraindicated work of no value included failing to place the interests of the client before the interests of payments to the attorneys.

Answer: The W&C Defendants deny the allegations in paragraph 130 of the Amended Complaint.

131.    Allegations: It was a breach of fiduciary duty to engage in any of these acts. This breach of fiduciary duty caused Plaintiff to lose valuable compensation, to lose the opportunity for compensation, pay for unnecessary or contra-indicated services, become billed for those and similarly wrongful services, all to the detriment of Plaintiff.

Answer: Paragraph 131 of the Amended Complaint contains legal conclusions as to which no response is required.  To the extent any response is required, the W&C Defendants deny the allegations in paragraph 131 of the Amended Complaint.

132.    Allegations: Defendants breached their fiduciary duty to Plaintiff by performing work that was unnecessary, counter-indicated, solely for the benefit of the firm and of no benefit to Plaintiff on all matters within the scope of the representation of Plaintiff, especially when they placed their own interests before that of the Client, and vetoed settlement proposals that did not compensate the attorneys to their satisfaction.

Answer: The W&C Defendants deny the allegations in paragraph 132 of the Amended Complaint and aver that it was the Toussies—not the W&C Defendants—who rejected such settlement proposals. *See, e.g.*, Ex. 8.

133.    Allegations: That breach of fiduciary duty was a substantial factor in damages to Plaintiff and the conflict of interest between Defendants' own interests along with the delay, excessive litigation, unnecessary litigation, and loss of the ability to move forward on the litigation.

Answer: The W&C Defendants deny the allegations in paragraph 133 of the Amended Complaint.

134.    Allegations: But for the acts of, and fiduciary advice of Defendants, Plaintiff would have obtained fair and adequate compensation for his injuries and damages.

Answer: The W&C Defendants deny the allegations in paragraph 134 of the Amended Complaint.

135.    Allegations: Defendants were in violation of their fiduciary duties, were in breach of fiduciary duty, and were in violation of their ethical obligations of attorneys to their client.

Answer: The W&C Defendants deny the allegations in paragraph 135 of the Amended Complaint.

136.    Allegations: These violations and breaches were a substantial factor in the negative financial outcome for Plaintiff, and proximately caused financial damage to Plaintiff.

Answer: The W&C Defendants deny the allegations in paragraph 136 of the Amended Complaint.

137.    Allegations: As a proximate result of these shortcomings in representation, Plaintiff has been damaged by this breach of fiduciary duty and the attendant conflict of interest between Defendants and Plaintiff in an amount to be determined by the Court.

Answer: The W&C Defendants deny the allegations in paragraph 137 of the Amended Complaint.

138.    Allegations: By reason of the foregoing violations and breaches, Plaintiff is entitled to judgment against Defendants for a sum to be determined based on the fiduciary duty claim.

Answer: The W&C Defendants deny the allegations in paragraph 138 of the Amended Complaint.

## PRAYER FOR RELIEF

Allegations: WHEREFORE, Plaintiff respectfully demands judgment against the Defendants as follows:

(a) Awarding Plaintiff actual damages in the $7,857,642.50 on each cause of action together with interest from July 17, 2017;

(b)  Awarding Plaintiff its costs, expenses, and reasonable attorneys' fees in connection with this action; and

(c) Together with such other and further relief which this Court deems just, proper and equitable.

Answer: The W&C Defendants deny the allegations in Toussie's Prayer for Relief except that they admit that he requests the forms of relief identified in subparagraphs (a) through (c). The W&C Defendants deny the Toussie is entitled to any damages, costs, expenses, attorney's fees or any other relief sought in the Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof they would not otherwise bear, the W&C Defendants assert the following affirmative or other defenses.  The W&C Defendants reserve the right to assert additional defenses as discovery proceeds.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred for failure to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff cannot establish that the W&C Defendants' conduct fell below the applicable standard of care.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the professional judgment rule.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff cannot establish that it suffered damages as a result of the W&C Defendants' alleged acts and omissions.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff cannot establish that the W&C Defendants' alleged acts and omissions were the proximate cause of Plaintiff's alleged damages.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by collateral estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation and/or the doctrine of laches.

### EIGHT AFFIRMATIVE DEFENSE

Plaintiff's alleged damages are speculative and impossible to ascertain.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claim for breach of fiduciary duty is redundant and duplicative of Plaintiff's claim for legal malpractice.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages were caused in whole or in part by the culpable conduct and negligence of Plaintiff and such damages should be fully or partially dismissed as a result of that culpable and negligent conduct.  The amount of damages recovered, if any, shall be reduced in proportion to the degree that Plaintiff's culpable or negligent conduct caused his alleged injuries.

### ELEVENTH AFFIRMATIVE DEFENSE

All the risks of danger that Plaintiff alleges caused him injury were obvious and apparent to Plaintiff and Plaintiff knowingly and voluntarily assumed those risks.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate damages, if any.

### THIRTEENTH AFFIRMATIVE DEFENSE

Any alleged damages sustained by Plaintiff were caused by the acts or omissions of third parties or entities over which the W&C Defendants exercised no control.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because of ratification, agreement, or consent to the W&C Defendants' alleged conduct.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The W&C Defendants incorporate by reference, as if fully set forth herein, all other affirmative and other defenses asserted by other defendants in this action.

\*       \*       \*

WHEREFORE, the W&C Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice, with costs and disbursements to the W&C Defendants, and seek such other legal and equitable relief, including an award of attorney's fees, as the Court may deem just and proper.

Dated:  New York, New York
       June 1, 2021

 

Respectfully submitted,

JOSEPH HAGE AARONSON LLC

  /s/ *Gregory P. Joseph*

Gregory P. Joseph (GJ-4208)
Rachel M. Cherington (RC-3673)
Benjamin H. Albert (BA-1583)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel: (212) 407-1200

*Counsel for Defendants Williams & Connolly LLP, Joseph G. Petrosinelli, David A. Forkner, and Jonathan E. Pahl*

835459v18