UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X
ROBERT I. TOUSSIE,

               Plaintiff,                               **MEMORANDUM AND ORDER**

        -against-                          20-CV-5921 (DG) (TAM)

WILLIAMS & CONNOLLY, LLP, et al.

               Defendants.
-------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Robert I. Toussie brings this case claiming malpractice related to Defendants' legal representation in connection with Plaintiff's efforts to enforce certain contractual relationships, as well as in a related New York State court action. (First Amended Complaint ("FAC"), ECF No. 35, ¶ 1.) Plaintiff now seeks to file a second amended complaint. (*See* Plaintiff's Motion for Leave to File Second Amended Complaint ("Mot. to Amend"), ECF No. 42.) On October 26, 2021, the Honorable Diane Gujarati referred the motion to the undersigned Magistrate Judge. (Oct. 26, 2021 ECF Order.) For the reasons set forth below, Plaintiff's motion to amend is granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Underlying Litigation

The Court provides a brief summary of the underlying litigation that formed the basis for the attorney-client relationship between Plaintiff and Defendants so as to put the claims in Plaintiff's proposed second amended complaint into context. In brief, Plaintiff hired Defendants to represent him in his efforts to enforce certain contracts to which he was a party, along with Coastal Development LLC ("Coastal") and Richard

Fields ("Fields"). (Redline Proposed Second Amended Complaint ("SAC"), ECF No. 42-2, ¶¶ 1–4, 11–25.)[1] The first underlying contract was a "Participation Agreement," by which Plaintiff Robert Toussie, together with Michael Toussie (collectively the "Toussies"), agreed to invest several million dollars into a company called Power Plant so that Power Plant, Coastal, and Fields could develop two casino projects on land belonging to the Seminole Tribe of Florida. (*Id.* ¶¶ 11, 16–17.) In exchange, the Toussies were to be provided a percentage of all distributions that Coastal received from Power Plant "or with respect to the casinos." (*Id.* ¶ 17.)

Plaintiff alleges that the Toussies paid Coastal $2.88 million, "fulfilling their funding obligations" (*id.* ¶ 21), but that despite receiving tens of millions from the casinos, Coastal and Fields did not pay the Toussies. (*Id.* ¶ 22.) In response, the Toussies filed a lawsuit against Coastal and Fields in New York State Supreme Court, which ultimately resulted in a second agreement, the "Settlement Agreement," which was executed in February 2006. (*Id.* ¶ 23–24.) Under the Settlement Agreement, Coastal and Fields agreed to pay the Toussies more than $10.6 million in payments that were then due under the Participation Agreement. (*Id.* ¶ 24.) Notably, the Settlement Agreement included "a provision requiring the parties to resolve any further disputes regarding the Toussies' rights under the Participation Agreement via arbitration." (*Id.* ¶ 25.) Thereafter, in April 2007, Power Plant and the Seminole Tribe also entered into a settlement agreement to resolve certain disputes between them. (*Id.* ¶ 26.) Under that settlement agreement, the Seminole Tribe allocated some revenues from the casinos, referred to as "Tranche B" payments, to be paid to Power Plant monthly until April

---

[1] For the sake of clarity and consistency, the Court cites to the "redline" version of Plaintiff's proposed second amended complaint throughout, noting proposed changes to the first amended complaint (ECF No. 35) where relevant. (*See* ECF No. 42-2.)

2

2029; Plaintiff alleges that these payments are set at $925,000 per month, to which Coastal is entitled to 45%. (*Id.* ¶ 28–32.)

Over time, Coastal and Fields became overextended financially, such that they "could not keep up with their obligations." (*Id.* ¶¶ 33–34.) For example, they fell into default on a nearly-$30 million loan from Bank of America that they had taken out to purchase a ranch in Wyoming. (*Id.* ¶ 34.) As a result, Coastal and Fields restructured their debt to Bank of America in 2012, pledging the Tranche B payments, which pledge was secured by a UCC-1 security agreement. (*Id.* ¶¶ 36–37.) According to Plaintiff, Coastal instructed Power Plant to deposit all of Coastal's distributions, including the Toussies' share, to a lockbox account at Bank of America, which Coastal concealed from the Toussies. (*Id.* ¶¶ 40–41.) From there, Coastal and Fields' financial outlook continued to worsen, and in or about October 2015, they stopped making payments to the Toussies. (*Id.* ¶¶ 42–48.) Starting in November 2015, the Toussies initiated the litigation that underlies the claims in this case (referred to herein as the "Coastal Litigation") and thereafter hired Defendants to represent them in connection therewith. (*Id.* ¶¶ 50–54.)

