UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ROBERT I. TOUSSIE,

                   Plaintiff,

     -against-

WILLIAMS & CONNOLLY, LLP, JOSEPH G.
PETROSINELLI, DAVID A. FORKNER,
JONATHAN E. PAHL, LUPKIN &
ASSOCIATES, PLLC, JONATHAN D.
LUPKIN, and REBECCA C. SMITHWICK,

                   Defendants.

-----------------------------------------------------------x

Case No.: 1:20-cv-5921 (DG) (TAM)

**ORAL ARGUMENT REQUESTED**

Date Served: February 11, 2022

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY DEFENDANTS, LUPKIN PLLC, JONATHAN D. LUPKIN, AND REBECCA C. SMITHWICK, TO DISMISS THE SECOND AMENDED COMPLAINT

**KAUFMAN DOLOWICH & VOLUCK, LLP**
Attorneys for Defendants
*Lupkin PLLC, Jonathan D. Lupkin,*
*and Rebecca C. Smithwick*
135 Crossway Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 681-1100

Of Counsel:
    Brett A. Scher
    Adam Nicolazzo

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ......................................................................................... 2

    A.   The Arbitration Award ............................................................................ 4

    B.   Toussie Rejects Defendants' Recommendations to Settle ......................... 6

    C.   Toussie, Through Different Counsel, Fails to Collect on His Judgment .... 9

THE COMPLAINT ..................................................................................................... 11

STANDARD OF REVIEW ......................................................................................... 12

ARGUMENT ............................................................................................................. 12

    POINT I. THE LEGAL MALPRACTICE CLAIM, PREMISED ON THE FAILURE TO OBJECT TO THE ARBITRATOR'S FINDINGS, MUST BE DISMISSED AS A MATTER OF LAW ...................................................................................... 12

    A.   The Legal Premise for Toussie's "Failure to Challenge the Arbitrator's Findings" Malpractice Claim Has Already Been Rejected by Two Courts 13

    B.   Toussie is Collaterally Estopped from Arguing, Yet Again, That His Interests Were Superior to BofA and Stabilis ............................................................. 15

    C.   The "Failure to Object" Legal Malpractice Claim Must Also be Dismissed Because Toussie Fails to Plead How He Would Have Obtained a More Favorable Outcome in the Underlying Action ......................................... 17

    POINT II. THE LEGAL MALPRACTICE CLAIM, BASED ON THE FAILURE TO ADVISE/REJECTION OF THE STABILIS SETTLEMENT OFFER FAILS TO STATE A CLAIM ............................................................................................... 18

    A.   Toussie Fails to Allege That the Lupkin Defendants Breached Any Duty Arising From any Purported Settlement Offers ........................................ 18

    B.   The Legal Malpractice Claim, Premised on the Purported Rejection of a Settlement Offer, Fails Because Toussie Admits that His Debts Against Coastal and Fields Were Not Collectible ................................................. 23

    POINT III. THE BREACH OF FIDUCIARY DUTY CLAIM IS DUPLICATIVE ....... 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006) ....................... 13

*Amadasu v. Ngati*, 05-CV-2585 (JFB) (LB), 2006 WL 842456 (E.D.N.Y. Mar. 27, 2006) ........ 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 12

*Bua v. Purcell & Ingrao, P.C.*, 99 A.D.3d 843, 952 N.Y.S.2d 592 (2d Dep't 2012) .................. 19

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) ........................................... 25

*Drasche v. Edelman & Edelman, P.C.*, 2021 WL 601597 (N.Y. Sup. Ct. Feb. 12, 2021) ........... 20

*Fallon v. Wall St. Clearing Co.*, 182 A.D.2d 245, 586 N.Y.S.2d 953 (1st Dep't 1992) .............. 17

*Franzone v. Lask,* 2016 WL 4154276 (S.D.N.Y. Aug. 5, 2016), *report and recommendation adopted,* 2016 WL 4491730 (S.D.N.Y. Aug. 25, 2016) .................................................. 18

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ...................................................... 25

*Jedlicka v. Field*, 14 A.D.3d 596, 787 N.Y.S.2d 888 (2d Dep't 2005) .................................... 23

*Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227 (S.D.N.Y. June 3, 2008) ........ 17, 23

*Judd Burstein, P.C. v. Long*, 797 Fed. App'x. 585 (2d Cir. 2019) ......................................... 19

*Katsoris v. Bodnar & Milone, LLP*, 186 A.D.3d 1504, 131 N.Y.S.3d 89 (2d Dep't 2016) .......... 19

*Kirk v. Heppt*, 532 F. Supp.2d 586 (S.D.N.Y. 2008) ....................................................... 24

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ....................................... 21

*McCoy v. Ct. of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429 (1988) .................................... 13

*McKenna v. Forsyth & Forsyth*, 280 A.D.2d 79, 720 N.Y.S.2d 654 (4th Dep't 2001) ................ 23

*Meskunas v. Auerbach*, 17 CV 9129 (VB), 2019 WL 719514 (S.D.N.Y. Feb. 20, 2019) ........... 23

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ................................................. 21

*Nordwind v. Rowland*, 04-Civ.-9725 (AJP), 2007 WL 2962350 (S.D.N.Y. Oct. 10, 2007) ........ 24

*Nordwind v. Rowland*, 584 F.3d 420 (2d Cir. 2009) .......................................................... 12

*Reibman v. Senie*, 302 A.D.2d 290, 756 N.Y.S.2d 164 (1st Dep't 2003) .................................. 18

*Rubens v. Mason (Rubens I)*, 387 F.3d 183 (2d Cir. 2004)........................................... 17

*Schutz v. Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 Fed. Appx. 79 (2d Cir. 2014) ....... 24

*Schwartz v. Pub. Adm'r of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955 (N.Y. 1969) ...................... 16

*Schweizer v. Mulvehill*, 93 F. Supp. 2d 376 (S.D.N.Y. 2000) ...................................... 23

*Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675 (2d Cir. 1989) ............................. 17

*Toussie v. Coastal Dev., LLC*, 161 A.D.3d 533, 78 N.Y.S.3d 294 (1st Dep't 2018) ............... 9, 14

*Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881 (N.Y. Sup. Ct. Nov. 6, 2019), *aff'd*, 188 A.D.3d 433 (1st Dep't 2020) ..................................................................... 11, 15, 16, 17

*Tulczynska v. Queens Hosp. Ctr.*, 17 CIV. 1669 (DAB), 2019 WL 6330473 (S.D.N.Y. Feb. 12, 2019), *reconsideration denied*, 17-CV-1669 (VSB), 2020 WL 2836759 (S.D.N.Y. June 1, 2020) ......................................................................................................... 21

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dep't 2004) ........................................................... 17, 18

*Wilder v. Thomas*, 854 F.2d 605 (2d Cir. 1988) .................................................. 16, 17

*Zegelstein v. Roth Law Firm PLLC*, --- N.Y.S.3d ---, 2021 NY Slip Op 03396 (1st Dep't 2021) 16

