**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ROBERT I. TOUSSIE,

                    Plaintiff,

    -against-

WILLIAMS & CONNOLLY, LLP,
JOSEPH G. PETROSINELLI,
DAVID A. FORKNER,
JONATHAN E. PAHL,
LUPKIN & ASSOCIATES, PLLC,
JONATHAN D. LUPKIN, and
REBECCA C. SMITHWICK,

                    Defendants.

No. 1:20-cv-5921 (DG) (TAM)

<u>**ORAL ARGUMENT REQUESTED**</u>

D<small>ATE OF</small> S<small>ERVICE:</small>
**May 17, 2022**

<br>

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
### <u>WILLIAMS & CONNOLLY LLP, JOSEPH G. PETROSINELLI, DAVID A. FORKNER, AND JONATHAN E. PAHL'S MOTION FOR SUMMARY JUDGMENT</u>

<br>

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph (GJ-4208)
Rachel M. Cherington (RC-3673)
Benjamin H. Albert (BA-1583)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel.: (212) 407-1200

*Counsel for Defendants Williams &*
*Connolly LLP, Joseph G. Petrosinelli,*
*David A. Forkner, and Jonathan E. Pahl*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF MATERIAL FACTS ...................................................................3

ARGUMENT ..........................................................................................................12

    I.     Plaintiff's Legal Malpractice Claim Fails for Lack of Negligence and Causation ......13

        A.     Failure to Advise Claim Fails for Lack of Negligence .......................................14

        B.     Failure to Advise Claim Fails for Lack of Proximate Cause .............................16

        C.     Failure to Object Claim Fails for Lack of Negligence and Proximate Cause .....18

    II.    Plaintiff's Legal Malpractice Claim Is Barred by Collateral Estoppel .......................20

    III.   Toussie's Breach of Fiduciary Duty Claim Must Be Dismissed ................................22

        A.     Breach of Fiduciary Duty Claim Must Be Dismissed As Duplicative ...............22

        B.     Plaintiff Has Failed to Allege W&C Breached Any Duties ...............................23

        C.     No Showing that Any Alleged Misconduct Was Proximate Cause of Injury .....24

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328 (2d Cir. 2006)..................................................................20 n.19

*Allegrino v. Ruskin Moscou Faltischek, P.C.,*
    2021 WL 5500084 (2d Cir. Nov. 24, 2021)......................................17, 20 n.21

*AmBase Corp. v. Davis Polk & Wardwell,*
    8 N.Y.3d 428 (2007) ............................................................................20 n.20

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)......................................................................................12

*Bua v. Purcell & Ingrao, P.C.,*
    99 A.D.3d 843 (2d Dep't 2012) ...................................................................13

*CRT Cap. Grp. LLC v. SLS Cap., S.A.,*
    2019 WL 1437159 (S.D.N.Y. Mar. 31, 2019) ..........................................19 n.12

*Darby & Darby, P.C. v. VSI Int'l, Inc.,*
    95 N.Y.2d 308 (2000) ........................................................................20 n.20

*Gersten v. 56 7th Ave. LLC,*
    88 A.D.3d 189 (1st Dep't 2011) ...................................................................21

*Hanover Ins. Co. v. Am. Int'l. Underwriters Ins. Co.,*
    266 A.D.2d 545 (2d Dep't 1999) ..............................................................18 n.9

*Hatfield v. Herz,*
    109 F. Supp. 2d 174 (S.D.N.Y. 2000).........................................................14

*Iannazzo v. Day Pitney LLP,*
    2007 WL 2020052 (S.D.N.Y. July 10, 2007) ..........................................23 n.30

*Joseph DelGreco & Co., Inc. v. DLA Piper L.L.P.,*
    899 F. Supp. 2d 268 (S.D.N.Y. 2012),
    *aff'd*, 535 F. App'x 31 (2d Cir. 2013).....................................................13, 17

*Judd Burstein, P.C. v. Long,*
    797 F. App'x 585 (2d Cir. 2019) .................................................................17

*Leder v. Spiegel*,
    31 A.D.3d 266 (1st Dep't 2006) ...............................................................25 n.32

*Leon Petroleum, LLC v. Carl S. Levine & Assocs., P.C.*,
    122 A.D.3d 686 (2d Dep't 2014) ........................................................17, 18 n.8

*Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*,
    386 F. Supp. 2d 421 (S.D.N.Y. 2005).................................................19 n.14

*Lloyds Syndicate 2987 v. Furman Kornfeld & Brennan*,
    182 A.D.3d 487 (1st Dep't 2020) ..............................................................18 n.8

*Kaufman v. Eli Lily & Co.*,
    65 N.Y.2d 449 (1985) ...................................................................................21

*Knight v. U.S. Fire Ins. Co.*,
    804 F.2d 9 (2d Cir. 1986) ............................................................................13

*Masterson v. Clark*,
    243 A.D.2d 411 (1st Dep't 1997) ...............................................................14

*Nomura Asset Cap. Corp. v. Cadwalader, Wickersham & Taft LLP*,
    26 N.Y.3d 40 (2015) ..............................................................................14, 16

*Nordwind v. Rowland*,
    584 F.3d 420 (2d Cir. 2009)....................................................... 13 n.5, 23 & n.30

*Oppenheim & Co., P.C. v. Bernstein*,
    198 A.D.2d 163 (1st Dep't 1993) ...............................................................17

*Phillips-Smith Specialty Retail Grp. II, LP v. Parker Chapin Flattau & Klimpl LLP*,
    265 A.D.2d 208 (1st Dep't 1999) ...........................................................17 n.7

*Rhee-Karn v. Lask*,
    2020 WL 1046595 (S.D.N.Y. Mar. 4, 2020),
    *aff'd*, 2022 WL 619695 (2d Cir. Mar. 3, 2022) .............................................16

*Rosner v. Paley*,
    65 N.Y.2d 736 (1985) ...................................................................................18

*Rubens v. Mason*,
    387 F.3d 183 (2d Cir. 2004)........................................................................13

*Rut v. Young Adult Inst., Inc.*,
    74 A.D.3d 776 (2d Dep't 2010)...................................................................22

*Scarborough v. Napoli, Kaiser & Bern, LLP*,
    63 A.D.3d 1531 (4th Dep't 2009) ...................................................................17

*SEC v. Leffers*,
    289 F. App'x 449 (2d Cir. 2008) ...........................................................21 n.22

*Toussie v. SFIV SS-1 LLC*,
    2019 WL 5865881 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019),
    *aff'd*, 188 A.D.3d 433 (1st Dep't 2020)............................................................21

*Warshaw Burstein Cohen Schlesinger & Kuh v. Longmire*,
    106 A.D.3d 536 (1st Dep't 2013) ............................................................20 n.19

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*,
    10 A.D.3d 267 (1st Dep't 2004) ..............................................................24 n.31

*WGH Commc'ns, Inc. v. Penachio Malara LLP*,
    2022 WL 569665 (2d Cir. Feb. 25, 2022)................................................20 n.21

*Wien & Malkin LLP v. Helmsley-Spear, Inc.*,
    6 N.Y.3d 471 (2006) .............................................................18 n.10, 19 n.11

**Rules & Statutes**

Fed. R. Civ. P. 56(a)......................................................................................12

# PRELIMINARY STATEMENT[1]

More than five years ago, Williams & Connolly LLP, David A. Forkner, Jonathan E. Pahl, and Joseph G. Petrosinelli (together, "**W&C**") won, for Plaintiff Robert Toussie and his brother Michael (the "**Toussies**"), a nearly $7.5 million damages award. Following that victory, the Toussies had two options: they could pursue judgment—and take the risk that enforcement efforts would be unsuccessful—or they could settle. After months of settlement overtures from the other side, and despite W&C's repeated advice that judgment enforcement was risky, Plaintiff chose to pursue judgment. He wanted every penny of what became a $7.8 million judgment, and he wanted it immediately. Now that his efforts to collect have failed—just as W&C warned they might—Plaintiff seeks to blame W&C for his decision to enforce judgment, proffering an entirely false narrative that Defendants (i) advised against settlement, (ii) rejected settlement offers, and (iii) failed to advise of the risks of enforcing judgment. Contemporaneous communications conclusively disprove Toussie's claims. It was *Toussie*—not W&C—who rejected multiple settlement overtures over a five-month period, and he did so despite W&C's advice that he should pursue settlement because he might ***recover nothing*** if he sought judgment enforcement. Toussie's claims are meritless and should be dismissed in their entirety.

