**KAUFMAN DOLOWICH VOLUCK**
ATTORNEYS AT LAW

Brett A. Scher, Esq.
Email: bscher@kdvlaw.com

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone: 516.681.1100
Facsimile: 516.681.1101
www.kdvlaw.com

October 26, 2023

**VIA ECF**
Hon. Diane Gujarati
United States District Court, EDNY

Re:   <u>Toussie v. Williams & Connolly, LLP, et al. Case No. 1:20-cv-5921 (DG) (TAM)</u>

Dear Judge Gujarati:

Our firm represents defendants, Lupkin PLLC and Jonathan D. Lupkin (collectively, "Lupkin"). Pursuant to Rule III(A) of Your Individual Rules, we write to request a pre-motion conference in anticipation of Lupkin's motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

This legal malpractice action has been whittled down to a claim that Lupkin, along with the Williams & Connelly Defendants ("W&C" and collectively with Lupkin, "Defendants"), should have forced plaintiff, Robert I. Toussie ("Plaintiff"), a self-made multi-millionaire and self-styled sophisticated businessman to settle his decade-old dispute with his former business partners, Richard Fields and Coastal Development LLC (collectively "Fields/Coastal"). The undisputed evidence in this case establishes that Toussie was repeatedly advised of the risks of not settling, yet he obstinately rejected Defendants' advice because he was out for revenge and knew better than his counsel.

On September 1, 2000, Toussie, with his brother Michael ("the Toussies") made an unsecured $2.88 million investment in exchange for a portion of the earnings Fields/Coastal received from the development of the Hard Rock Casinos. *See* Statement of Undisputed Material Facts ("SUMF"), ¶¶3, 4-8. The Toussies had to sue Fields/Coastal twice (in 2004 and 2006) to obtain their monthly distributions. *Id.* at ¶¶ 10-12, 17-19. In 2015, Fields and Coastal stopped making monthly payments to the Toussies and informed them that the stream of payments previously going to the Toussies had been pledged to Fields/Coastal's creditor, Bank of America ("BofA"). *Id.* at ¶¶30-33. The Toussies retained W&C and then Lupkin to serve as local counsel to proceed with an arbitration against Fields/Coastal. *Id.* at ¶¶ 34-38. During the arbitration, the Toussies learned that BofA's debt had been acquired by SFIV SS-1, LLC ("Stabilis"). *Id.* at ¶¶ 42-44.

On December 20, 2016, as the result of a successful litigation by W&C and Lupkin, the arbitrator awarded the Toussies $6,678,269, representing the present value of the remaining monthly payments owed from Coastal/Fields, plus $812,340 in attorneys' fees ("Arb. Award"). *Id.* at ¶¶ 46-50. Prior to confirmation of the Arb. Award, the Toussies participated in a March 9, 2017 court-mandated mediation. *Id.* at ¶¶55, 64-66. Despite his attorneys' recommendation to settle, (*id.* at ¶¶62-63), Toussie had no interest in settling with Coastal/Fields. *Id.* at ¶¶ 58-62, 70, 72, 75.

On March 31, 2017, Stabilis wrote a letter indicating its willingness to grant the Toussies a lien on the payment stream, if certain conditions were met, including the complete resolution of the Toussies' dispute with Coastal/Fields (the "Stabilis Letter"). *Id.* at ¶¶ 76-77. The Toussies rejected the proposal. *Id.* at ¶ 79. When W&C asked Toussie if he would accept a settlement that included

payment of all of their attorney's fees plus continuation of their monthly payments directly from a third party (i.e., so they would not have to continually battle with Coastal/Fields), Toussie demanded that the Arb. Award be confirmed, and advised W&C that their inquiry to him was "disappointing," a "capitulat[ion]," and "disgraceful." *Id*. at ¶¶ 80, 81.

On April 27, 2017, after the Toussies' Arb. Award was confirmed, W&C forwarded a letter from counsel for Field/Coastal's creditors which outlined several risks that the Toussies faced if they did not settle and pursued entering judgment on the Arb. Award. *Id*. at ¶¶ 85-87. This prompted Toussie's request for a written outline of the Toussies' options and "strategic recommendations." *Id*. at ¶ 90. On May 3, 2017, W&C emailed the Toussies a detailed explanation of the risks and benefits of pursuing judgment versus negotiating a settlement and recommended settlement. *Id*. at ¶¶ 91-93. On May 4, 2017, Defendants held a one-hour call during which Toussie once again refused to consider any option other than recovery of the full amount of the Arb. Award. *Id*. at ¶¶ 95-97. Toussie followed up the May 4, 2017 call with an emailed demand that "JUDGMENT [] BE ENTERED AS ORDERED … PRESS THE JUDGMENT. …" *Id*. at ¶ 97. On July 17, 2017, the judgment was entered in favor of the Toussies in the amount of $7,857,642.50 (the "Judgment"). *Id*. at ¶ 99.

In July/August 2017, W&C fielded increasing settlement offers from Fields/Coastal's creditors' counsel, beginning at $4.3 million, and increasing up to a package of $5.5 million cash, plus a $1.6 million 3-year note earning 9% interest. *Id*. at ¶¶ 100, 102, 104, 107. Each offer was categorically rejected by Toussie. *Id*. at ¶¶ 103, 105, 108. W&C disengaged as counsel to the Toussies on August 14, 2017. *Id*. at ¶ 110. On July 3, 2018, Lupkin disengaged as Toussie's counsel following Toussie's unprovoked and unwarranted attacks on Lupkin's competence. *Id*. at ¶¶ 113, 114.