The Coastal Litigation led to arbitration and, ultimately, the entry of a New York State Supreme Court judgment in favor of the Toussies in the amount of $7,857,642.50 on July 17, 2017 (the "Judgment"). (*Id.* ¶¶ 55–104.) Prior to entry of the Judgment, Plaintiff claims that there were settlement discussions, during which a significant secured creditor of Coastal and Fields that had purchased Bank of America's debt (referred to herein as "Stabilis" or the "Stabilis Fund IV") made an offer that could have led to a settlement of the Coastal Litigation. (*Id.* ¶¶ 96–97.) Of particular relevance here, Plaintiff further claims that the settlement offer was contingent on "the Defendants herein waiv[ing] any claim to attorneys' fees which issue was still pending in the Coastal Litigation at that time." (*Id.* ¶ 98.)

3

In the proposed SAC, Plaintiff claims that Defendants "failed to advise the Plaintiff of the significance of [the Stabilis settlement] offer . . . [,]failed to explain the significance of their fee claims to the [settlement] negotiation, [and] failed to give sufficient concrete advice on this offer." (*Id.* ¶ 99.)[2] Plaintiff further alleges that Defendants "failed adequately to advise the Plaintiff on the effect of and on how to choose the relief he sought and that if he elected to reject the [Stabilis] settlement offer his Participation Interest [flowing from the Participation Agreement] would terminate." (*Id.* ¶ 100.) In addition, Plaintiff claims that Defendants rendered deficient advice on the future collectability of his claims if he rejected the Stabilis settlement offer in favor of an entry of judgment due to the superior status of Stabilis's secured debt owed by Coastal and Fields (*id.* ¶¶ 101–02, 105), which "vastly exceeds the entire revenue stream forecast to be received by Coastal." (*Id.* ¶ 108.) As a result, Plaintiff avers that the Toussies continue to be owed the full amount of the Judgment and that "[u]nder no foreseeable circumstance will a single dollar be collected." (*Id.* ¶ 109.)

## II. Procedural History

On July 16, 2020, Plaintiff commenced this action in New York Supreme Court, Kings County, against Defendants Williams & Connolly LLP, Joseph G. Petrosinelli, David A. Forkner, and Jonathan E. Pahl ("W&C Defendants"), as well as Defendants Lupkin & Associates PLLC, Jonathan D. Lupkin, and Rebecca C. Smithwick ("Lupkin Defendants" and, collectively with W&C Defendants, "Defendants"), alleging a claim of legal malpractice. (*See* Notice of Removal, ECF No. 1; Summons with Notice, ECF No. 1-

---

[2] The Court notes that there is a discrepancy here between Plaintiff's amendments as reflected in the redline version of the proposed SAC and the "clean" version. Namely, it appears the proposed amendments in the redline version were not included in the "clean" version submitted to the Court. (*Compare* SAC, ECF No. 42-2, ¶ 99, *with* Non-Redline Proposed Amended Complaint, ECF No. 42-1, ¶ 99.) As explained *supra* note 1, the Court cites only to the redline version for the purposes of the instant motion.

4

2 (filed July 16, 2020); State Court Compl., ECF No. 1-3 (filed Sept. 29, 2020).) On December 5, 2020, Defendants removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Notice of Removal, ECF No. 1, ¶ 12.)