**Rules**
Fed. R. Civ. P. 12(b)(6)........................................................................ 12

# PRELIMINARY STATEMENT

Defendants, LUPKIN PLLC i/s/h/a LUPKIN & ASSOCIATES, PLLC, JONATHAN D. LUPKIN, and REBECCA C. SMITHWICK (hereinafter collectively referred to as the "Lupkin Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Second Amended Complaint ("SAC").[1]

In this case of misdirected anger, plaintiff, Robert I. Toussie seeks to blame the Lupkin Defendants for Toussie's decision to go into business with shady business partners Richard Fields ("Fields") and his company Coastal Development LLC ("Coastal"), twenty-two years ago. When Fields and Coastal refused to pay Toussie, he retained the Lupkin Defendants, as well as Williams & Connolly, LLP, Joseph G. Petrosinelli, David A. Forkner and Jonathan E. Pahl (the "W&C Defendants") (collectively with the Lupkin Defendants, "Defendants") to recover from Fields/Coastal on their *unsecured* indebtedness to Toussie. Defendants successfully prosecuted an arbitration on Toussie's behalf and procured a judgment for $7,857,642.50 *in Toussie's favor* (the "Judgment") – a judgment that was affirmed by the Appellate Division, First Department. Toussie has apparently been thwarted by lenders who hold (and have always held) liens against Fields superior to his, leading to Toussie turning on his attorneys and, incredulously, claiming herein that securing a Judgment was somehow a "loss."

Clearly aware that his initial theory – that successfully securing a judgment on an unsecured obligation somehow moved him *down* the line in terms of lien priority – is implausible, Toussie now resorts to an alternative (and equally meritless) argument that, with the benefit of hindsight, he believes that Defendants should have done more to counsel him to settle the underlying litigation rather than secure a judgment. As discussed herein, that conclusory

---

[1] This motion is also supported by the accompanying Declaration of Brett A. Scher, dated February 11, 2022 (the "Scher Decl."). All exhibits referenced herein are annexed thereto.

assertion is insufficient to sustain a legal malpractice claim and is belied by Toussie's documented and adamant refusal to settle the underlying arbitration. For identical reasons, Toussie's vaguely alleged breach of fiduciary duty claim should be dismissed on substantive grounds as well as based upon the fact that it is duplicative of his legal malpractice claim.

Toussie's Complaint must be dismissed as a matter of law. Alternatively, if the Court determines it cannot grant the motion without reference to exhibits that it deems beyond the scope of permissible review for a 12(b) motion, the Lupkin Defendants respectfully request that the instant Motion be converted to one for summary judgment.

## FACTUAL BACKGROUND

On September 1, 2000, Toussie, with his brother, Michael Toussie, entered into a Participation Agreement ("PA") with Coastal and Fields. (Exhibit "A" ("SAC") ¶ 15; Exhibit "B" (PA)). Coastal, together with Native American Development LLC ("NAD"), were members of Power Plant Entertainment LLC ("Power Plant"), an entity formed to develop two Hard Rock Casinos in Florida on land belonging to the Seminole Tribe of Florida (the "Tribe"). (SAC ¶¶ 11-13). Pursuant to the PA, Toussie invested $2.88 million with Coastal and, in exchange, Coastal agreed to convey to Toussie a 11.7647% interest *in distributions* received by Coastal from Power Plant. (SAC ¶¶ 14, 16, 17; Exhibit "B" ¶ 5(a)). Pursuant to the PA, Coastal established a segregated bank account to hold all distributions from Power Plant, including Toussie's portion. (Exhibit "B" ¶ 6(b); SAC ¶ 18). Fields executed a personal guaranty, dated September 1, 2000, to guarantee payment and performance of Coastal's obligations, **but Toussie's investment was not secured in any other way.** (SAC ¶ 19; Exhibit "B").

The Complaint alleges that after the Hard Rock Casinos opened, Coastal and Fields "began receiving tens of millions of dollars of distributions but did not pay the Toussies,"

2

resulting in a first round of litigation, commenced in 2004, between Toussie, Coastal, and Fields. (SAC ¶¶ 22-24). That litigation resulted in a settlement on February 10, 2006 (the "2006 Settlement Agreement") wherein Coastal and Fields agreed to pay Toussie more than $10.6 million and the parties agreed to resolve any further disputes with binding mediation before the Hon. E. Leo Milonas. (*Id*. at ¶¶ 24-25; Exhibit "C" (2006 Settlement Agreement)).

Separately, in 2007, Power Plant and the Tribe settled certain disputes between them that resulted in a lump sum payment to Power Plant in the amount of $643,580,730. (SAC ¶¶ 26-27). Settlement payments were structured in two tranches, with Tranche A payments made to service a loan, and Tranche B payments paid directly to Power Plant in the form of monthly payments of $925,000 (the "Tranche B Payments"). (*Id*. at ¶¶ 28-30). As Coastal owned 45% of Power Plant, it received $416,250 per month from the Tranche B Payments. These payments are scheduled to continue until April 2029. (*Id*. at ¶¶ 31-32).

Coastal and Fields then began to use debt to fund a lavish lifestyle including the purchase of homes in NYC, Westchester, and Miami, a ranch in Wyoming, property in Texas, thoroughbred horses, and two Gulfstream airplanes. (*Id*. at ¶ 33). The Complaint alleges that in 2012, to refinance $30 million of their debt held by Bank of America ("BofA"), Fields and Coastal entered into a secured Pledge and Security Agreement (the "Coastal Pledge Agreement"), without notice to Plaintiff, which "absolute[ly], irrevocabl[y], and unconditional[ly]" pledged *the entire* Tranche B Payments to a lockbox account and eliminated the segregated account where funds had previously been placed for Toussie. (*Id*. at ¶¶ 34-37, 39, 41; Exhibit "D" (Coastal Pledge Agreement)). In the Coastal Pledge Agreement, Coastal pledged **all** of its rights, title, and interest in Power Plant to BofA to secure Coastal's obligations, such that "all distributions and other payments by [Power Plant] **which would otherwise be**

**distributed and paid to [Coastal] shall, upon the occurrence and during the continuation of**
**an Event of Default, be distributed or paid by [Power Plant] to [BofA]…"** (Exhibit "D" ¶
2(a) and (b)) (emphasis added). In a separate Security Agreement, Coastal and Fields granted
BofA security interests in various collateral. (Exhibit "E" (Security Agreement)). The Complaint
alleges that Fields defaulted on his obligations to BofA, who then began sweeping the lockbox
account and seized all distributions Coastal received from Power Plant. (SAC ¶¶ 45-47). Fields
again stopped paying Toussie. (*Id.* at ¶ 48).