In 2000, the Toussies entered into an agreement to develop casinos with Coastal Development, LLC (**"Coastal"**) and Richard Fields (together with Coastal, **"Coastal/Fields"**) on land belonging to the Seminole Tribe of Florida (the **"Tribe"**). Coastal and another entity formed Power Plant Entertainment, LLC ("**Power Plant**"), which entered into agreements with

---

[1] "¶" refers to the paragraphs in W&C's Rule 56.1 Statement of Undisputed Facts. "**Ex.**" refers to the exhibits to the Declaration of Benjamin H. Albert, dated May 17, 2022. Emphasis is added to, and internal citations, quotation marks, ellipses and brackets are omitted from, quoted material, except as otherwise indicated. "**Lupkin**" refers to Jonathan D. Lupkin, Rebecca C. Smithwick, and Lupkin & Associates, PLLC. "**Defendants**" means W&C and Lupkin. "**SAC**" refers to the Second Amended Complaint, filed on January 24, 2022 (ECF 47).

the Tribe to develop the casinos. In exchange, Power Plant received payments from the casinos which it was then to distribute to Coastal. Coastal, Fields, and the Toussies entered into a participation agreement ("**Participation Agreement**" or "**PA**") requiring Coastal to pay the Toussies 11.7647% of the distributions Coastal received from Power Plant.

In 2015, after Coastal and Fields dishonored their obligations under the PA, W&C represented the Toussies in an arbitration proceeding before the Hon. E. Leo Milonas (ret.) ("**Arbitrator**") to enforce the Toussies' rights under the PA ("**Coastal Litigation**"). W&C won the Coastal Litigation, securing an award ("**Award**") (i) holding that Coastal and Fields breached the PA by pledging Toussie's interest in payments due under the PA as collateral on a loan originally with Bank of America ("**BofA**"), then with an affiliate of Stabilis Fund IV, LP ("**Stabilis**"), and (ii) awarding the Toussies more than $7 million in damages. Six months later, judgment was entered in New York Supreme Court.

In July 2020, Plaintiff initiated this action, claiming that Defendants committed malpractice by allegedly (i) recommending judgment enforcement and/or failing advise Plaintiff of the consequences and risks of judgment enforcement (the "**Failure to Advise Claim**"), and (ii) not objecting to the Arbitrator's findings that Coastal and Fields had breached the Participation Agreement by pledging Toussie's interests in the payment stream due thereunder (the "**Failure to Object Claim**"). Plaintiff also contends that Defendants breached their fiduciary duties by rejecting settlement offers and placing their interests in payment above Toussie's interests.

Plaintiff's Failure to Advise Claim is defeated by contemporaneous evidence that proves W&C (i) advised Plaintiff to settle, and (ii) advised Plaintiff about the risks of judgment enforcement. Indeed, in an August 2, 2017 email to W&C, Plaintiff admitted that W&C's advice

"***is and has always been [to] settle***." Ex. 57.  And in a May 2017 email, W&C advised that settlement provided a "clearer path forward," and that if the Toussies sought judgment enforcement, there was "***a significant risk you could go through the entire process,*** add substantially to your costs and fees, ***and recover nothing***." Ex. 44.

Plaintiff's Failure to Object Claim fails as a matter of law because not objecting to Justice Milonas' findings—which formed the basis of the Award in the Toussies' favor—was neither negligent nor the proximate cause of Plaintiff's alleged injury.  Under New York law, a reasonable, strategic decision cannot form the basis of a viable malpractice claim, and not objecting was entirely reasonable.  Once he issued the Award, Justice Milonas was barred by the doctrine of *functus officio* from amending it, and the extraordinarily limited grounds for judicially attacking an arbitration award were inapplicable.  Moreover, Justice Milonas' contract interpretation was not erroneous; to the contrary, every court that has considered the issue has agreed with his conclusion.

Plaintiff's breach of fiduciary claim is premised on his false allegation that no settlement was reached because Defendants "rejected settlement offers" that lacked payment to themselves. It is conclusively disproved by contemporaneous correspondence.  It was Plaintiff—not Defendants—who rejected every settlement idea raised, and it was Plaintiff—not Defendants— who demanded that any settlement include reimbursement for his legal fees.  Moreover, even if W&C had rejected settlement offers (W&C did not), Plaintiff cannot prove that any alleged rejection proximately caused his injury because W&C's approval was not required for the Toussies to settle.

## STATEMENT OF MATERIAL FACTS

*PA and Guaranty.*  In 2000, Coastal, Fields and Native American Development LLC

("**NAD**") commenced a project to develop two casinos on Florida land belonging to the Tribe (¶1). Coastal and NAD formed Power Plant to develop the casinos in exchange for a share of the casinos' profits (¶2). Coastal owned 45%, and NAD 55%, of Power Plant (¶3).

In 2000, the Toussies entered into the PA with Coastal/Fields to finance the casinos' development (¶4). Under the PA, in exchange for a $2.88 million investment, the Toussies received an undivided 11.7647% interest ("**Participation Interest**") in the distributions Coastal received from Power Plant ("**Distributions**") (¶5). The PA required Coastal to create a separate bank account ("**Segregated Account**") to receive the Distributions, and stated that the Toussies would receive their 11.7647% Participation Interest only upon deposit of the Distributions in the Segregated Account (¶¶6-7). The PA provided that the Toussies "shall look solely to Coastal" and Fields for payment, except allowed them to collect from Power Plant any judgment they obtained against Coastal/Fields "due to non-payment" (¶8). The Toussies had no equity in Coastal or Power Plant (¶9). Fields personally guaranteed payments to the Toussies (the "**Guaranty**"), and agreed to reimburse the Toussies for the costs (including attorney's fees) they incurred enforcing the Guaranty (¶10).