Toussie retained successor counsel, Frederick Stern, Esq. to continue Toussie's efforts to collect on the Judgment. *Id*. at ¶ 115. In February 2019, Toussie agreed to a settlement offer from Fields/Coastal that was also approved by Stabilis–it called for a $250,000 cash payment upon signing, a $5 million cash payment at closing, and 125 monthly payments of $41,470.56 directly from the trustee of the Seminole Tribe. *Id*. at ¶ 118. Fields/Coastal paid the $250,000 but defaulted on their further obligations under that settlement. *Id*. at ¶ 119. Toussie also rejected an April 1, 2019 settlement offer from Stabilis that would have granted him "$41k" monthly payments for another ten years. *Id*. at ¶¶ 120-122. Though Toussie hired attorneys in 4 states to pursue judgment collections, they were unable to collect any funds from Fields/Coastal. *Id*. at ¶¶ 129-134.

## GROUNDS FOR SUMMARY JUDGMENT

To prevail on a claim for legal malpractice under New York law, a plaintiff must establish: "(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009). Negligence requires a showing that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). In order to establish proximate cause in the context of a legal malpractice claim, the plaintiff must show that but for the attorney's negligence, he would have achieved a more favorable result. *See Iocovello v. Weingrad & Weingrad, LLP*, 4 A.D.208 (1st Dep't 2004).

At bar, summary judgment in favor of Lupkin is warranted because Toussie has failed to establish that Lupkin deviated from the standard of care. *Kranis v. Scott*, 178 F. Supp. 2d 330, 334 (E.D.N.Y. 2002). First, Toussie's sole expert, Professor Ronald J. Colombo, a law school professor who was never a partner at a law firm and lacked hands-on experience handling multimillion

arbitrations with difficult clients like Toussie, concluded that all of the Defendants *collectively* failed to adhere to the New York Rules of Professional Conduct ("RPC") and, thus, are liable for malpractice. First, purported violations of the RPC cannot serve as a basis for a legal malpractice claim. *See In re Basic Food Group, LLC*, 2022 WL 3028677, at *6 (S.D.N.Y. July 29, 2022); *Drasche v Edelman & Edelman*, 201 A.D.3d 434, 435 (1st Dep't 2022). Second, even if Prof. Colombo's opinion is considered by the Court, his contention that all Defendants had a duty to more forcefully convince Toussie to abandon his steadfast refusal to settle, finds no support in any case law in New York. On the contrary, Lupkin's expert, Peter Mahler, Esq., an attorney with decades of real-world experience, confirmed that the standard of care is whether the attorney advised the client of his/her options with respect to settlement and let the client make the ultimate decision to settle or not. Mr. Mahler has opined that both Lupkin and W&C carried out their obligations to discuss the settlement offers extended to Toussie, give him their recommendation, and let him decide whether to settle or continue litigating. SUMF at ¶¶ 80, 81, 85-97, 100-109.

Summary judgment is also warranted because Toussie cannot establish "but for" causation. First, Toussie has not established that there was a "concrete" settlement offer contained in the Stabilis Letter that he would have accepted "but for" any alleged failure to advise by Lupkin. *See Judd Burstein, P.C. v. Long*, 797 Fed. App'x. 585, 588 (2d Cir. 2019). Beyond the overwhelming evidence that Toussie was well aware of the Stabilis Letter and rejected the proposal therein without hesitation, his current allegation, with the benefit of 20/20 hindsight -- that he now realizes that he should have settled -- also fails because the Stabilis Letter was not a "concrete" settlement offer. Second, the undisputed evidence proves that Toussie rejected an identical offer from Stabilis after he retained successor counsel to replace Lupkin and W&C – confirming that the terms of the Stabilis Letter, even if a deemed to be a "concrete" settlement offer, were not acceptable to him. SUMF at ¶¶ 120-122; *Cannistra v. O'Connor, McGuinness, Conte, Doyle, Oleson & Collins*, 286 A.D.2d 314, 315-16 (2d Dep't 2001).

Likewise, summary judgment on causation grounds is warranted due to Toussie's ability, but ultimate failure, to effectuate a settlement with Coastal/Fields and Stabilis *after* W&C and Lupkin were no longer representing him. This is not a case of a "lost" one-time settlement opportunity on the eve of trial. Here, the evidence confirms that the decision to enter Judgment against Fields/Coastal rather than accept the Stabilis Letter's terms, had no impact on Toussie's ability to settle his dispute. In fact, Toussie was presented with multiple settlement opportunities after the alleged rejection of the Stabilis Letter – offers made to successor counsel and to Toussie himself – all of which he rejected. SUMF at ¶¶117-121. This ability to settle after the alleged negligence vitiates any claim for malpractice. *Id. See Schutz v. Kagan Lubic*, 2013 WL 3357921, at *7 (S.D.N.Y. July 2, 2013), *aff'd*, 552 Fed. Appx. 79 (2d Cir. 2014); *Perks v. Lauto & Garabedian*, 306 A.D.2d 261 (2d Dep't 2003).

The third basis for summary judgment on causation grounds is collectability and arises from Toussie's admissions that there was no realistic possibility of recovering any money from Fields/Coastal. The fact that any settlement acceptable to Toussie was (and remains) uncollectable was confirmed by the settlement Toussie ultimately negotiated with Fields/Coastal in 2019 as Fields/Coastal immediately defaulted before the settlement closed. *See McKenna v. Forsyth & Forsyth*, 280 A.D.2d 79, 82-83 (4th Dep't 2001), *lv. denied*, 96 N.Y.2d 720 (2001). Discovery has confirmed that Fields/Coastal were and are judgment proof. SUMF at ¶¶ 117, 119, 120, 124. As Fields/Coastal's debt to Toussie remains uncollectible, Toussie's malpractice claim fails.

Respectfully submitted,

/s/ Brett A. Scher
Brett A. Scher

cc:  All counsel (via ECF)

4890-0065-8058, v. 1