After Defendants removed the action to this Court, Plaintiff filed the FAC on May 6, 2021. (*See* FAC, ECF No. 35.) On June 1, 2021, W&C Defendants filed an answer (*see* ECF No. 37), and served Plaintiff and his counsel with a motion for sanctions under Federal Rule of Civil Procedure 11 ("Rule 11") based on the allegations in the FAC. (*See* Mot. for Rule 11 Sanctions, ECF No. 45-1; Mot. to Amend, ECF No. 42, at 1–2.) W&C Defendants later filed an amended answer, bringing two counterclaims against Plaintiff based on alleged unpaid attorneys' fees. (*See* ECF No. 39.) On June 10, 2021, Lupkin Defendants served a Rule 11 "safe harbor" letter on Plaintiff, seeking sanctions identical to W&C Defendants. (*See* Mot. to Amend, ECF No. 42, at 2 (discussing Lupkin Defendants' safe harbor letter).) Lupkin Defendants also served Plaintiff with a motion to dismiss on June 11, 2021. (*See* ECF No. 38.) After Plaintiff's counsel conferred with counsel for W&C Defendants, on June 23, 2021, Plaintiff moved for an extension of time to file his brief in opposition to Lupkin Defendants' motion to dismiss and sought leave to file a second amended complaint. (*See* ECF No. 40.)

On June 30, 2021, the Honorable Diane Gujarati stayed the briefing schedule for the anticipated motion to dismiss and directed Plaintiff to file a letter brief explaining why leave to amend should be granted, along with the proposed SAC and a redline comparison. (*See* June 30, 2021 ECF Order.) On July 7, 2021, Plaintiff filed his letter motion seeking leave to amend, along with the proposed SAC and redline version. (*See* Mot. to Amend, ECF No. 42.) On July 14, 2021, W&C Defendants and Lupkin Defendants each filed letter briefs in opposition to Plaintiff's motion, principally

5

arguing that the Court should deny Plaintiff leave to file the proposed SAC because Plaintiff's motion for leave is (i) futile and (ii) proposed in bad faith. (*See* Lupkin Defs.' Opp'n, ECF No. 44, at 4–5 (arguing futility and adopting W&C Defendants' arguments); *see also* W&C Defs.' Opp'n, ECF No. 45, at 3–5 (arguing bad faith and futility).)

## DISCUSSION

### I. Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, the general rule "in our circuit is to allow a party to amend its complaint unless the nonmovant demonstrates prejudice or bad faith." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 157 (2d Cir. 2011). Trial courts have discretion to grant or deny leave to amend. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. PVT Ltd.*, 338 F.R.D. 579, 583 (S.D.N.Y. 2021) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). As a general rule, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [they] ought to be afforded the opportunity to test [their] claim on the merits." *United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting that the "permissive standard" of Rule 15 is consistent with the Second Circuit's "strong preference for resolving disputes on the merits"); *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (describing "the liberal spirit of Rule 15").

However, a motion to amend a pleading should be denied "if there is an 'apparent or declared reason — such as undue delay, bad faith or dilatory motive . . .

6

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (alteration in original) (quoting *Foman*, 371 U.S. at 182); *see also Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 209 (E.D.N.Y. 2017) ("The right to amend a pleading should only be granted where an amended pleading could withstand a motion to dismiss and thus would not be futile.").

Overcoming a claim of futility requires a showing of facial plausibility. *Hatteras Enterprises, Inc. v. Forsythe Cosm. Grp., Ltd.*, No. 15-CV-5887 (ADS) (ARL), 2019 WL 9443845, at *2 (E.D.N.Y. Jan. 14, 2019) ("[L]eave to amend will be denied as futile only if . . . it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." (alteration in original) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001))); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) ("[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). Additionally, "[t]he party opposing a motion to amend bears the burden of demonstrating that the proposed amendment is futile." *Bah v. Apple Inc.*, No. 19-CV-3539 (PKC), 2020 WL 4596839, at *1 (S.D.N.Y. Aug. 11, 2020); *see also Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).