On or before January 18, 2016, Toussie, with Michael Toussie, retained W&C and then
retained Lupkin as local counsel to compel arbitration against Fields and Coastal in an action
entitled *Robert Toussie and Michael Toussie v. Coastal Development, LLC and Richard Fields*,
New York County Supreme Court, under Index No. 650227/2016 (the "Underlying Action").
(*Id.* at ¶¶ 1, 51, 53). In June 2016, while the arbitration was pending and "unbeknownst to the
Toussies," Fields' indebtedness to BofA was acquired by SFIV SS-1, LLC, a wholly-owned
subsidiary of Stabilis Fund IV, LP (collectively, "Stabilis"), a private equity lender specializing
in acquiring senior debt. (*Id.* at ¶ 63). The Complaint alleges that Stabilis and Fields entered into
an agreement (the "Forbearance Agreement"), whereby Stabilis loaned Fields an additional $13
million and in exchange took control of "some or all of the assets and income stream held by
Fields' numerous LLC's, including Power Plant and the Tranche B Payments," which were paid
to Stabilis through a lockbox. (*Id.* at ¶¶ 64, 65). The Forbearance Agreement reaffirmed the
pledge by Coastal of its interest in Power Plant, including Toussie's share of distributions, to
BofA. (Exhibit "F" (Forbearance Agreement) ¶ 2(b)).

### A.    The Arbitration Award

On December 20, 2016, an arbitration award was issued in favor of Toussie (the
"Arbitration Award"). (SAC ¶ 74; Exhibit "G" (Arbitration Award)). The Arbitrator found that

"Coastal pledged [to BofA] its interest in Power Plant **including the rights to the Toussies'** **share of the $416,250 of monthly distributions** Coastal received....The [Stabilis] [F]orbearance [A]greement reaffirms the pledge of the Toussie's [sic] share of distributions [to BofA]." (Exhibit "G" ¶¶ 13, 25) (emphasis added). The Arbitrator held that while Coastal and Fields' pledge violated the Toussies' property rights by appropriating an interest in the Toussies' percentage share and transferring it without the Toussies' knowledge or consent, an award to Toussie of specific performance (i.e. ordering Coastal to begin paying Toussie his portion of the Tranche B Payments) was "self-defeating, likely impossible, and certainly impractical," because the Forbearance Agreement had already irrevocably placed all casino distributions, including Toussie's share, **outside of Fields' control**. (*Id.* at ¶¶ 36, 51-53). As a result, the Arbitrator did not award specific performance. Instead, Toussie was awarded damages of $6,678,269, "representing the present value of the Toussies' future interest," and $812,340 in attorneys' fees. (*Id.* at ¶¶ 57, 63).

Despite Toussie's resounding victory in the Arbitration, the Complaint alleges that the Arbitrator "improperly found" that the Forbearance Agreement reaffirmed the pledge of Toussie's share of Tranche B Payments. (SAC ¶ 81). Toussie further alleges that the Defendants failed to "object" to the finding in the Arbitration Award, but fails to allege where or when or how Defendants should have "objected." (*Id.* at ¶¶ 84-86). Next, Toussie incredulously alleges that Defendants failed to advise Toussie of the purported "preclusive effect[s]" of the Arbitration Award on his efforts to "enforce" the PA, wholly ignoring that the Arbitration was undertaken because of Coastal and Fields' **breach** of the PA. (*Id.* at ¶¶ 85-86).

## B.     Toussie Rejects Defendants' Recommendations to Settle

Toussie alleges that prior to the Arbitration Award being confirmed, Fields, Coastal, and Stabilis participated in a court-ordered settlement conference where a settlement was proposed. (*Id.* at ¶¶ 88, 90, 91, 94, 95). Plaintiff does not dispute receipt of the purported settlement offer made to him at the settlement conference and provides no details of the proposed settlement offer, other than claiming that it would have allowed him to continue to receive a portion of the Tranche B Payments. (*Id.* at ¶ 91). He fails to allege that the settlement offer was acceptable to him, and bizarrely claims[2] that "the Defendants herein refused to enter into a settlement agreement with Coastal and Fields unless it contained a provision that their attorneys' fees would be paid in full," when, in fact, Plaintiff was obviously the one with the power to agree to any settlement, not his attorneys. (*Id.* at ¶ 92). Plaintiff contends that "[a]s a result of the Defendants' demand that their attorneys' fees be paid in full by Coastal and Fields no settlement was agreed upon." (*Id.* at ¶ 102). The Complaint is silent as to what the terms of global settlement would have been, or whether Coastal, Fields, Stabilis, Toussie, or even if Michael Toussie, the co-plaintiff in the Underlying Action, would have accepted those terms.

The Complaint selectively quotes from a letter from Stabilis's counsel, filed in the Underlying Action, which Toussie alleges provided "written assurances" that Stabilis would have granted Toussie and Michael Toussie "a *pari passu* lien on the Toussies['] Participation Interest and the payments made by Coastal in accordance therewith in an amount not to exceed $41,470.56 per month, provided that the [Underlying Action] and all related litigation is concluded in all respects with prejudice... [Stabilis] is prepared to afford the lien rights

---

[2] The allegation is implausible as Plaintiff alleges that *he* paid all of Defendants' attorneys' fees, so why would Defendants be demanding that Stabilis pay their fees as part of a settlement. (SAC ¶¶ 93, 103).

(notwithstanding the fact that we do not believe that the Toussies are entitled to them)..." (*Id.* at ¶¶ 96-97; Exhibit "H" (Stabilis Letter), p. 1). Stabilis expressly conditioned its "offer" upon the resolution of "the issue of attorney's fees" that Stabilis understood "must still be addressed in the [Underlying Action]." (Exhibit "H", p. 1). The Stabilis Letter concluded that no agreement would be reached absent Stabilis' approval. (*Id.* at pp. 1-2).

After obstinately rejecting all settlement efforts in the Underlying Action and apparently being "thwarted" by a superior lienholder from collecting on his Judgment, Toussie now alleges that Defendants failed to advise him of: the "significance of any offer" from Stabilis; the significance of the "fee claims" to the negotiation; the "significant benefits" that the *pari passu* lien would have provided; "how to choose the relief he sought"; that Toussie's junior interest could be eliminated if he rejected the Stabilis proposal; and that Stabilis could assert a lien over the entirety of the Tranche B Payments, as well as all current and future assets and income of Fields and Coastal and whether that would be to Toussie's detriment. (SAC ¶¶ 99-101, 108).

Above and beyond the fact that these claims are nothing more than Toussie's regret, with the benefit of hindsight, to litigate his claims in the Underlying Action to Judgment, the documents submitted herein conclusively establishes that Defendants advised Toussie of the Stabilis Letter on April 3, 2017, the next business day, noting specifically that "Coastal and Fields have filed papers asking to supplement the record with a letter from their lender offering to grant you a security interest in $41K per month of stream payments." (Exhibit "I" (Pahl April 3, 2017 Email)). More critically (and making Toussie's assertions in this action utterly frivolous), the offer was unequivocally rejected by both Toussie and his brother Michael. On April 3, 2017, Michael Toussie rejected the offer in no uncertain terms: "We don't want a lien...we OWN it. It is our property." (Exhibit "J" (Michael Toussie April 3, 2017 Email)). On

April 21, 2017, when Defendants provided Toussie with a copy of the opposition to Coastal and Fields' motion, Toussie complemented Defendants work and literally underlined his opinion as to why the Stabilis offer was unfair: "FAIRNESS WOULD DICTATE THAT IN ANY CASE STABILIS SHOULD BE [] SUBORDINATE TO US.VERY GOOD RESPONSE." (Exhibit "K" (Toussie April 21, 2017 Email)) (capitalization and underlining in original). Further, in an April 27, 2017 email, Toussie laughed off warnings of the risk that Stabilis would seize the assets of Coastal and Fields (ironically the exact thing Toussie now alleges has rendered his Judgment uncollectible -- *see* SAC ¶ 108) if he proceeded to Judgment, declaring: "BOB[3] IS ON HIS KNEES.BEGGING FORGIVENESS FROM THE POPE.THEY MAY THINK THEY WILL SEIZE.WAIT.ANYTIME NEXT WEEK.I AM ALSO CALLING THE DALAI LAMA AND THE CHIEF RABBI OF ISRAEL.NOW THE REAL FUN BEGINS,ME." (Exhibit "L" (April 27, 2017 Emails)) (capitalization in original).