*2006 Settlement and 2007 Arbitration.* After the casinos opened, Coastal/Fields breached the PA by failing to pay the Toussies their Participation Interest (¶11). Represented by W&C, the Toussies sued, ultimately obtaining a settlement agreement ("**2006 Settlement Agreement**") requiring Coastal/Fields to (i) pay more than $10.6 million to cover missed payments under the PA, and (ii) timely fulfill their obligations under the PA (¶12). In April 2007, Power Plant and the Tribe settled certain disputes ("**Seminole Settlement**") (¶13). After Coastal/Fields received a $200 million payment pursuant to the Seminole Settlement, but failed to pay the Toussies their 11.7647% share, the Toussies brought an arbitration—again represented

by W&C—against Coastal/Fields. *Id.* Justice Milonas, as arbitrator, held that the Toussies'
share was improperly withheld, and awarded the Toussies approximately $27 million (¶14).
Pursuant to the Seminole Settlement, the Tribe's future payments were fixed, monthly payments
(the "**Tranche B Payments**") first paid to Power Plant, which would then pay 45% of the
Tranche B Payments to Coastal (*i.e.*, the Distributions) (¶15). Upon receipt of Distributions,
Coastal would pay the Toussies their 11.7647% Participation Interest. *See* Ex. 1 ¶¶8-9; Ex. 2
§§ 5(a), 6(b). The Tranche B Payment were to continue through April 2029 (¶15).

The Toussies received more than $37.6 million as a result of W&C's representation in
these prior disputes with Coastal and Fields (¶¶12, 14).

*Fields' Financial Troubles and BofA Secured Debt.* After Coastal/Fields defaulted on
nearly $30 million in debt they owed BofA, Coastal/Fields and BofA entered into a Credit
Agreement ("**Credit Agreement**") and side agreements restructuring that debt (¶¶16-17). To
secure their obligations under the Credit Agreement, Coastal/Fields entered into a security
agreement ("**Security Agreement**") that granted BofA liens on their assets, including all
"accounts," "contract rights," and "deposit accounts" (¶18). Fields and Coastal also entered into
separate Pledge and Security Agreements ("**Fields Pledge Agreement**" and "**Coastal Pledge
Agreement**," respectively), in which Fields pledged his ownership in, and rights to payment
from, a Coastal affiliate, and Coastal pledged its "right, title and interest in" its membership
interests in Power Plant and its rights to all payments from Power Plant (¶¶19-21). In a payment
direction letter ("**Payment Direction Letter**"), Coastal informed BofA that Power Plant had
irrevocably instructed that Distributions to Coastal be deposited into a lockbox account pledged
under the Security Agreement (¶¶22-23).

*Coastal Litigation and Stabilis Secured Debt.* Despite the refinancing, Coastal/Fields'

defaults continued. By October 2015, Coastal/Fields' payments to the Toussies had ceased, and BofA had begun sweeping the lockbox and seizing Distributions from Power Plant (¶¶24-26). The Toussies then initiated the Coastal Litigation, retaining W&C pursuant to an engagement letter ("**Engagement Letter**") and hiring Lupkin as local counsel (¶¶28-31). The Engagement Letter provided that services would be "billed monthly at W&C's normal hourly rates" and required Plaintiff to pay invoices within 30 days of receipt (¶30).

In June 2016, while the arbitration was pending, a Stabilis affiliate purchased Coastal/Fields' debt from BofA (¶32). Pursuant to a forbearance agreement ("**Stabilis Forbearance Agreement**"), "[a]ll liens, mortgages, security interests, rights and remedies" granted to BofA would secure Coastal/Fields' obligations to Stabilis, with the Tranche B Payments paid to Stabilis via a lockbox account within Stabilis' exclusive control (¶¶33-34).

In December 2016, Justice Milonas (the Arbitrator) held that Coastal/Fields breached the PA by pledging the Toussies' share of Distributions to BofA and reaffirming that pledge in the Stabilis Forbearance Agreement (¶¶35-36). Concluding that specific performance was impossible given these pledges, Justice Milonas awarded damages of $6,678,269—which was equal to the present value of the Toussies' share of future Distributions ($48,970.56 per month through April 2029)—plus $812,340 in attorneys' fees they had incurred in the Coastal Litigation, for a total award of $7,490,609 (¶¶37-38). On July 17, 2017, the New York Supreme Court entered judgment for $7,857,642.50, which included the $7,490,609 Justice Milonas awarded, plus costs and prejudgment interest (¶84).

***Plaintiff Rejects Lien-Based Settlement Ideas.*** In December 2016, the Toussies moved to confirm the Award in New York Supreme Court (¶39). After the Coastal Litigation was referred to mediation in February 2017 (¶40), W&C told the Toussies that counsel for

Coastal/Fields' creditors had said Stabilis was "prepared to grant [the Toussies] a security interest" in a payment stream (¶41; Ex. 22). In response, Plaintiff insisted that Stabilis would fold, and confirmed that he would not settle (¶¶42-44).

During an in-person mediation session on March 9, 2017 (the **"Settlement Conference"**),[2] a lien-based settlement idea was discussed but no settlement was reached (¶¶45-48). On March 10, 2017, the mediator asked whether the Toussies would accept the previously discussed "lien and payment stream" if Coastal/Fields' creditors reimbursed Plaintiff, "in monetised [*sic*] amount," for his attorney's fees (¶48). In subsequent emails with Defendants, Plaintiff again rejected the lien-based settlement idea and affirmed that any settlement must cover his legal fees (¶¶48-52; Ex. 28). At the Toussies' direction, W&C asked for the mediation to be terminated on or about March 20, 2017, after no settlement was reached (¶¶53-57).

On March 31, 2017, Coastal/Fields sought leave to supplement the record in the Coastal Litigation with a letter from Stabilis' counsel (the "**Stabilis Letter**") regarding a nonbinding settlement idea ("**Stabilis Conditional Proposal**") that would provide the Toussies with "a *pari passu* lien on [their] participation interest and the payments made by Coastal … in an amount not to exceed $41,470.56 per month" (¶¶58-59; Ex. 35). The Stabilis Conditional Proposal was conditioned on there being "no other unresolved issues in" the Coastal Litigation and was not binding absent "a definitive agreement … in form and substance satisfactory to" Stabilis. *Id.* Michael Toussie (copying Plaintiff) rejected the Stabilis Conditional Proposal, writing, "We don't want a lien…we OWN it. It is our property" (capitalization in original). ¶¶60-61; Exs. 36, 37 (emphasis in original).

On April 17, 2017, W&C asked whether the Toussies would consider a settlement

---

[2]  The Settlement Conference was attended by Pahl, Lupkin, Michael Toussie, Fields, and representatives of Coastal/Fields' creditors, including Stabilis (¶45). Plaintiff did not attend. *Id.*

consisting of a continuing stream of payments directly from Power Plant (as contemplated by the Stabilis Conditional Proposal) and reimbursement of his attorney's fees (¶62). Plaintiff rebuked W&C, writing that it was "VERY DISAPPOINTING THAT…YOU HAVE ZERO RECOMMENDATIONS, OTHER THAN TO CAPITULATE. … ALL THE GREAT LEGAL MINDS[] ARE SAYING THE BEST THEY COULD DO IS GET OUR INTEREST COME DIRECTLY FROM [POWER PLANT]" (¶63; Ex. 38) (emphasis in original). On April 21, 2017, after W&C sent the Toussies a draft brief describing the Stabilis Conditional Proposal as "nowhere close" to what was required to settle (¶64; Ex. 39 at -008), Plaintiff reaffirmed his rejection of it because "FAIRNESS WOULD DICTATE THAT … STABILIS SHOULD BE [] SUBORDINATE TO US" (¶65; Ex. 40) (emphasis in original).[3]

On April 26, 2017, New York Supreme Court Justice Charles E. Ramos confirmed the Award (¶66). The next day, Ed Wallace (counsel to certain Coastal creditors), sought to schedule a call to discuss the feasibility of Stabilis Conditional Proposal (¶67). W&C demurred (¶68), and then asked the Toussies for a call to discuss strategy (the "**April 27 Email**"):

> Coastal and Fields' secured lender has said it will begin seizing assets once judgment is entered. That threat of course gives us additional leverage. …We understand that your preference to date has been to proceed to judgment enforcement. But, as we have discussed, there are risks in doing so. We should set up a time early next week to discuss our strategy going forward.