## II. Analysis

Mindful that the Court is to freely grant leave to amend, *see* Fed. R. Civ. P. 15(a)(2), the Court concludes that granting leave to amend is appropriate here.[3] As a threshold matter, the Court finds that Defendants have not demonstrated that the allegations in the SAC are "on their face, entirely futile." *City of Omaha v. CBS Corp.*, No. 08-CV-10816 (PKC), 2010 WL 3958849, at *3 (S.D.N.Y. Sept. 24, 2010); *see also Hatteras Enterprises, Inc.*, 2019 WL 9443845, at *2; *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013) (explaining that when considering whether the party opposing the amendment has met its burden of demonstrating futility, "the Court reads the claims at issue in the light most favorable to plaintiff and draw[s] all inferences in [their] favor." (quotation marks omitted)).[4] Further, the Court notes that because of the procedural history here, "Plaintiffs have not yet had an opportunity to amend in response to a Court order pointing out the deficiencies in their pleading." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 309

---

[3] A magistrate judge's grant of a motion to amend a complaint is generally considered non-dispositive. *See, e.g., Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 08-CV-5081 (DRH) (ARL), 2021 WL 4472852, at *8–9 (E.D.N.Y. Sept. 30, 2021); *Prosper v. Thomson Reuters Inc.*, No. 18-CV-2890 (MKV) (OTW), 2021 WL 535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021).

[4] Some district courts have found that "[f]utility merely provides one 'appropriate basis for denying leave to amend.'" *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 125 n.11 (S.D.N.Y. 2002) (quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006)). On this view, where the "alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *Id.*; *see also Duchemin v. Leidos, Inc.*, No. 18-CV-12 (GPC) (MDD), 2018 WL 2229368, at *2 (S.D. Cal. May 16, 2018). *Cf. In re BRF S.A. Sec. Litig.*, No. 18-CV-2213 (PKC), 2019 WL 12875444, at *3 (S.D.N.Y. May 3, 2019) ("To the extent that defendants urge that the proposed amendment would be futile, that argument goes to [plaintiff]'s ultimate theories of liability, and [is] more appropriately tested through the anticipated motion to dismiss."). Here, Defendants have made clear that they intend to challenge Plaintiff's second amended complaint with a motion to dismiss. Under these circumstances, permitting Plaintiff the opportunity to file the SAC will not cause Defendants undue prejudice.

(S.D.N.Y. 2019); *see also Ulbricht v. Ternium S.A.*, No. 18-CV-6801 (PKC) (RLM), 2020 WL 5517313, at *12 (E.D.N.Y. Sept. 14, 2020).

    A. <u>Legal Malpractice Claim</u>

To properly plead a legal malpractice claim under New York law, "a plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." *Achtman v. Kirby, McInerney & Squire*, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis in original); *see also Prout v. Vladeck*, 316 F. Supp. 3d 784, 797 (S.D.N.Y. 2018). In turn, to plead negligence, "a party must aver that an attorney's conduct 'fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession.'" *Achtman*, 464 F.3d at 337 (quoting *Grago v. Robertson*, 370 N.Y.S.2d 255, 258 (1975)). As a general rule, a complaint that essentially alleges either an "error of judgment" or a "selection of one among several reasonable courses of action," does not state a claim for malpractice. *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985). However, an attorney may be held liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Bernstein v. Oppenheim & Co.*, 554 N.Y.S.2d 487, 490–91 (1990).

In this case, Plaintiff's proposed SAC includes highly detailed allegations regarding the history of the relationship between the parties to the Coastal Litigation, and Defendants' alleged failures during their representation in that matter. More specifically, the proposed SAC avers a number of alleged failures on Defendants' parts, including:

> [T]heir failure to adequately advise Toussie of the choice between accepting the Judgment or accepting a continuous stream of payments to him, regarding the effect of the entry of that Judgment in the Coastal Litigation and what effect it would have on [] Toussie's ownership rights in the Participation Interest granted him under the Participation Agreement and the Settlement Agreement, the priority which secured debt owed by Richard Fields and Coastal Development LLC to Stabilis

9

> Fund IV, LP and its' wholly owned subsidiary, SFIV SS-1, LLC (the "Secured Debt") would have over the Judgment and the ability of Toussie to enforce the Judgment against the assets of Richard Fields and Coastal [D]evelopment, LLC given the junior secured status accorded to the Judgment as a matter of law compared to the Secured Debt.