Contrary to the assertions in the Complaint, Toussie was informed, prior to the entry of the Judgment, that Stabilis purchased $80 million of the debt from BofA. (*See* Exhibit "K"; Exhibit "M" (Toussie Opposition to Coastal and Fields' Motion to Supplement), p. 2, n. 3)). More critically, Defendants laid out the risks and benefits of pursing judgment enforcement versus negotiating a settlement. (Exhibit "N" (Pahl May 3, 2017 Email)). Defendants advised Toussie of the risk that he "would stop receiving the $41K [he] receive[d] each month," as well as the "significant risk [he] could go through the entire process, add substantially to [his] costs and fees, **and recover nothing.**" (*Id.*) (emphasis added). Defendants recommended that Toussie pursue settlement, and that Toussie use his leverage to "receive [his] monthly payments directly from Power Plant[,] ... be paid [his] attorneys' fees[, and] ... become a secured creditor with

---

[3]    Here, Toussie refers to himself in the third person, and by his short name "Bob."

rights to seize your portion of the stream upon future defaults – and Coastal and Fields' secured lender (Stabilis) would recognize the validity of your interest." (*Id.*).

While waiting for the court in the Underlying Action to confirm the Arbitration Award, Toussie demanded of Defendants, in no uncertain terms, that: "1 **JUDGMENT TO BE ENTERED AS ORDERED.** 2 YOU TELL THEM THAT IF THEY STOP THIS NONSENSE, AND DO NOT ATTEMPT TO ALTER, YOU WILL GET ME TO CREDIT THEM THE 25K INTEREST AFTER JUDGMENT ENTERED. ... **PRESS THE JUDGMENT**..." (Exhibit "O" (May 23, 2017 Emails)) (capitalization in original) (emphasis added).

After Toussie rejected the advice to settle, the Arbitration Award was confirmed and Judgment was entered in his favor in the amount of $7,857,642.50, (SAC ¶¶ 87, 104). The Appellate Division, First Department affirmed the Judgment, holding that "[t]he damages award was appropriate **because specific performance** [from Fields and Coastal] **was impossible.**" *Toussie v. Coastal Dev., LLC*, 161 A.D.3d 533 (1st Dep't 2018) (emphasis added).

### C.     Toussie, Through Different Counsel, Fails to Collect on His Judgment

Toussie, through subsequent counsel (one of his attorneys in this action), then apparently attempted to collect on the Judgment. However, according to the Complaint, all efforts to enforce the Judgment have been thwarted by Stabilis. (SAC ¶ 108). Toussie alleges that "all of Fields's and Coastal's assets, both present and future, have been pledged to Stabilis," and that "the Toussies continued [sic] to be owed the full amount of the Judgment." (*Id.* at ¶¶ 107, 109).

As part of his efforts to collect, in or around 2019, Toussie filed suit against Stabilis in New York Supreme Court in an action entitled *Toussie v. SFIV SS-1 LLC and Stabilis Fund IV, LP* under Index No. 160279/2018 (the "Stabilis Action"). (*See* Exhibit "P" (Third Amended Verified Complaint in the Stabilis Action)). In the Stabilis Action, Toussie alleged, as he has in

this action, that he was entitled to treat Field/Coastal's indebtedness to him as superior to the indebtedness to Stabilis, arguing that:

> (a) "Coastal allegedly [improperly] pledged its interest in Power Plant including the rights to the Toussies' share of the $416,250.00 monthly distributions ... despite the fact that Coastal had no authority to do so";
>
> (b) the express wording of the Coastal Pledge Agreement makes BofA's interest subordinate to the Toussie PA;
>
> (c) BofA was unsecured with regard to the Tranche B Payments (termed in the Stabilis Action as the "Power Plant Monthly Tribe Payments"); and
>
> (d) Stabilis entered into the Forbearance Agreement "knowing that the Toussies are the owners of their portion of the [Tranche B] Payments".

(*Id.* at ¶¶ 24, 28, 29, 62). Toussie alleged nine (9) causes of action against Stabilis, including fraudulent transfer, holder in due course, divesture, unjust enrichment, conversion, tortious interference with the PA, and wrongful distribution, and claimed damages of $7,857,642.50 (the full amount of the Judgment). (*Id.* at ¶¶ 39-128).

On May 28, 2019, Stabilis moved to dismiss Toussie's complaint in the Stabilis Action, contending that its interest in the Tranche B Payments was both "prior and superior" to Toussie's contractual interest. (Exhibit "Q" (Stabilis Memorandum of Law in the Stabilis Action), pp. 2, 12-13). Toussie opposed Stabilis's motion to dismiss, arguing that: (a) his interest in the Tranche B Payments pre-dated BofA's obtaining its secured interest, and (b) the Coastal Pledge Agreement could not pledge Toussie's interest because Fields and Coastal did not have any "right, title, and interest" to Toussie's interest in the Tranche B Payments. (Exhibit "R" (Toussie Memorandum of Law in the Stabilis Action), pp. 16-19). The court in the Stabilis Action resoundingly dismissed Toussie's complaint, holding, in pertinent part:

> Here, **[Toussie] merely had the right to receive a portion of distributions from Coastal and Fields** that they obtained by virtue of Coastal's membership interest in Power Plant . . . Accordingly, plaintiff was only entitled to a portion of the

distributions **if Coastal received them**. Given the scope of their security interest, [SFIV SS-1, LLC and Stabilis Fund IV, LP] could have foreclosed on Coastal's membership interest in Power Plant, thereby cutting off distributions to Coastal and thus Coastal would lack any distributions to pay to plaintiff. **Had the parties to the Participation Agreement wished to provide plaintiff with greater rights, they could have, for instance, made plaintiff a member of Coastal or Power Plant or plaintiff could have contracted with Power Plant to have a direct right in the distributions. Simply put, plaintiff only had a contract right with Coastal for a cut of the distributions if and when received.** … given the scope of the security interest and plaintiff's lack of any rights in the equity of Coastal and lack of privity with Power Plant, plaintiff has no claim.

*Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881, *1 n. 1 (N.Y. Sup. Ct. Nov. 6, 2019), *aff'd*, 188

A.D.3d 433 (1st Dep't 2020) (emphasis added).