(¶69; Ex. 41). W&C also forwarded a letter from Coastal's creditors (the "**April 25 Letter**") describing the settlement idea then under consideration as "***a security interest in the Seminole cash flow plus attorney's fees***" (¶70; Ex. 41). The April 25 Letter identified multiple risks of judgment enforcement, including that any judgment would be subordinate to the interests of secured creditors, would terminate the Toussies' rights under the PA, and that the expected

---

[3]     Problems with the Stabilis Conditional Proposal included, *inter alia*, that the monthly payment proposed was a significant "downward departure" from the Award. Ex. 39 at -010.

proceeds from the sale of one of Fields' asset would generate insufficient funds to pay the full judgment amount (¶¶69-70; Ex. 41). Plaintiff dismissed those risks (¶71; Ex. 42).

The strategy call was set for May 4, 2017 ("**May 4 Call**") (¶72). On May 3, 2017, Plaintiff asked Defendants for their "strategic recommendations" in advance of the May 4 Call, which W&C sent later that day ("**May 3 Email**") (¶¶73-74). In the May 3 Email, W&C advised the Toussies about the risks and benefits of the "two primary options"—pursuing judgment enforcement ("**Option 1**") or pursuing settlement ("**Option 2**")—under consideration (¶74). With respect to Option 1, W&C stressed the risks of enforcing judgment, including that (i) it would set off "a race to seize assets," (ii) it would terminate the monthly payment stream, and (iii) enforcing judgment would likely be costly and time consuming. *Id.* W&C also warned that "[i]f Coastal/Fields and their lenders are to believed, *there is a significant risk you could go through the entire process, add substantially to your costs and fees, and recover nothing*." *Id.* With respect to Option 2, W&C advised that in an ideal settlement, "[y]ou would be paid your attorney's fees" and become "a *secured* creditor with rights to seize your portion of the stream upon future defaults" (emphasis in original). *Id.* W&C suggested using leverage to seek the additional $7,500 per month in payments included in the Award but omitted from the Stabilis Conditional Proposal. *Id.* W&C concluded by advising that settlement was preferable:

> Based on what we know, Option 2 [*i.e.* settlement] provides a clearer path forward. It would allow you to receive your payment stream directly from Power Plant, thus separating yourselves from Coastal and Fields. Coastal/Fields' secured lender would recognize the validity of your interest. Both of those developments would substantially improve your position over where you were in October 2015 when this began. Furthermore, you would recover your attorneys' fees.

*Id.* Mr. Pahl's notes reflect that during the May 4 Call, W&C reiterated its previous advice, including that the Toussies might recover nothing if they sought judgment enforcement (¶75; Ex. 45). Plaintiff again minimized the risks of judgment enforcement, insisted that Stabilis would

fold, and reaffirmed that he wanted the full judgment amount and would not settle for the payment stream (Ex. 45). Plaintiff expressed concern about risks inherent in the structure of the Stabilis Conditional Proposal, but rebuffed W&C's efforts to discuss ways to mitigate those risks. *Id*. In accordance with Plaintiff's instructions, Defendants continued to pursue entry of judgment following the May 4 Call (¶¶76-78).

*Plaintiff Continues to Downplay Risks.* In the months following the May 4 Call, Plaintiff continued to downplay the risks of judgment enforcement. On July 5, 2017, W&C forwarded the Toussies an email warning that the liens on one of Fields' properties exceeded the offers Fields had received on that property (¶79; Ex. 46). Plaintiff rejected the risks identified (¶80; Ex. 46). On July 13, 2017, Plaintiff told Mr. Petrosinelli that he disagreed with his advice concerning risks, writing "[Wallace] CONVINCED YOU THAT … I WILL NOT COLLECT FOR THREE YEARS.IT IS MY BELIEF THAT THEY WILL NEVER COLLECT THEIR LOANS, SECURED POSITIONS ,WITH ME AS LITIGANT" (¶81; Ex. 47) (emphasis in original). On July 19, 2017, Mr. Petrosinelli again reported warnings from Coastal/Fields' creditors that the value of the liens exceeded the value of Fields' assets, rendering the Toussies' judgment uncollectible (¶85; Ex. 50).

*Plaintiff Rejects Additional Settlement Ideas.* Before and after entry of judgment, Plaintiff also rejected additional settlement ideas. On July 14, 2017, Plaintiff reiterated his position that the settlement ideas being floated were unreasonable. ¶83; Ex. 48 ("HAVING SEEN THE OFFERS WALLACE PRESENTED TO YOU ,THERE IS NOTHING TO NEGOTIATE.I WILL WAIT FOR THE JUDGEMENT TO BECOME COMPLETELY EFFECTIVE") (emphasis in original). On July 26, 2017, Wallace proposed a $5.5 million settlement, which Plaintiff rejected outright the next day. ¶87; Exs. 52, 53 (Plaintiff: "YOU

GOT IT RIGHT.NOTHING TO DISCUSS.") (emphasis in original). On July 29, 2017, Wallace asked whether Plaintiff would be willing to lower his $7.5 million ask by $375,000; Plaintiff instructed W&C to tell Wallace that he was "GOING TO EXECUTE ON THE JUDGMENT" (¶¶88-89; Exs. 53, 54) (emphasis in original). On August 2, 2017, with no new settlement offer immediately forthcoming, Plaintiff said he planned to execute on the judgment, and asked W&C to send information on Fields' assets that could be used for that purpose (¶91; Ex. 57). Plaintiff's email confirmed that he intended to enforce judgment even though Mr. Petrosinelli's advice "IS AND ALWAYS HAS BEEN SETTLE. … THAT ADVICE IS WHAT HE HAS GIVEN ME ON EVERY OFFER … EVEN THOUGH THAT HAS CHANGED … FROM 4.5 MILL[] TO 7.5 DOWN TO A NEW VARIATION OF 6.5" (Ex. 57) (emphasis in original).

On August 3, 2017, Wallace floated a settlement idea with a face value of $7.1 million (¶92; Ex. 58). In response, Plaintiff told W&C to inform Wallace that Toussie had hired other professionals to collect the judgment (¶93; Ex. 58). W&C then forwarded the information they had on Fields' assets so that the Toussies could begin enforcement efforts (¶¶95-96; Exs. 60, 61).