(SAC, ECF No. 42-2, ¶ 2.) In addition to these summary allegations, Plaintiff complains of specific acts that he claims fell below the standard applicable to the legal profession, such as (1) failing "to object to [a] finding in the Arbitration Award that Coastal and Fields had pledged the Toussie Tranche B Payments" (*id.* ¶ 84), when, Plaintiff contends, Coastal and Fields had not done so (*id.* ¶¶ 82–83); (2) failing to advise Toussie that these incorrect "findings could have preclusive effect on his efforts to enforce his rights under the Participation Agreement" (*id.* ¶ 86); and (3) moving to confirm the arbitration award without raising any of the above issues (*id.* ¶ 87).

In addition, as outlined *supra*, Plaintiff contends that Defendants provided deficient representation with regard to a possible settlement discussed in 2017, including at a settlement conference on February 16, 2017, and in connection with a referral to the alternative dispute resolution program in the New York Commercial Division in April of that year. (*Id.* ¶¶ 88–102.) For example, Plaintiff specifically claims that, "at the Settlement Conference, the Defendants herein refused to enter into a settlement agreement with Coastal and Fields unless it contained a provision that their attorneys' fees would be paid in full" (*id.* ¶ 92), and that Defendants failed to adequately advise Plaintiff on the effect of rejecting a proposed settlement (*id.* ¶¶ 100–01). As a consequence of these purported deficiencies in Defendants' representation, Plaintiff alleges financial harm, specifically, an inability to collect the monthly payments to which the Toussies had been entitled, or any recovery on the judgment of $7,857,642.50 that was ultimately entered on July 17, 2017, in the Coastal Litigation. (*Id.* ¶¶ 96, 100, 104, 109).

As noted above, Defendants contend that leave to amend should be denied because the amendments would be futile and because they are proposed in bad faith. (*See generally* Lupkin Defs.' Opp'n, ECF No. 44; W&C Defs.' Opp'n, ECF No. 45.) Defendants argue that Plaintiff's allegations are untrue, speculative, and conclusory, as well as legally deficient because Plaintiff has failed to allege that the Toussies would have been willing to accept the settlement proposed by Stabilis. (*See* Lupkin Defs.' Opp'n, ECF No. 44, at 4; W&C Defs.' Opp'n, ECF No. 45, at 3–5.) In addition, Lupkin Defendants also argue that Plaintiff's proposed claims in the SAC fail due to an inability to plead collectability. (Lupkin Defs.' Opp'n, ECF No. 44, at 5.)

As a threshold matter, the Court notes that it must take Plaintiff's allegations as true for the purpose of evaluating the motion to amend. *Ouedraogo*, 2013 WL 3466810, at *6. Therefore, taking Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the SAC states a facially plausible claim for legal malpractice in that it alleges (1) specific actions and inactions by Defendants — such as failing to object to erroneous factual findings of a tribunal and failing to properly advise Plaintiff of the consequences of the entry of judgment rather than settlement — that, if proven, could establish neglect in the execution of their legal duties; (2) that Defendants' faulty representation was the proximate cause of Plaintiff's lost ability to continue to recover payments under the Participation Agreement in the amount of $41,470.56 per month (*see* SAC, ECF No. 44-2, ¶ 96); and (3) actual loss, in that Plaintiff will not be able to collect either the monthly payments to which the Toussies were previously entitled under the Participation Agreement or any amounts due on the Judgment in the Coastal Litigation because their debt is inferior to the secured debt owed by Coastal and Fields to Stabilis. (*Id.* ¶¶ 96, 100, 104–09.) *See generally Achtman*, 464 F.3d at 337. Accordingly, at this stage of the litigation, Plaintiff

11

should be granted leave to file his second amended complaint so he may test his allegations on the merits.[5]