## THE COMPLAINT

Unhappy with the deal he struck twenty-two (22) years ago with unreliable partners, Toussie has now turned on the Defendants and tries to blame them for his inability to collect on the Judgment from his "deadbeat" former business partners. Toussie claims that Defendants committed legal malpractice by allegedly: (i) failing to object to an Arbitrator's finding that Fields had pledged the Toussie distributions to BofA and then to Stabilis (i.e., failing to challenge Stabilis's claimed lien priority) (Exhibit "A" ¶¶ 86, 87, 107, 108); (ii) failing to advise Toussie that obtaining the Judgment would somehow make his rights inferior to Stabilis' $80 million lien and convert him into a "junior creditor" behind Stabilis, (*id.* ¶¶ 107-109, 111); and (iii) failing to advise him about the "significance" of the Stabilis settlement offer and rejecting the settlement offer because it lacked a provision requiring Defendants' legal fees "be paid in full by Fields and Coastal," (*id.* ¶¶ 95-102).

Toussie also alleges a duplicative claim for breach of fiduciary duty, based upon the same allegations as the legal malpractice claim, claiming that Defendants allegedly refused to settle or

"vetoed" the settlement proposal and caused Toussie to lose the opportunity to settle. (*Id.* ¶¶ 129-130).

## STANDARD OF REVIEW

While a complaint "does not need detailed factual allegations" to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a plaintiff cannot rely on a "formulaic recitation of the elements of a cause of action" and must, at a minimum, sufficiently plead the facts underlying the claim "to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Mere conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In order to survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Id.* at 678 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 681 (internal quotations and citations omitted).

## ARGUMENT
### POINT I
### THE LEGAL MALPRACTICE CLAIM, PREMISED ON THE FAILURE TO OBJECT TO THE ARBITRATOR'S FINDINGS, MUST BE DISMISSED

To prevail on a claim for legal malpractice under New York law, Toussie must establish: "(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009). The SAC is required to allege that the Lupkin Defendants' conduct:

> fell below the ordinary and reasonable skill and knowledge commonly possessed
> by a member of [their] profession … A complaint that essentially alleges either an
> 'error of judgment' or a 'selection of one among several reasonable courses of

action' fails to state a claim for malpractice ... Generally, an attorney may only be held liable for 'ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action.'

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

### A. The Legal Premise for Toussie's "Failure to Challenge the Arbitrator's Findings" Malpractice Claim Has Already Been Rejected by Two Courts

Toussie's assertion that the Lupkin Defendants deviated from the standard of care by not objecting to the Arbitrator's finding of fact that Coastal and Fields had pledged the entire interest in the Tranche B payments to BofA and Stabilis, is devoid of merit. *See McCoy v. Ct. of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988) ("A lawyer, after all, has no duty, indeed no right, to pester a court with frivolous arguments...") (internal citation omitted).

The Complaint readily admits that the deal Toussie struck in 2000, sixteen (16) years before he retained the Lupkin Defendants, granted him nothing more than a contractual right to payment from Coastal and Fields. (SAC ¶¶ 15, 55, 59). Toussie did not receive a secured interest; all that Toussie was entitled to was a portion of casino payments received by Coastal from Power Plant. (*Id.* at ¶ 17). On the contrary, in 2012, Coastal and Fields executed the Coastal Pledge Agreement, in which Coastal pledged to BofA **all** of its rights, title, and interest in Power Plant to BofA to secure Coastal's obligations, including "**all** distributions and other payments by [Power Plant] **which would otherwise be distributed and paid to [Coastal] shall, upon the occurrence and during the continuation of an Event of Default, be distributed or paid by [Power Plant] to [BofA]**...". (Exhibit "D" ¶ 2(a) and (b)) (emphasis added). In fact, the Forbearance Agreement reaffirmed Coastal's and Fields' pledge of Toussie's share of the distributions. (Exhibit "F" ¶ 2(b)). Once Coastal and Fields defaulted on their debts to BofA, (SAC ¶¶ 45-47), payments were distributed directly from Power Plant to BofA, not Coastal. Thus, there was nothing to then pay to Toussie.

When the issue was litigated the first time, the Arbitrator correctly found that "Coastal pledged [to BofA] its interest in Power Plant **including the rights to the Toussies' share** of the $416,250 of monthly distributions Coastal received." (Exhibit "G" ¶¶ 13, 25). The Arbitrator held that while Coastal and Fields' pledge had violated the Toussies' property rights, by appropriating an interest in the Toussies' percentage share and transferring it without the Toussies' knowledge or consent, an award to Toussie of specific performance (i.e. ordering Coastal to continue paying Toussie his portion of the Tranche B Payments) was "self-defeating, likely impossible, and certainly impractical." Accordingly, the Arbitrator declined to grant specific performance to the Toussies and instead awarded monetary damages. (*Id.* ¶¶ 51, 53).

The Arbitration Award was subsequently confirmed and reduced to a judgment (the "Judgment"). The Judgement was then affirmed by the Appellate Division, which held that the "[t]he damages award was appropriate because specific performance was impossible." *Toussie v. Coastal Dev., LLC*, 161 A.D.3d 533 (1st Dep't 2018).

Toussie then litigated the issue a second time. In the Stabilis Action, Toussie again challenged the secured interests granted from Coastal and Fields to BofA, alleging that the Coastal Pledge Agreement supposedly carved out Toussie's interest in the Tranche B Payments (termed the Toussies' Tribe Payments). He further argued that BofA's interest, though secured, was subordinate to Toussie's. (Exhibit "P" ¶¶ 15, 25, 28). In opposition to Stabilis's motion to dismiss Toussie's complaint in that action, Toussie expressly argued that the Coastal Pledge Agreement and the Security Agreements limited what Coastal could convey to BofA to Coastal's "right, title and interest in" the distributions and payments received from Power Plant. (Exhibit "R", pp. 18-19). Toussie argued that "[i]nasmuch as it has already been found that Fields and

Coastal did not have any 'right, title and interest' to the Toussie [Tranche B Payments], their portion of the Power Plant distributions are not pledged to [BofA] as collateral." (*Id.* at p. 19).

The court in the Stabilis Action outright rejected Toussie's argument, holding that:

> Coastal, moreover, did not simply pledge its rights to the Tranche B payments, it pledged all of its interest in Power Plant (Dkt. 72). **There is no legal support for carving [Toussie]'s participation interest in certain payments that it was once entitled to from Coastal out of defendants' perfected security interests** in, among other things, all of Coastal's interest in the equity of Power Plant.

*Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881, *1 (emphasis added). The Stabilis Action court explained further that:

> Had the parties to the Participation Agreement [Toussie, Coastal and Fields] wished to provide [Toussie] with greater rights, they could have, for instance, made [Toussie] a member of Coastal or Power Plant or [Toussie] could have contracted with Power Plant to have a direct right in the distributions. **Simply put, [Toussie] only had a contract right with Coastal for a cut of the distributions if and when received** … given the scope of the security interest and plaintiff's lack of any rights in the equity of Coastal and lack of privity with Power Plant, plaintiff has no claim.

*Id.*, *1 n. 1 (emphasis added).