***Plaintiff Sues Stabilis and Loses.*** In November 2018, Plaintiff sued Stabilis (the "**Stabilis Action**"), alleging that Stabilis lacked priority over his rights because Coastal/Fields never pledged the Toussies' Participation Interest as collateral. ¶¶97-99; *see also, e.g.*, Ex. 63 ¶¶24-29, 40, 78, 107. In response to Stabilis' motion to dismiss, Plaintiff argued that the Security and Pledge Agreements pledged only Coastal/Fields' "right, title and interest"—which, Plaintiff claimed, could not have included share of the Distributions. *See, e.g.*, Ex. 65 at 5, 7, 18-19; Ex. 67 at 6:9-12, 15:10-16. During a hearing, New York Supreme Court Justice Jennifer G. Schecter rejected Plaintiff's argument, explaining that "nothing prohibited [BofA] from getting a security interest in Coastal's" payment rights and Plaintiff's claim to have "an independent

interest" had "no support." Ex. 67 at 15:17-16:4; *see also id.* at 6:13-19. Justice Schecter

adopted those findings in her written order,[4] and held that Coastal did not just pledge its rights to

the Distributions—it pledged "*all of Coastal's interest in the equity of Power Plant.*" Ex. 68 at

*1 (emphasis in original). Justice Schecter found that with a security interest on all of Coastal's

equity, Stabilis could "foreclose[] on Coastal's membership interest in Power Plant, thereby

cutting off distributions to Coastal and thus Coastal would lack any distributions to pay to

plaintiff." *Id.* at *1 n.1. Justice Schecter also held that Plaintiff had no claim "given the scope

of" Stabilis' security interest and Toussie's lack of rights to Coastal's equity and "lack of privity

with Power Plant." *Id.* Plaintiff also sought to restrain Power Plant from making payments to

Stabilis (¶105; Ex. 69). On July 30, 2020, Justice Schecter vacated Plaintiff's restraining notices,

holding that because Stabilis' debt was senior to the Toussie's judgment, Plaintiff could not

interfere with Stabilis' right to collect on its debt (¶109; Ex. 73). The First Department

unanimously affirmed dismissal of the Stabilis Action, and held that the restraining notices were

properly vacated because Stabilis' interest in Power Plant "derives from a valid assignment, is

supported by fair consideration and is security for a legitimate debt," and there were no amounts

payable from Power Plant to Coastal that Toussie could have restrained under Participation

Agreement §5 (d) (¶110; Ex. 74 at 434-35).

## ARGUMENT

Summary judgment is appropriate where the movant shows that there "is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[O]nly

---

[4]    *See* Ex. 68 (*Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881, at *2 (Sup. Ct. N.Y. Cnty.
Nov. 6, 2019) ("**November 6, 2019 Order**")) (granting Stabilis' motion "[f]or these reasons and
those stated on the record at oral argument.").

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Although the movant bears the burden of showing there is no genuine issue of fact, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (upholding dismissal where plaintiff defended summary judgment by relying on speculation that defendant insurers had had certain undisclosed communications); *see also Joseph DelGreco & Co., Inc. v. DLA Piper L.L.P.*, 899 F. Supp. 2d 268, 275-76 (S.D.N.Y. 2012) ("mere speculation or conjecture as to the true nature of the facts" cannot defeat summary judgment), *aff'd*, 535 F. App'x 31 (2d Cir. 2013).

## I. **Plaintiff's Legal Malpractice Claim Fails for Lack of Negligence and Causation**

"[T]o recover damages for legal malpractice, a plaintiff must demonstrate that the attorney failed to exercise the ordinary and reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorney's breach of this duty proximately caused the plaintiff to sustain actual and ascertainable damages."  *Bua v. Purcell & Ingrao, P.C.*, 99 A.D.3d 843, 845 (2d Dep't 2012).[5]  "For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of the essential elements."  *Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004).  Both theories underlying Toussie's legal malpractice claim—his Failure to Advise Claim and Failure to Object Claim—must be dismissed because Toussie cannot prove that W&C's conduct was negligent or the proximate cause of Toussie's alleged injuries.  Further, the Failure to Object Claim is barred by the doctrine of collateral estoppel.

---

[5] New York law applies to this diversity action based on attorney malpractice.  *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009).

## A.  Failure to Advise Claim Fails for Lack of Negligence

Plaintiff's Failure to Advise Claim rests on his provably false narrative that W&C did not adequately advise Toussie concerning (i) the risks of judgment enforcement (SAC ¶¶2-4, 101, 111) and the effect of the entry of judgment, including that Plaintiff's rights under the PA would terminate (SAC ¶¶2-4, 100, 111), and (ii) the benefits of the Stabilis Conditional Proposal (SAC ¶¶2, 99-100, 111).  In fact, contemporaneous emails with Plaintiff establish that W&C advised Plaintiff about all the issues he now disclaims awareness of, including that Plaintiff might *recover nothing* if he pursued judgment enforcement.  Plaintiff also alleges that W&C recommended *against* settlement (SAC ¶111)—but W&C recommended, on multiple occasions, that Plaintiff *pursue* settlement.  Having received the very advice Plaintiff claims was required, Plaintiff cannot prove that W&C's advice was negligent—no claim for legal malpractice lies where an attorney provides the advice "expected of counsel exercising the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *Nomura Asset Cap. Corp. v. Cadwalader, Wickersham & Taft LLP*, 26 N.Y.3d 40, 50 (2015) (law firm that provided required advice did not commit malpractice); *see also Hatfield v. Herz*, 109 F. Supp. 2d 174, 185 (S.D.N.Y. 2000) (granting summary judgment to defendant attorney on failure to advise claim where plaintiff failed to contest attorney's account of advice and consultation); *Masterson v. Clark*, 243 A.D.2d 411, 412 (1st Dep't 1997) (no legal malpractice claim where plaintiff was apprised of settlement offers as well as weakness of case).

***W&C Advised Plaintiff About Impact and Risks of Judgment Enforcement.***  Plaintiff's claim that he was not advised his Participation Interest would terminate upon entry of judgment (SAC ¶¶2-4, 100) is baseless.  W&C advised Plaintiff that upon entry of judgment, he would cease receiving payments under the PA (Ex. 44), and forwarded communications from

Coastal/Fields' creditors with the same warning (¶¶69-75, 79-83; Ex. 41; *see also* Ex. 46).

Contrary to Plaintiff's claim (SAC ¶111), W&C also repeatedly advised him about the significant risks he was incurring in pursuing judgment enforcement—including that it would likely be expensive, time consuming, and—because of the value of Coastal/Fields' assets compared with the liens, and because the Toussies' judgment would be subordinate to the interests of other creditors—potentially unsuccessful. In the May 3 Email, W&C advised the Toussies that the process of enforcing judgment would likely be costly and time consuming, and then explicitly warned the Toussies that they faced a "***significant risk you could go through the entire process***, add substantially to your costs and fees, ***and recover nothing"*** (¶74; Ex. 44). W&C reiterated those risks during the May 4 Call (¶75; Ex. 45). W&C also sent similar warnings from Coastal/Fields' creditors, including the April 25 Letter, in which Coastal/Fields' creditors said the sale of one of Fields' assets would not allow for payment of the Award's "lump sum," and warned that any judgment would be subordinate to interests of secured creditors:

> **Diminished Guaranty Value.** The value of Fields' personal guaranty (and correspondingly, the value of his other illiquid assets) will be diminished dramatically if judgment is entered. Any foreclosure actions on assets (e.g., real property) will result in significantly decreased recovery from any sale in foreclosure and less funds available to pay a judgment, as numerous creditors have security interests in those assets and such a judgment would be subordinate to those interests.

(¶70; Ex. 41 at -055). On July 5, 2017, W&C forwarded another email in which Coastal/Fields' creditors warned that because the liens on Fields' ranch exceeded recent offers on the ranch, the sale of the ranch was "not certain to cover my client let alone others" (Ex. 46), and on July 19, 2017, W&C again reported that Coastal/Fields' creditors said that the value of Fields' assets rendered the judgment uncollectible (Ex. 50).