Regarding Lupkin Defendants' argument that Plaintiff has not adequately pled that the Toussies "would have even been willing to accept the terms proposed" by Stabilis (Lupkin Defs.' Opp'n, ECF No. 44, at 4), the Court draws all reasonable inferences in Plaintiff's favor and concludes, based on the detailed allegations in the proposed SAC, that Plaintiff sufficiently pleads causation. As set forth in the SAC, Plaintiff alleges that he may have had a better outcome if he had received adequate legal advice regarding the risks of opting for settlement over the entry of the Judgment in the Coastal Litigation. (*See, e.g.*, SAC, ECF No. 44-2, ¶ 122 (alleging that the departures from accepted legal practice led "to negligent selection of the Judgment over continuing payments from the tranche"); *id.* ¶ 114 ("'But for' this departure in failing adequately to research, calculate, determine whether there were earlier superior liens which would render the Judgment uncollectible, and failing to give adequate advice so as to avoid the negligent selection [of Judgment over settlement] there would have been a better outcome.").) Although the SAC could be clearer on the specific question of whether Plaintiff would have accepted Stabilis's offer, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff adequately alleges "but for" causation. *See Prout*, 316 F. Supp. 3d at 799 ("In general, to establish proximate, or 'but for,'

---

[5] The Court notes that the New York Court of Appeals has made clear that "a cause of action for legal malpractice pose[s] a question of law which can be determined on a motion to dismiss," *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985). Although the standards for futility under Rule 15 and Rule 12(b)(6) are similar, as observed *supra* note 4, there are situations where "alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 125 n.11. This is such a case. Given the complex nature of the dispute here, and the preference in the Second Circuit to resolve cases on the merits, the Court finds that, in an exercise of discretion, the better course here is to permit Plaintiff to file the SAC so that the merits may be reached.

causation in an action for attorney malpractice, a plaintiff must plausibly allege that, but for the malpractice, the plaintiff would have received a more advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage."); *see also Drasche v. Edelman & Edelman, P.C.*, 2021 WL 601597, at *3 (N.Y. Sup. Ct. Feb. 12, 2021) (dismissing legal malpractice claim, finding that plaintiff did "not claim that she *would have accepted* the settlement offer had she known about it," and that "plaintiff's claim that she may have accepted a settlement offer" was insufficient (emphasis in original)).[6]

In addition, the Court does not conclude that Plaintiff's motion for leave to file the proposed SAC is sought in bad faith. To the contrary, faced with two potential motions for sanctions, Plaintiff seeks an opportunity to remedy any purported flaws in the FAC that might justify such sanctions.[7] Justice requires that Plaintiff be afforded an opportunity to "withdraw[] or appropriately correct[]" the "challenged paper." Fed. R. Civ. P. 11(c)(2); *see also Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir.

---

[6] *Drasche* is the sole case cited by Lupkin Defendants in support of their argument that Plaintiff's SAC is futile because it fails to allege that the Toussies would have accepted Stabilis's offer. (Lupkin Defs.' Opp'n, ECF No. 44, at 4.) While it is instructive, the facts of *Drasche* are not on all fours with the allegations in this case. In *Drasche*, the plaintiff claimed that her attorneys received a settlement offer that was never conveyed to her. *Drasche*, 2021 WL 601597, at *2. As set forth in the SAC, Plaintiff is not claiming he was never informed of a potential settlement, but rather that he received deficient advice on how to evaluate it, and that Defendants also performed negligently in other respects as discussed above. Taking Plaintiff's allegations as true, they state facially plausible "but for" causation as to the damages alleged in the SAC. *See generally Prout*, 316 F. Supp. 3d at 799.

[7] W&C Defendants contend that denial of leave to amend may be justified on bad faith grounds where "a plaintiff seeks to include factual allegations inconsistent with those in earlier pleadings," claiming that the allegations in the SAC "fundamentally contradict" the allegations in the FAC. (W&C Defs.' Opp'n, ECF No. 45, at 3.) The Court concurs with W&C that, if taken literally, there are arguable contradictions between the two documents, but concludes that the linguistic changes in the SAC do not evidence bad faith sufficient to deny leave to amend. W&C Defendants also argue that the SAC "fails to excise all the False Allegations" and adds new falsehoods. (W&C Defs.' Opp'n, ECF No. 45, at 3.) Whether Plaintiff's allegations are true or false, however, is a matter for another day.