As two separate courts have rejected the very argument that there was any "fault" with the Arbitrator's findings, Toussie cannot plausibly assert a legal malpractice claim against the Lupkin Defendants based upon a purported failure to object to the Arbitrator's ruling.

**B.    Toussie is Collaterally Estopped from Arguing, Yet Again, That His Interests Were Superior to BofA and Stabilis**

What is readily clear is that Toussie is improperly attempting to use this legal malpractice claim as a forum to relitigate an issue he has already lost -- twice. The seminal issue in Toussie's legal malpractice claim – that Defendants committed malpractice by not securing a ruling that his interests were superior to that of BofA and Stabilis – has already been considered and rejected by the Arbitrator, the Appellate Division, and the court in the Stabilis Action, so Toussie is collaterally estopped from arguing this issue again in the action at bar. *See Wilder v. Thomas*,

854 F.2d 605, 617 (2d Cir. 1988) (citing *Schwartz v. Pub. Adm'r of Bronx*, 24 N.Y.2d 65, 71 (N.Y. 1969)) (barring relitigation of a legal issue that was decided in a prior action and is decisive in this action, which the litigant has a full and fair opportunity to contest in the prior action); *Zegelstein v. Roth Law Firm PLLC*, 194 A.D.3d 664 (1st Dep't 2021) (dismissal of plaintiff's underlying action for failure to state a claim collaterally estops plaintiffs from arguing that but for defendant's malpractice, plaintiffs would have prevailed in the underlying action).

In each action, Toussie challenged BofA/Stabilis's security interest, arguing that the Coastal Pledge Agreement carved out Toussie's interest in the Tranche B Payments (termed the Toussies' Tribe Payments) and that BofA's interest, though secured, was subordinate to Toussie's PA. (*Compare*, Exhibit "P" ¶¶ 15, 25, 28, *with*, SAC ¶¶ 76-79). He lost at every step of the way. The court in the Stabilis Action resoundingly rejected Toussie's argument holding, in pertinent part:

> Here, **[Toussie] merely had the right to receive a portion of distributions from Coastal and Fields** that they obtained by virtue of Coastal's membership interest in Power Plant . . . Accordingly, plaintiff was only entitled to a portion of the distributions **if Coastal received them**. Given the scope of their security interest, [SFIV SS-1, LLC and Stabilis Fund IV, LP] could have foreclosed on Coastal's membership interest in Power Plant, thereby cutting off distributions to Coastal and thus Coastal would lack any distributions to pay to plaintiff. **Had the parties to the Participation Agreement wished to provide plaintiff with greater rights, they could have, for instance, made plaintiff a member of Coastal or Power Plant or plaintiff could have contracted with Power Plant to have a direct right in the distributions. Simply put, plaintiff only had a contract right with Coastal for a cut of the distributions if and when received.** ... given the scope of the security interest and plaintiff's lack of any rights in the equity of Coastal and lack of privity with Power Plant, plaintiff has no claim.

*Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881, at *1 (emphasis added).

Having raised this argument twice and lost, he is barred from raising it here as a basis for a claim of legal malpractice. *See Zegelstein, supra.*

In his pre-motion opposition letter submitted at bar (ECF Doc. 18), Toussie relies on *Fallon v. Wall St. Clearing Co.*, 182 A.D.2d 245 (1st Dep't 1992) and *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675 (2d Cir. 1989) in support of his argument that his contract rights "might have been carved out of defendant's security interest, but for the entry of the Judgment." (ECF Doc. 18, pp. 2-3). These are the same cases that Toussie relied upon and rejected by the Court in the Stabilis Action as inapplicable. *See Toussie*, 2019 WL 5865881, *1, n. 1. Thus, Toussie's reliance on *Fallon* and *Septembertide* is baseless. Toussie's attempted second and third bite at the apple in this action are barred by collateral estoppel. *See Wilder*, 854 F.2d at 617.

### C. The "Failure to Object" Legal Malpractice Claim Must Also be Dismissed Because Toussie Fails to Plead How He Would Have Obtained a More Favorable Outcome in the Underlying Action

Toussie's legal malpractice claim must also be dismissed because Toussie has failed to establish in the Complaint that "but for the attorney's conduct [he] would have prevailed in the underlying matter or would not have sustained any ascertainable damages." *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 272 (1st Dep't 2004) (cited by *Rubens v. Mason (Rubens I)*, 387 F.3d 183, 189 (2d Cir. 2004)). "Because a plaintiff must win a 'case within a case' to prevail in a legal malpractice claim under New York law ... a plaintiff pleading a legal malpractice claim in federal court must plead 'a complaint within a complaint.'" *Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227, at *4 (S.D.N.Y. June 3, 2008). Where a plaintiff fails to plead this "but for" causation requirement, the claim must be dismissed in its entirety regardless of the attorneys' alleged negligence. *See Franzone v. Lask*, 2016 WL 4154276, at *8 (S.D.N.Y. Aug. 5, 2016), *report and recommendation adopted*, 2016

WL 4491730 (S.D.N.Y. Aug. 25, 2016); *Reibman v. Senie*, 302 A.D.2d 290, 290-91 (1st Dep't 2003).

Even assuming, *arguendo*, that the Lupkin Defendants acted negligently by failing to object to the Arbitrator's findings, Toussie has still failed to allege (nor can he ever) how he would have obtained a more favorable outcome "but for" this breach. *See Weil, Gotshal & Manges, LLP*, 10 A.D.3d at 272. The Complaint only alleges that the Arbitrator's findings of fact "could have a preclusive effect on his efforts to enforce his rights under the Participation Agreement." (SAC ¶ 86). Toussie fails to allege that he would have obtained a more favorable outcome but for the Lupkin Defendants' purported negligence, mandating dismissal. *See Franzone*, 2016 WL 4154276, at *9.

Accordingly, Toussie's legal malpractice claim, premised upon the purported failure to object to the Arbitrator's finding of fact that Coastal and Fields had pledged the entire interest in the Tranche B payments to BofA and Stabilis, must be dismissed.

## POINT II
### THE LEGAL MALPRACTICE CLAIM, BASED ON THE FAILURE TO ADVISE/REJECTION OF THE STABILIS SETTLEMENT OFFER FAILS TO STATE A CLAIM

**A.   Toussie Fails to Allege That the Lupkin Defendants Breached Any Duty Arising From any Purported Settlement Offers**

Toussie's second legal malpractice claim -- that the Defendants failed to advise and rejected the Stabilis settlement offer -- must also be dismissed for failure to allege a deviation from the applicable standard of care. The Complaint alleges that prior to the entry of the Judgment, Defendants "refused to enter into a settlement agreement with Coastal and Fields unless it contained a provision that their attorneys' fees would be paid in full," and as a result of Defendants' demand, no settlement was agreed upon. (SAC ¶¶ 92, 93, 102). Toussie also claims

that Stabilis's counsel provided "written assurances" (i.e. the Stabilis Letter) that Stabilis would provide a lien on the Toussies' Tranche B payments, in order to provide the "necessary authority to render specific performance with respect to the Toussies['] rights to a cash flow participation interest." (*Id.* at ¶¶ 96-97). Toussie alleges that Stabilis was only willing to provide the lien if Defendants waived their claim to attorneys' fees. (*Id.* at ¶ 98). Toussie goes on to speciously allege that Defendants did not advise him of the Stabilis offer, its benefits, the "significance" of the fee claims, or that if he refused the offer, he would risk recovering nothing from Coastal and Fields, given Stabilis's ownership of $80 million of their debt. (*Id.* at ¶¶ 99-101).