*W&C Recommended Pursuing Settlement.* Plaintiff's claim that Defendants

recommended *against* settlement (SAC ¶111) is utterly false and disproven by contemporaneous emails between the parties. The May 3 Email explicitly advises that settlement "provides a clearer path forward" than enforcing judgment (Ex. 44). During the May 4 Call, W&C reiterated that advice (Ex. 45). And in August 2017, Plaintiff admitted that Mr. Petrosinelli's advice "<u>is and always has been settle</u>," and that he gave that advice on all of Wallace's offers (Ex. 57) (underlining added; capitalization omitted).

Ultimately, Plaintiff disagreed with W&C's risk assessment—he thought W&C was wrong, that Stabilis would fold, and he would collect his full judgment, and so forged ahead with judgment enforcement (¶¶75-81; Exs. 45-47). But having been repeatedly apprised of the risks of his pursuit of judgment, and advised to settle in light of those risks, Plaintiff cannot prove W&C's negligence in connection with his Failure to Advise Claim. *See, e.g.*, *Rhee-Karn v. Lask*, 2020 WL 1046595, at *6 (S.D.N.Y. Mar. 4, 2020) (even if lawyer was "unware of, or failed to explain, the intricacies of the law supporting [her] advice," her conduct was not negligent where she in fact "repeatedly advised her against filing" second suit), *aff'd*, 2022 WL 619695 (2d Cir. Mar. 3, 2022); *see also Nomura Asset Cap. Corp.*, 26 N.Y.3d at 53 (affirming summary judgment where Nomura could establish only that some "employees did not understand REMIC principles, not that Cadwalader failed to provide appropriate legal advice").[6]

## B.    <u>Failure to Advise Claim Fails for Lack of Proximate Cause</u>

Even if, *arguendo*, Plaintiff could establish that W&C's settlement advice was negligent (he cannot), Plaintiff cannot prove that "but for" W&C's alleged negligence he would have avoided injury by pursuing the Stabilis Conditional Proposal (SAC ¶¶115-16). "To establish

---

[6]    Nor is there any merit to Toussie's claim that W&C failed to "consider whether earlier and superior liens existed" or whether "Coastal was … judgment proof because of earlier filed superior liens" (SAC ¶111)—those liens were the subject of the Coastal Litigation, and were repeatedly discussed in W&C's communications with Toussie. *See supra* pp. 6-10, 15.

causation, a plaintiff must show that he or she … would not have incurred any damages, but for the lawyer's negligence." *Leon Petroleum, LLC v. Carl S. Levine & Assocs., P.C.*, 122 A.D.3d 686, 687 (2d Dep't 2014). The proximate cause requirement is "a high bar" intended to "insure a tight causal relationship exists between the claimed injuries and the alleged malpractice." *Joseph DelGreco & Co., Inc.*, 899 F.Supp.2d at 281. It requires "an attorney's action or inaction [to be] the 'but for' cause of the plaintiff's damages." *Allegrino v. Ruskin, Moscou Faltischek, P.C.*, 2021 WL 5500084, at *2 (2d Cir. Nov. 24, 2021) (Gujarati, J., sitting by designation). Speculation that damages exist and were caused by an attorney's negligence does not suffice,[7] and the proximate cause prong cannot be satisfied by a settlement overture that is not concrete. *See Oppenheim & Co., P.C. v. Bernstein*, 198 A.D.2d 163, 163-64 (1st Dep't 1993) (where there was no "concrete settlement offer, other than one requiring payment from defendant, any damages sustained were necessarily too speculative to be recoverable"); *see also Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 588 (2d Cir. 2019) ("[S]cant allegations concerning the lost value of a 'wished-for settlement award' are wholly speculative and do not give rise to a reasonable inference that any damages exist"); *Scarborough v. Napoli, Kaiser & Bern, LLP*, 63 A.D.3d 1531, 1533 (4th Dep't 2009) (dismissing plaintiff's claims where evidence showed only that counsel was considering settlement offer but had not made an offer).

As the Stabilis Letter stated, the Stabilis Conditional Proposal was not a final, binding offer "absent a definitive agreement memorializing the settlement agreement contemplated herein in form and substance satisfactory to" Stabilis (Ex. 35)—but no "definitive agreement" satisfactory to Stabilis was ever negotiated. Moreover, critical elements of any lien-based

---

[7]    *See, e.g.*, *Phillips-Smith Specialty Retail Grp. II, LP v. Parker Chapin Flattau & Klimpl LLP*, 265 A.D.2d 208, 210 (1st Dep't 1999) (plaintiffs cannot establish proximate cause because the "hypothetical course of events on which … damages would be … based" involves gross speculation about future events and third-party conduct).

settlement idea—*e.g.*, whether payments would flow through Power Plant or Coastal, and whether the settlement would protect the Toussies from the consequences of a Coastal/Fields bankruptcy—also remained undecided.  *See, e.g.*, Ex. 39 at -1008 n.9; Ex. 45.

### C.     Failure to Object Claim Fails for Lack of Negligence and Proximate Cause

Plaintiff protests W&C's decision not to object to the Award's findings that Coastal/Fields had (i) pledged the Toussies' portion of the Tranche B Payments to BofA, and (ii) reaffirmed that pledge in the Stabilis Forbearance Agreement.  SAC ¶¶75-87.  Under New York's attorney-judgment rule, however, selection of "one among several reasonable courses of action" does not constitute negligence.  *Rosner v. Paley*, 65 N.Y.2d 736, 738 (1985).[8]  Not objecting was a reasonable, strategic decision because any objection would have been futile— there were no grounds to object, and Justice Milonas' findings were correct as a matter of law.

*First*, under well-settled New York law, Justice Milonas was *functus officio* upon issuance of the Award—he relinquished power to modify the Award or make new determinations.[9]

*Second*, "judicial review of arbitration awards is extremely limited," with vacatur permitted only on grounds involving fraud, corruption, or misconduct by the arbitrator, or "manifest disregard of law."[10]  The SAC does not allege, and there are no facts to support, fraud, corruption, or misconduct by Justice Milonas.  Plaintiff argues that Justice Milonas' interpretation of the Stabilis Forbearance Agreement was a "manifest disregard of the law" (SAC

---

[8]     *See also Lloyds Syndicate 2987 v. Furman Kornfeld & Brennan*, 182 A.D.3d 487, 488 (1st Dep't 2020) (upholding dismissal where alleged malpractice was subject to attorney-judgment rule, and issues were not "elementary or subject to settled authority"); *Leon Petroleum*, 122 A.D.3d at 687 (for protection under the attorney-judgment rule, attorney need only offer "reasonable strategic explanation for the alleged negligence.").

[9]     *See, e.g.*, *Hanover Ins. Co. v. Am. Int'l. Underwriters Ins. Co.*, 266 A.D.2d 545, 545 (2d Dep't 1999).

[10]     *See, e.g., Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 479-80 (2006).