2010) (per curiam) ("By thus encouraging correction or withdrawal of defective filings, Rule 11's safe harbor provision seeks to reduce, if not eliminate, the unnecessary expenditure of judicial time and adversary resources."). *Cf. Cotto v. City of New York*, No. 16-CV-8651, 2018 WL 3094915, at *3–4 (S.D.N.Y. June 20, 2018) (granting leave to amend in response to Rule 11 "safe harbor" letter, while rejecting claims of bad faith and futility). Finally, Defendants' remaining arguments —which are largely premised on whether Plaintiff's allegations are true and thus raise questions of fact that this Court cannot reach on a motion to amend — are unavailing at this stage of the litigation.[8]

B. Breach of Fiduciary Duty Claim

"Under New York law, the elements of a claim for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted)). Under New York Law, "[a] fiduciary relationship exists . . . when one is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (modification and quotation marks omitted)); *see also Ulico Casualty Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 20 (N.Y. App. Div., 1st Dep't, 2008) ("It is axiomatic that the relationship of attorney and client is fiduciary: 'The attorney's obligations, therefore, transcend those prevailing in the commercial market place' . . . .") (quoting *Matter of Cooperman*, 83 N.Y.2d 465, 472 (1994)).

---

[8] The Court notes the Lupkin Defendants' argument that the SAC fails to address that Plaintiff's legal malpractice claim remains insufficient due to "an inability to plead collectability." (Lupkin Defs.' Opp'n, ECF No. 44, at 5). This issue, however, goes to damages, not the facial plausibility of Plaintiff's claims. *See Iqbal*, 556 U.S. at 678.

14

In this case, Plaintiff's proposed SAC includes allegations regarding the attorney-client relationship between Plaintiff and Defendants, a fiduciary relationship to be sure, as well as Defendants' purported representations that they had "special expertise in handling contract enforcement actions." (SAC, ECF No. 44-2, ¶ 3.) Plaintiff alleges that Defendants, among other things, engaged in unnecessary work, engaged in conduct that caused financial harm to Plaintiff, and that they inserted their interest in recouping their attorneys' fees into the settlement discussions to Plaintiff's detriment. (*Id.* ¶¶ 127–29.) Consequently, Plaintiff claims Defendants' actions "caused Plaintiff to lose valuable compensation, to lose the opportunity for compensation," and other damages. (*Id.* ¶ 131.) Assuming the facts of the SAC to be true, and drawing all reasonable inferences in Plaintiff's favor at this stage of the case, these allegations suffice to state a facially plausible claim for breach of fiduciary duty under New York law, and Plaintiff should be permitted the opportunity to file his proposed SAC.

## CONCLUSION

In light of the allegations set forth in the proposed Second Amended Complaint and the applicable law, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the allegations state plausible claims that may be a proper subject of relief against Defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (observing, in the context of a motion to dismiss, that plaintiffs must allege only "enough facts to state a claim to relief that is plausible on its face"). Plaintiff's motion to amend (ECF No. 42) is granted.

\* \* \* \* \*

Plaintiff is directed to file the SAC by **January 28, 2022**. W&C Defendants and Lupkin Defendants shall answer, move, or otherwise respond to the SAC by **February 11, 2022**. If Defendants choose to respond with a motion to dismiss, they are respectfully directed to serve Plaintiff and file a letter notice on ECF apprising the Court of service, in accordance with the Individual Practice Rules of the Honorable Diane Gujarati. If Plaintiff is served with one or more motions to dismiss, Plaintiff shall serve his consolidated opposition on any movants by **March 4, 2022**; and movant(s) shall serve any reply on Plaintiff by **March 11, 2022**, at which point the movant(s) shall file the fully briefed motion(s) on ECF in accordance with Rule III.B.4 of Judge Gujarati's Individual Practice Rules.[9]

**SO ORDERED.**

Dated:   Brooklyn, New York
         January 20, 2022

                                                                            *Taryn A. Merkl*
                                                                            _____
                                                                            TARYN A. MERKL
                                                                            UNITED STATES MAGISTRATE JUDGE

---

[9] The Court notes that Defendants have indicated their intentions to file motions for sanctions. (*See* Lupkin Defs.' Opp'n, ECF No. 44, at 5; W&C Defs.' Opp'n, ECF No. 45, at 1.) The parties are respectfully directed to file a pre-motion conference letter in accordance with Judge Gujarati's individual rules prior to filing any such motions.