First, Toussie's allegations must be dismissed as speculative and conclusory. *See Judd Burstein, P.C. v. Long*, 797 Fed. App'x. 585, 588 (2d Cir. 2019) (citing *Bua v. Purcell & Ingrao, P.C.*, 99 A.D.3d 843, 848 (2d Dep't 2012); *Katsoris v. Bodnar & Milone, LLP*, 186 A.D.3d 1504, 1506 (2d Dep't 2016). Toussie only vaguely alleges that settlement negotiations occurred but does not allege that an actual settlement offer was ever made, by whom, the terms, or even who would be a party to the alleged settlement. (SAC ¶¶ 90, 91). Contrary to Toussie's allegation, the Stabilis Letter was not a settlement offer. It was a letter to Coastal and Field (not Toussie) that Stabilis was "prepared" to permit Toussie and Michael Toussie a lien interest, provided that: (1) "the Toussie Case and any related litigation is concluded in all respects with prejudice"; (2) all issues in the Toussie Case, including the issue of attorney's fees, were resolved; and (3) there was "a definitive agreement memorializing the settlement agreement contemplated herein in form and substance satisfactory to the Lender." (Exhibit "H," pp. 1-2). Toussie fails to allege that any of these prerequisites would or could be satisfied, or even whether he was willing to waive recovery of the attorneys' fees he admits he had already paid to the Defendants litigating the Underlying Action. (SAC ¶¶ 93, 103). The Lupkin Defendants were

not parties to the action so they could not "refuse" to enter into a settlement agreement. Moreover, what plausible reason would there be for the Lupkin Defendants to "refuse" to enter a settlement agreement that would have required that **Toussie** be reimbursed for legal fees he was obligated to pay (and had already paid)?

Second, Toussie fails to allege that he was even willing to settle. This fact alone warrants dismissal. *See Leder v. Spiegel*, 31 A.D.3d 266, 268 (1st Dep't 2006), *aff'd*, 9 N.Y.3d 836 (2007) (dismissing legal malpractice claim based on "the unsupported, conclusory assertion that [appellant] would have accepted the settlement offer but for petitioner's erroneous advice concerning his prospect of success at trial," where the appellant failed to refute that he refused to settle and the petitioner-attorney "actively encouraged" settlement); *Drasche v. Edelman & Edelman, P.C.*, 156 N.Y.S.3d 733, 734 (1st Dep't 2022) (dismissing legal malpractice claim where the plaintiff's failure to allege she would have accepted a settlement offer had she known about it rendered the claim too vague and conclusory and failed to allege proximate causation).[4]

It is telling that Michael Toussie, a necessary party in the Underlying Action, outright **rejected** Stabilis's proposed settlement offer in his April 3, 2017 email, declaring: "We don't want a lien…we OWN it. It is our property." (Exhibit "K"). Toussie cannot plausibly allege that he would have accepted a hypothetical settlement given his co-plaintiff's written rejection of the offer and Toussie's failure to object to that position). *Id.*

---

[4]     It is respectfully noted that while Magistrate Merkl's Order granting Plaintiff leave to file the second amended complaint, appears to indicate that Plaintiff adequately alleged proximate causation despite his failure to successfully plead that he would have accepted a settlement in the underlying dispute (ECF Doc. No. 46), such a position in inconsistent with NY law and, more critically, the Appellate Division's recent affirmance of the trial court's ruling in *Drasche* (which was cited by Magistrate Merkl). *See Drasche*, 156 N.Y.S.3d at 734.

Third, even if the Court does not dismiss this claim for being implausible and grossly speculative, Toussie's own words[5] confirm that he had no interest in settlement. *See Leder*, 31 A.D.3d at 268. To begin with, contrary with Toussie's allegation that he was not advised of the Stabilis Letter, (SAC ¶ 99), Defendants sent him the Stabilis Letter one business day after it was filed in court, specifically identifying the Stabilis Letter as "offering to grant you a security interest in $41K per month of stream payments." (Exhibit "I"). As noted above, Michael Toussie immediately rejected the Stabilis Letter offer. (Exhibit "J"). On April 21, 2017, Toussie expressed why the Stabilis proposal, in his eyes, was not acceptable to him, stating that "FAIRNESS WOULD DICTATE THAT IN ANY CASE STABILIS SHOULD BE []
SUBORDINATE TO US." (Exhibit "K") (capitalization and underlining in original).

Then, on April 27, 2017, immediately following confirmation of the Arbitration Award and before entering the Judgment, W&C attorney Pahl warned Toussie that Coastal and Fields' secured lender [Stabilis] would "begin seizing assets once judgment [was] entered." (Exhibit "L"). Pahl confirmed that Toussie's controlling "**preference to date ha[d] been to proceed to judgment enforcement**," and warned Toussie "as we have discussed, there are risks in doing

---

[5]     "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' ... "[w]here a document is not [expressly] incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (internal citation omitted). Toussie's "failure to include matters of which as pleader[] [he] had notice and which [a]re integral to [his] claim—and that [he] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal citation omitted); *Tulczynska v. Queens Hosp. Ctr.*, 17 CIV. 1669 (DAB), 2019 WL 6330473, *5 (S.D.N.Y. Feb. 12, 2019), *reconsideration denied*, 17-CV-1669 (VSB), 2020 WL 2836759 (S.D.N.Y. June 1, 2020) ("where the language of a complaint is contradicted by a written document that plaintiff artfully conceals from a court, the court may consider such a document on a motion to dismiss").

so." *Id.* Toussie responded by maintaining his brazen, no compromise approach and laughing off the possibility of Stabilis seizing Coastal's and Field's assets, writing:

> BOB [Toussie, addressing himself in the third person] IS ON HIS KNEES.BEGGING FORGIVENESS FROM THE POPE.THEY MAY THINK THEY WILL SEIZE.WAIT.ANYTIME NEXT WEEK.I AM ALSO CALLING THE DALAI LAMA AND THE CHIEF RABBI OF ISRAEL.NOW THE REAL FUN BEGINS,ME."

*Id.* (capitalization in original).

Next, on May 3, 3017, Defendants explicitly laid out the **risks** and **benefits** of pursing judgment enforcement versus negotiating a settlement. (Exhibit "N"). Defendants identified the potential risks to judgment enforcement including the possibility that Toussie "would stop receiving the $41K [he] receive[d] each month," as well as "a significant risk you could go through the entire process, add substantially to your costs and fees, and recover nothing." (*Id.*). Defendants recommended that Toussie pursue settlement and use his leverage to "receive [his] monthly payments directly from Power Plant[,] ... be paid [his] attorneys' fees[, and] ... become a secured creditor with rights to seize your portion of the stream upon future defaults – and Coastal and Fields' secured lender (Stabilis) would recognize the validity of your interest." (*Id.*).