¶118), but does not allege facts supporting that claim.[11] Nor could he, where every court to consider the agreements has agreed with Justice Milonas' interpretation.[12] Under governing New York law,[13] agreements "executed simultaneously and for the same purpose must be read and interpreted together."[14] Read together, the BofA agreements unambiguously provide that all of the Tranche B Payments—including Plaintiff's share—were pledged as collateral. The Coastal Pledge Agreement provided that the collateral *included* Coastal's "right, title and interest in, to and under" *all* Distributions from Power Plant (Ex. 3 §§ 1(c), 2(a), Recital C). The Credit Agreement defined (in its definition of "Excluded Property") which of Coastal's property was excluded from collateral—and that definition did not include amounts payable to the Toussies.[15] Further, the Payment Direction Letter provided that Coastal pledged to BofA all Tranche B Payments and instructed Power Plant to deposit all Distributions, including the Participation Interest, into a lockbox at BofA.[16] That pledge was "absolute, irrevocable and unconditional" and secured by a UCC-1 Security Agreement.[17] Plaintiff argues that the Security Agreement specifically excludes payments to the Toussies from collateral (SAC ¶78), but that language is a

---

[11] *See id.* at 481 ("manifest disregard of the law" requires "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case").

[12] Ex. 68 (November 6, 2019 Order); Ex. 73 (*Toussie v. Coastal Dev., LLC*, 2020 WL 4517773 (Sup. Ct. N.Y. Cnty. July 30, 2020)); Ex. 74 (*Toussie v. SFIV SS-1, LLC*, 188 A.D.3d 433 (1st Dep't 2020)); *CRT Cap. Grp. LLC v. SLS Cap., S.A.*, 2019 WL 1437159, at *7 (S.D.N.Y. Mar. 31, 2019) (no manifest disregard of the law where "at least one court has accepted the legal arguments made").

[13] *See* Ex. 6 (Credit Agreement) § 11.14; Ex. 7 (Security Agreement) § 8(d); Ex. 10 (Fields Pledge Agreement) ¶15; Ex. 3 (Coastal Pledge Agreement) ¶15; Ex. 17 (Stabilis Forbearance Agreement) § 26.

[14] *Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F. Supp. 2d 421, 425 (S.D.N.Y. 2005).

[15] Ex. 6 (Credit Agreement) § 1.01 ("Excluded Property") & Schedule 1.01(e); Ex. 3 (Coastal Pledge Agreement) § 2(a).

[16] Ex. 14 (Payment Direction Letter) at 1.

[17] Ex. 3 (Coastal Pledge Agreement) ¶10; Ex. 12 (Coastal Pledge Agreement UCC Filing).

carve-out from the books and records Collateral pledged by Coastal—it does not address the Tranche B Payments, the Distributions or the Participation Interest.[18]  Plaintiff contends that the BofA UCC Filings "contained this same … exclusion" (SAC ¶79)—but the BofA UCC Filings include the same language as in the Security Agreement, which pertains only to books and records (Exs. 8-9 (BofA UCC Filings)).

In these circumstances, it was a quintessentially reasonable strategic decision not to object to the Justice Milonas' findings.[19]  At most, Plaintiff's allegations amount to a claim that the Arbitrator could have interpreted the agreements differently.  But that does not render the decision not to object anything other than a reasonable strategic decision.[20]

Further, even if the decision not to object was negligent (it was not), Plaintiff cannot establish that it was the "but for" cause of any injury he suffered.  Plaintiff's claim amounts to base speculation that courts could have decided the matter differently, and "[s]peculation alone is insufficient to establish causation."[21]

## II.     Plaintiff's Legal Malpractice Claim Is Barred by Collateral Estoppel

Plaintiff is collaterally estopped from claiming that (i) W&C committed malpractice by not objecting to the Award's purportedly incorrect finding that the Toussies' Participation

---

[18]     *See* Ex. 7 (Security Agreement) § 1(j).

[19]     *Achtman v. Kirby, McInerney & Squire,* LLP, 464 F.3d 328, 337-38 (2d Cir. 2006) (reasonable, strategic decision not to sue auditor not malpractice); *Warshaw Burstein Cohen Schlesinger & Kuh, LLP v. Longmire*, 106 A.D.3d 536, 536 (1st Dep't 2013) (decision not to move for reconsideration is strategic decision and not malpractice).

[20]     *See, e.g.*, *AmBase Corp. v. Davis Polk & Wardwell*, 8 N.Y.3d 428, 435 (2007) (malpractice claim based on alleged improper contract interpretation fails where "no such interpretation has been given … by any court or arbitrator to date"); *see also Darby & Darby, P.C. v. VSI Int'l, Inc.*, 95 N.Y.2d 308, 315 (2000) ("malpractice action is unlikely to succeed" where "an issue of law was … debatable").

[21]     *WGH Commc'ns, Inc. v. Penachio Malara LLP*, 2022 WL 569665, at *1 (2d Cir. Feb. 25, 2022); *Allegrino*, 2021 WL 5500084, at *2 (upholding dismissal of malpractice claim arising out of failure to appear on return date where plaintiff alleged only that will "should have sailed through [probate]").

Interest was pledged to BofA and Stabilis, and (ii) the judgment—rather than the governing contractual documents—rendered the Toussies' claims junior to those of the secured creditors.

Summary judgment may be granted on the basis of collateral estoppel,[22] which "precludes a party from relitigating an issue" previously decided against him. *Kaufman v. Eli Lily & Co.*, 65 N.Y.2d 449, 455 (1985). New York courts invoke collateral estoppel when "(1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and decided; (3) there was a full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Gersten v. 56 7th Ave. LLC*, 88 A.D.3d 189, 201 (1st Dep't 2011).[23] All four criteria are satisfied here. Plaintiff litigated and lost his contractual claims in the Stabilis Action, in a decision unanimously affirmed by the First Department. *Toussie v. SFIV SS-1 LLC*, 2019 WL 5865881 (Sup. Ct. N.Y. Cnty. Nov. 6, 2019), *aff'd*, 188 A.D.3d 433 (1st Dep't 2020). In the Stabilis Action, as here, Plaintiff argued that the pledged collateral excluded his Participation Interest.[24] Justice Schecter rejected that argument, concluding that Coastal pledged the Toussies' share of the Distributions, there was "no legal support for carving" the Toussies' interest in Distributions "out of [Stabilis'] perfected security interests in, among other things, *all of Coastal's interest in the equity of Power Plant*"[25] and that Plaintiff's claim that the collateral did not include his Participation Interest was not "a fair reading of the security agreement."[26]

---

[22]     *See, e.g.*, *SEC v. Leffers*, 289 F. App'x 449, 451-52 (2d Cir. 2008) (affirming district court's grant of summary judgment on collateral estoppel grounds).

[23]     New York law controls the collateral estoppel analysis. *See id.* at 450.

[24]     *See, e.g.*, Ex. 63 (TAC) ¶40 (Coastal/Fields lacked authority to pledge the Toussie portion of the Tribe distributions); Ex. 65 (Toussie MTD Opp. Br.) at 18-19 (Coastal/Fields lacked "right, title and interest" to Toussie's Participation Interest, so Toussie's portion of the Distributions "are not pledged to [BofA] as collateral").

[25]     Ex. 68 (November 6, 2019 Order) at *1 (emphasis in original).

[26]     Ex. 67 (10/29/19 Hearing Tr.) at 6:13-19; *see also id.* at 15:10-16:4 (BofA not bound by

Plaintiff is estopped from arguing otherwise now.