On May 23, 2017, Pahl advised Toussie that Coastal and Fields were attempting to stall the entry of the Judgment and seeking credits for payments made as well as a reduction in the pre-judgment interest that could be awarded to Toussie. (Exhibit "O"). In response, Toussie again demanded:

> **1 JUDGMENT TO BE ENTERED AS ORDERED**. 2 YOU TELL THEM THAT IF THEY STOP THIS NONSENSE, AND DO NOT ATTEMPT TO ALTER, YOU WILL GET ME TO CREDIT THEM THE 25K INTEREST AFTER JUDGMENT ENTERED. 3] THEY MUST BRING PAYMENTS CURRENT AND BE CURRENT. **PRESS THE JUDGMENT**.4] HIS ATTYS ARE SO BRIGHT.WEARE ALWAYS FOLLOWING INSTEAD OF LEADING.LET ME KNOW IF YOU ACCOMPOLISH [sic] ANYTHING,BOB.

*Id.* (capitalization in original; emphasis added).

Accordingly, Toussie's allegations that he was unaware of any purported settlement opportunity, the risks or benefits of the potential settlement, or that a settlement was not consummated due to the Defendants' alleged "refusal," are belied by Toussie's own words.

### B. The Legal Malpractice Claim, Premised on the Purported Rejection of a Settlement Offer, Fails Because Toussie Admits that His Debts Against Coastal and Fields Were Not Collectible

Toussie's legal malpractice claim also fails to establish proximate causation because Toussie admits that he could not collect on his debt from Coastal or Fields. *See e.g. Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 396 (S.D.N.Y. 2000). Toussie concedes that Stabilis is alleged to hold $80 million of Fields' secured debt (acquired from BofA) and Stabilis is, was, and always will be senior in priority to Toussie. (SAC ¶¶ 70, 108). Toussie's admission that Stabilis, with its more senior debt, has "thwarted" his ability to collect from Fields, confirms that there can never be a claim that anything the Lupkin Defendants did (or did not do) could be the proximate cause of his loss. *See McKenna v. Forsyth & Forsyth*, 280 A.D.2d 79, 82-83 (4th Dep't 2001); *Joyce,* 2008 WL 2329227, *4; *Jedlicka v. Field*, 14 A.D.3d 596, 597 (2d Dep't 2005). Without pleading collectability, Toussie's claim is subject to dismissal as a matter of law.

### POINT III
### THE BREACH OF FIDUCIARY DUTY CLAIM IS DUPLICATIVE

Toussie's second cause of action for breach of fiduciary duty must be dismissed as duplicative of the legal malpractice claim, and for failure to state a claim. "Under New York law, '[t]he key to determining whether a claim is duplicative of one for malpractice is discerning the essence of each claim,' without regard for each claim's label. *Meskunas v. Auerbach*, 17 CV 9129 (VB), 2019 WL 719514, at *4 (S.D.N.Y. Feb. 20, 2019) (quoting *Johnson v. Proskauer Rose LLP*, 129 A.D.3d 59, 68 (1st Dep't 2015)). Breach of fiduciary duty claims are traditionally viewed as duplicative of legal malpractice when arising from the same facts. *See Schutz v.*

*Kagan Lubic Lepper Finkelstein & Gold LLP*, 552 Fed. Appx. 79, 80 (2d Cir. 2014) ("New York courts have consistently held that [breach of fiduciary duty] is coextensive with a claim for legal malpractice where, as here, the claims arise from the same facts ... and do not allege distinct damages") (internal citation and quotation omitted); *Amadasu v. Ngati*, 05-CV-2585 (JFB) (LB), 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (dismissing breach of fiduciary duty claim as duplicative of legal malpractice claim).

Courts in this Circuit treat "claims for legal malpractice and claims for breach of fiduciary duty in the context of attorney liability [as] coextensive." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008) (citing *Weil, Gotshal & Manges, LLP*, 10 A.D.3d at 271); *Nordwind v. Rowland*, 04-Civ.-9725 (AJP), 2007 WL 2962350, *5 (S.D.N.Y. Oct. 10, 2007).

The essence of Toussie's breach of fiduciary duty claim is that the Defendants did not act in Toussie's best interest by "refus[ing] the resolve the case in favor of Plaintiff, [and] veto[ing] settlement proposals that did not contain payment to the attorneys" and "lost the opportunity to obtain adequate and fair compensation for Plaintiff's injuries and damages." (SAC ¶¶ 129-130, 132). These breach of fiduciary duty allegations are identical to those raised in the legal malpractice cause of action, i.e. the "rejection" of the Stabilis Letter offer because it did not contain a provision for the payment of attorneys' fees. (SAC ¶¶ 98, 102, 112, 113, 115, 117, 122). Additionally, Toussie plainly seeks the identical damages for both causes of action. (SAC, ad damnum, ¶ (a) ("awarding Plaintiff actual damages in the $7,857,642.50 on each cause of action together with interest from July 17, 2017")).

Moreover, as discussed above, the claims regarding the alleged settlement of the Underlying Action are implausible on their face. Additionally, the allegations that Defendants "inserted attorney fee claims," "performed legal work that was of no value," "caused delay," or

performed "contraindicated" work are inadequately pleaded, as they contain nothing more than a "defendant-unlawfully-harmed-me accusation," without a scintilla of factual detail. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678).

Accordingly, Toussie's breach of fiduciary duty claim must be dismissed.

## POINT IV
### ALTERNATIVELY, THIS MOTION SHOULD BE CONVERTED INTO ONE FOR SUMMARY JUDGMENT

Alternatively, the Lupkin Defendants respectfully request that the instant Motion be converted to one for summary judgment, pursuant to Rule 12(d), if the Court deems it necessary. Each of the exhibits annexed to the supporting Scher Decl. are properly before the Court, either because they are integral to the Complaint, or because they directly contradict language in the Complaint that Toussie has artfully sought to conceal. *See* Point 2(A), p. 20, n. 4. However, if the Court determines it cannot grant the motion without reference to the exhibits and that they are not properly before the Court on a 12(b) motion, the Court should convert the instant Motion into one for summary judgment and afford the parties the opportunity to present additional supporting material. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).

## CONCLUSION

WHEREFORE, the LUPKIN DEFENDANTS respectfully request that the Court enter an Order: (i) granting the instant motion to dismiss Plaintiff's Complaint; or (ii) alternatively, converting the instant motion to one for summary judgment, pursuant to Rule 12(d), and setting a briefing schedule for the parties to submit additional supporting material.

Dated: Woodbury, New York
      February 11, 2022

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By:

Brett A. Scher, Esq.
Adam Nicolazzo, Esq.
*Attorneys for Defendants*
*Lupkin PLLC, Jonathan D. Lupkin,*
*and Rebecca C. Smithwick*
135 Crossway Park Drive, Suite 201
Woodbury, New York 11797
T: (516) 681-1100
E: bscher@kdvlaw.com
    anicolazzo@kdvlaw.com

To:  All Counsel of Record via ECF

4887-1608-7307, v. 1