The Stabilis Action also disposes of Plaintiff's claim that, absent the judgment, he could collect his Participation Interest. The core of the Stabilis Action was Plaintiff's claim that the pledges to BofA were "subordinate to" and "wholly unsecured" with respect to the Toussies' rights under the PA (*see, e.g.*, Ex. 63 (TAC) ¶¶28-29).[27] The Court rejected that theory, explaining that Plaintiff was entitled to Distributions "if and when [Coastal] received" them, and because Plaintiff could only "collect from Coastal," and Coastal had pledged its equity in Power Plant to Stabilis, Stabilis could "foreclose[] on Coastal's" interests in Power Plant "and thus Coastal would lack any" Distributions to pay Toussie. Ex. 68 at *1 n.1. The Court thereby ruled that, regardless of the judgment, Plaintiff's right to the Distributions received by Coastal was junior to Stabilis' perfected lien in all of Coastal's assets.

### III.   Toussie's Breach of Fiduciary Duty Claim Must Be Dismissed

"The elements of a cause of action to recover for damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776, 777 (2d Dep't 2010). Plaintiff's breach of fiduciary duty claim must be dismissed because it is duplicative of his legal malpractice claim. And even if not duplicative, dismissal is appropriate because Plaintiff cannot prove W&C breached its fiduciary duties to Plaintiff, or that any alleged breach was the cause of his purported injury.

### A.   Breach of Fiduciary Duty Claim Must Be Dismissed As Duplicative

A fiduciary duty claim arising out of the same conduct and seeking the same damages as

---

the PA, so not prohibited from obtaining "a security interest in Coastal's rights to payment.").

[27]   *See also, e.g.*, Ex. 63 (TAC) ¶78 (seeking declaratory judgment that Stabilis lacks a "superior interest" and priority over Toussie's claims); Ex. 65 (Toussie MTD Opp. Br.) at 18.

a legal malpractice claim must be dismissed as duplicative.  *See Nordwind*, 584 F.3d at 432-33.

Plaintiff's malpractice and breach of fiduciary duty claims are premised on the same alleged

attorney-client relationship[28] and arise out of the same factual narrative—specifically, that

Defendants rejected settlement proposals or advised against settlement.[29]  Further, Plaintiff seeks

the same damages in connection with each claim.  *See* SAC at p. 24 (Prayer for Relief (a)).

Dismissal is, therefore, appropriate.[30]

### B.    Plaintiff Has Failed to Allege W&C Breached Any Duties

Plaintiff's breach of fiduciary duty claim must be dismissed because Plaintiff cannot

prove that W&C breached its duties to him.  The crux of Plaintiff's claim is that W&C "vetoed

settlement proposals that did not contain payment to the attorneys," and "fail[ed] to place the

interests of the client before the interests of payments to the attorneys."  SAC ¶¶129-130, 132.

As with Plaintiff's malpractice claim, this is premised on a demonstrably false narrative.

*First*, there is no evidence—*none*—from which Plaintiff can prove that W&C either

rejected the Stabilis Conditional Proposal without Plaintiff's consent, or did so because the

Stabilis Conditional Proposal lacked compensation for W&C.  To the contrary, in February 2017,

Plaintiff asserted that he was "NOT GOING TO SETTLE" (Ex. 22) (emphasis in original).  And

then Plaintiff (and his brother) repeatedly and consistently rejected the Stabilis Conditional

Proposal and every other lien-based settlement idea raised—including, *inter alia*, on March 11,

2017 (Ex. 28), April 3, 2017 (Ex. 37), April 17, 2017 (Ex. 38), and May 4, 2017 (Ex. 45).

---

[28]    *Compare* SAC ¶111, *with* SAC ¶126.

[29]    *Compare* SAC ¶¶111 and 115-16 (Defendants advised against settlement, which resulted in no settlement being reached), *with* SAC ¶¶129, 131 (Defendants vetoed settlement proposals, which resulted in Toussie losing opportunity for compensation).

[30]    *See Nordwind*, 584 F.3d at 433 (upholding dismissal of fiduciary duty claim "factually inseparable" from malpractice claim); *Iannazzo v. Day Pitney LLP*, 2007 WL 2020052, at *10 (S.D.N.Y. July 10, 2007) (Chin, J.) (dismissing fiduciary duty claim that was "based on the same facts as [plaintiff's] legal malpractice claim").

Defendants, on Plaintiff's behalf, conveyed Plaintiff's rejections to opposing counsel. But that is not misconduct.

*Second*, there is no evidence from which Plaintiff can prove that W&C ever sought—at the Settlement Conference or otherwise—payment to themselves (SAC ¶¶92, 102). To the contrary, the record establishes that it was Plaintiff—not W&C—who insisted that any settlement cover his legal fees (*see, e.g.*, Ex. 28), and that W&C recommended a settlement idea that compensated the Toussies (but not W&C) for Plaintiff's attorney's fees. *See, e.g.*, Ex. 44.

*Third*, at best, Plaintiff can prove only that W&C was unwilling to cut its previously earned fees in order to facilitate a settlement between the Toussies and Coastal/Fields. *See, e.g.*, Ex. 57. But the Engagement Letter provided for a standard hourly fee, and required Toussie to pay all amounts due within 30 days of his receipt of invoices (Ex. 16 at 1, 2). It is not misconduct for attorneys to decline to waive or reduce previously earned fees owed under a binding contract in order to facilitate a client's settlement. Holding that an attorney breaches his or her fiduciary duties by not forfeiting duly earned compensation would mark a sea change in the legal profession, and this Court should decline to so hold here.

### C.   No Showing that Any Alleged Misconduct Was Proximate Cause of Injury

Further, to prevail on his fiduciary duty claim, Plaintiff must establish W&C's alleged misconduct, of which there was none, was the "but for" cause of his injury—the alleged lost opportunity "to obtain adequate and fair compensation."[31] Plaintiff claims no settlement was reached at the Settlement Conference because Defendants "refused to enter into a settlement agreement … unless it contained a provision that their attorneys' fees would be paid in full" and

---

[31]   SAC ¶¶130, 134; *see also Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,* 10 A.D.3d 267, 271-72 (1st Dep't 2004) (where injury is the value of lost claim, client must show "but for" causation).

Stabilis was "only willing to extend to the Toussies the *pari passu* lien in the event that the Defendants … waived any claim to attorney's fees."  SAC ¶¶92, 97-98, 102.

Even if those allegations were true—and they are emphatically false—Plaintiff cannot prove that W&C's alleged refusal to settle was the proximate cause of his injury.  W&C was not party to the Coastal Litigation, their consent was not needed for Plaintiff to settle the Coastal Litigation, and Plaintiff knew about the Stabilis Conditional Proposal.  Had Plaintiff wanted to pursue that overture—or any settlement offer—he could have done so.  Further, although settlement negotiations continued for months following the Settlement Conference, Plaintiff continued to reject every settlement idea floated, which precludes his ability to prove that W&C's conduct was the "but for" cause of his alleged injury.[32]

## **CONCLUSION**

Toussie's SAC has no more merit than either of his earlier complaints.  There is no genuine issue of material fact.  The SAC should be dismissed in its entirety.

Dated: New York, New York
      May 17, 2022

**JOSEPH HAGE AARONSON LLC**

  /s/ *Gregory P. Joseph*    

Gregory P. Joseph (GJ-4208)
Rachel M. Cherington (RC-3673)
Benjamin Albert (BA-1583)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel.: (212) 407-1200

*Counsel for Defendants Williams & Connolly LLP, Joseph G. Petrosinelli, David A. Forkner, and Jonathan E. Pahl*

---

[32]    *See, e.g.*, *Leder v. Spiegel*, 31 A.D.3d 266, 268 (1st Dep't 2006) (plaintiff cannot prove would have accepted settlement where offer remained open but he refused to accept it).