UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 20-CV-5921 (RER) (TAM)

———————————

ROBERT I. TOUSSIE

VERSUS

WILLIAMS & CONNOLLY, LLP, JOSEPH G. PETROSINELLI, DAVID A. FORKNER, JONATHAN E. PAHL, LUMPKIN & ASSOCIATES, PLLC, AND JONATHAN D. LUPKIN

———————————
**MEMORANDUM & ORDER**
———————————

**RAMÓN E. REYES, JR., District Judge:**

This is a legal malpractice action. Defendants have moved to exclude plaintiff's proffered legal ethics expert from testifying at trial. (*See* ECF Nos. 138 and 142). Defendants argue that plaintiff's proffered expert is not qualified and that his opinions are unreliable or irrelevant. (ECF No. 139 ("W&C Mem.") at 9-25). Plaintiff opposes the motions. (See ECF No. 140 ("Pl. Opp'n")). After carefully reviewing the record, and for the reasons set forth herein, defendants' motions are granted, and plaintiff's proffered expert is excluded from testifying at trial.

## BACKGROUND

I.  Factual Background

This action stems from a business arrangement gone sour, the roots of which reach back to 2000 when plaintiff Robert I. Toussie ("Plainitff") and his brother Michael (collectively, "the Toussies"), invested $2.88 million in Coastal Development, LLC ("Coastal"), an entity run by Richard Fields ("Fields"). (Second Amended Complaint, ECF

1

No. 47 ("SAC") ¶¶ 14–15).[1] That investment supported Coastal's and Native American Development, LLC's development of "two Hard Rock branded casino projects in Florida on land belonging to the Seminole Tribe of Florida." (*Id.* ¶¶ 11–12). In return for their investment, the Toussies received an 11.7847% participation interest in the casinos. (*Id.* ¶¶ 14, 15–18). The casinos provided distributions of tens of millions of dollars to Fields and Coastal, but they did not in turn pay the participation interest to the Toussies. (*Id.* ¶ 22; Memorandum of Law in Support, ECF No. 139 ("W&C Mem.") at 4).

In the early 2000s, the Toussies hired Williams & Connelly, LLP, Joseph G. Petrosinelli, David A. Forkner, Jonathan E. Pahl ("W&C Defendants") to sue Coastal and Fields and recoup their participation interest. (SAC at ¶ 23; W&C Mem. at 4). That litigation resulted in a February 2006 settlement agreement "in which Coastal and Fields agreed to pay the Toussies more than $10.6 million constituting [participation] payments then due [].". (SAC at ¶ 24). The settlement agreement also contained a provision requiring all future disputes concerning the Toussies' participation payments be resolved through arbitration. (*Id.* at ¶ 23). Such an arbitration occurred in 2009 and resulted in an arbitral award of more than $27 million in the Toussie's favor. (W&C Mem. at 4; ECF No. 139-12, ¶ 9).

"In or about October 2015, Coastal and Fields stopped making [participation] payments to the Toussies." (SAC at ¶ 48). Thus, in November 2015, the Toussies initiated the litigation that gave rise to their claims in this case (the "Coastal Litigation") and thereafter hired the W&C Defendants and Lupkin & Associates, PLLC, Jonathan D.

---

[1] For a more thorough, albeit somewhat brief, recitation of the facts of the underlying business dispute, the Court refers the reader to Magistrate Judge Taryn A. Merkl's report and recommendation dated July 26, 2023. (ECF No. 113 ("Report and Recommendation")).

2

Lupkin, and Rebecca C. Smithwick ("Lupkin Defendants") to represent them. (SAC at ¶¶ 50-54). The 2015 Coastal Litigation led to arbitration and a roughly $7.5 million arbitral award in favor of the Toussies. (*Id.* at ¶¶ 55-104). Plaintiff alleges that before the $7.5 million arbitral award was converted to a judgment (W&C Mem. at 5), a significant secured creditor of Coastal and Field offered to settle the Coastal Litigation whereby the Toussies would receive monthly payments "in an amount not to exceed $41,470.56 per month" until April 2029. (*Id.* at ¶ 96; see also *id.* at ¶ 63, 91, 115). So, at that point in the Coastal Litigation, the Toussies confronted a choice of either accepting the proposed settlement or converting the $7.5 million arbitral award to a judgment and pursuing its enforcement. (*See* ECF No. 139-4). Defendants advised the Toussies on how to proceed with this choice (Pl. Opp'n at 9–12), and the Toussies chose to pursue conversion and enforcement of the arbitral award rather than settle the Coastal Litigation (SAC at ¶¶ 112–13; W&C Defendants' Rule 56.1 Statement Response, ECF. No. 139-3 ("W&C 56.1 Resp.") at ¶¶ 199–200). Defendants' advice and counsel in that regard is of what Plaintiff now complains as legal malpractice.

II.   Brief Procedural History

Plaintiff commenced the underlying legal malpractice action in New York State Supreme Court, Kings County on July 16, 2020. (State Court Summons, ECF No. 1, Ex. A). W&C removed the action to this Court on December 5, 2020. (Notice of Removal, ECF No. 1). After protracted litigation (*see* Report & Recommendation at 5–7), the Lupkin Defendants filed a motion to dismiss (ECF No. 55), and W&C Defendants filed a motion for summary judgment (ECF No. 69). Upon the recommendation of Magistrate Judge Taryn A. Merkl, and without objection from any party, the Court granted Defendants

motions in part and "(1) dismiss[ed] Plaintiff's legal malpractice claim insofar as it was styled as a failure to object to the arbitration award, as that claim has been abandoned; (2) dismiss[ed] Plaintiff's fiduciary duty claim as duplicative; and (3) den[ied] the motions as to Plaintiff's negligent advice claim. . .." (ECF Court Order Adopting Report and Recommendation dated 08/11/2023).

Following the close of discovery (ECF No. 122), Defendants filed pre-motion conference letters for anticipated summary judgment motions as to Plaintiff's remaining claims. (ECF No. 123, 127). In the interim, the case was reassigned to the undersigned. (See Order dated 12/20/23). After reviewing the papers, this Court determined that a pre-motion conference was unnecessary and directed Defendants to commence motion practice on the discrete issue of excluding Plaintiff's proffered legal ethics expert. (ECF Order Dated 03/05/2024).[2] Defendants' motions to exclude were filled, fully briefed, on May 17, 2024. (ECF Nos. 138-144).

III. Plaintiff's Proffered Expert

To prove his malpractice claim, Plaintiff proffers Professor Ronald J. Colombo as an expert "in the field of legal ethics and the practice of law." (W&C Defs.' Mot., ECF. 139-2, Ex. 1 ("Prof. Colombo Report")). Prof. Colombo offers his opinion based on the expertise he developed through his legal education at New York University Law School, his practical experience as an associate at Sullivan & Cromwell and then as in-house counsel at Morgan Stanley & Co. Inc., and through his scholarly work as a law professor at the Maurice A. Deane School of Law at Hofstra University ("Hofstra Law"). (Prof. Colombo Report at 4–5; Pl. Opp'n at 12). Plaintiff and Prof. Colombo both emphasize

---

[2] The Court held the proffered summary judgment motions in abeyance pending its decision on the motions to exclude. (ECF Order Dated 03/05/2024).

4

Prof. Colombo's prior three-year experience as a member of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York ("New York City Bar Ethics Committee") some twenty years ago, and his most recent law review article, *Duties Regarding Duties*. (Prof. Colombo Report at 4–5; Pl. Opp. at 12–13). Upon further inspection, the Court also notes that since 2006 Prof. Colombo has taught several courses at Hofstra Law, served as a faculty advisor to student organizations and academic programs for students desiring to concentrate in business law, and published at least fifteen law review articles, two books, and contributed to at least two other books. (Prof. Colombo Report, App. C). The vast majority of Prof. Colombo's academic work has focused on corporate law, the law of religious liberty, and the interactions of the two. (*Id.*) Virtually none of his experience involves legal ethics, either generally or specifically.

Prof. Colombo opens his report with a quote encapsulating his view that W&C Defendants and Lupkin Defendants failed to properly advise Plaintiff as to the purported settlement, "What we've got here is failure to communicate."[3] (Prof. Colombo Report at 2). Prof. Colombo then goes through his analysis of how Defendants, especially W&C Defendants, fell short of the obligations set by five rules of the New York Rules of Professional Conduct: Rules 1.0, 1.4, 1.14, 1.16, and 2.1. (Prof. Colombo Report at 5–15). W&C Defendants, Prof. Colombo argues, fell short of these rules in three ways: (1) "defendants did not conduct themselves with the ordinary and reasonable skill and knowledge commonly possessed by a member of the legal profession in undertaking their representation of Plaintiff" (Prof. Colombo Report at 17); (2) failing to properly advise

---

[3] COOL HAND LUKE (Warner Bros. 1967).

5

Plaintiff on the consequences of pursuing a strategy of judgment enforcement against Fields and Coastal rather than accepting a settlement offer (*id.* at 18-33); and (3) terminating W&C's representation without proper notice (*id.* at 33-35). Prof. Colombo opines that the Lupkin Defendants fell short of their ethical obligations only for failing to properly advise Plaintiff but not for problematic conditions surrounding their retention and withdrawal. (Prof. Colombo Report at 18–33; Colombo Deposition, ECF No. 139, Ex. 7 ("Colombo Dep.") at 191:5–195:10) These failures led Prof. Colombo to conclude that Defendants did not act with the "ordinary and reasonable skill and knowledge" of a member of the legal profession. (Prof. Colombo Report at 35–37).

IV. <u>Defendants' Motion to Exclude</u>

Defendants challenge the admissibility of Plaintiff's sole expert witness at all three prongs of the *Daubert* analysis. (*See generally* W&C Defs.' Mem.). They argue that Prof. Colombo is not qualified because he has never held himself out as an expert in the practice of law or taught a legal ethics class, does not have a specialized education in legal ethics, and failed to demonstrate mastery of New York's ethical rules in his own report. (*Id.*) Defendants then argue that Prof. Colombo's opinions are unreliable because they are unmoored from the underlying record, employ speculation, and misinterpret legal ethics opinions. (*Id.* at 17–22). Defendants lastly argue that Prof. Colombo's opinions on W&C Defendants "engagement and withdrawal" are irrelevant because Plaintiff never alleged such harms in any of his complaints nor that such harms caused any damages. (*Id.* at 24).

Plaintiff opposes Defendants' motion by arguing that Prof. Colombo is qualified, and that Defendants arguments are "strawmen" logical fallacies. (Pl.'s Opp'n at 16–25).

6

Plaintiff avers that Prof. Colombo is qualified because he is an expert on the specific ethics rules at issue in this case, such as Rule 1.4 and 2.1. (*Id*. at 20). Plaintiff then argues that it is Defendants' arguments that are irrelevant because they build five strawmen to attack Prof. Colombo but fail to rebut his actual opinions. (*Id*. at 22–25). The Plaintiff bears the burden of proving that his proffered expert witness will be helpful to a jury. Plaintiff, here, has failed to convince this Court that Prof. Colombo will do so.

### DISCUSSION

I. Legal Standard

The determination of whether testimony is admissible as an expert opinion is multi-factored and flexible, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94 (1993), and a trial judge has "considerable leeway" in determining whether to admit expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). *See also United States v. Jones*, 965 F.3d 149, 161–62 (2d Cir. 2020) (district court's decision to admit or exclude expert testimony is reviewable for abuse of discretion and will be overturned only where decision was "manifestly erroneous.")

The determination of whether to admit expert testimony is guided by Rule 702 of the Federal Rules of Evidence. *E.g., United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021). Rule 702 requires a proponent to establish by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *United States v. Raniere*, No. 18-CR-204-1 (NGG) (VMS), 2019 WL 2212639, at *6 (E.D.N.Y. May 21, 2019) ("The burden is on the party proffering the expert to demonstrate that the expert testimony is admissible by a preponderance of the evidence.") (citing *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).

In considering Rule 702's application, the court must determine if: (1) the witness is qualified to testify as an expert on a particular matter, (2) the opinion is based on reliable data and methodology, (3) the expert's testimony is relevant to the matter, and (4) the expert's testimony complies with Fed. R. Evid. 403. *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-cv-209 (KAM)(SIL), 2022 WL 4357555, at *10 (E.D.N.Y. Sept. 20, 2022); *Glowczenski v. Taser Intern., Inc.*, No. 04-CV-4052 (SJF) (WDW), 2012 WL 976050, at *4 (E.D.N.Y. Mar. 22, 2012) (citing *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).

The Supreme Court has made clear that under Rule 702 district courts play a "gatekeeping" function: they are charged not only with ensuring that proffered witnesses are experts within the meaning of the Rule, but also that their "testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). And "the gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). "The decision whether to admit or exclude a proposed expert's testimony is committed to the Court's broad discretion." *Kogut v. Cnty. of Nassau*, 894 F. Supp. 2d 230, 239 (E.D.N.Y. 2012); *see also Kumho Tire Co.*, 526 U.S. at 152.

8

II. <u>Prof. Colombo Is Not A Legal Ethics Expert</u>

A court must first determine if a proffered expert is qualified by their "specialized knowledge, skill, experience, training, or education." *Brown v. Mermaid Plaza Assocs., LLC*, 13-CV-760 (AMD) (CLP), 2016 WL 5802779, at *6 (E.D.N.Y. July 20, 2016), *adopted by* 2016 WL 5716414 (Sept. 30, 2016) (citing *Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)). A court makes that determination by comparing "the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Hamraz v. Diversified Maint. Sys., LLC*, 18-CV-1864 (RER), 2023 WL 5200282, at *3 (E.D.N.Y. Aug. 14, 2023) (citing *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)). The witness's expertise should be "closely related" to the area of the proffered opinions. *Id*. (quoting *In re M/V MSC FLAMINIA,* No. 12 Civ. 8892, 2017 WL 3208598, at *4 (S.D.N.Y. July 28, 2017)).

Defendants argue that Prof. Colombo (1) lacks relevant experience, (2) lacks relevant education or training, (3) has too limited ethics-related experience, and (4) lacks relevant knowledge of the ethical rules themselves, and therefore is not qualified to testify as an expert in legal ethics. (W&C Defs.' Mot. at 9–16). While Plaintiff argues that Prof. Colombo has a wealth of practical experience to draw from, Defendants emphasize the fact that Prof. Colombo was never considered a legal ethics expert in any of those previous positions. Indeed, Prof. Colombo had to seek advice from others on legal ethics, never represented or advised his own clients, never taught a legal ethics course, is not a member of his own institution's legal ethics center—the Freedman Institute for the Study of Legal Ethics—and has only taken basic, introductory level courses and trainings on legal ethics. (*Id*. at 10–13).

Plaintiff argues that Defendant construes Rule 702's qualification requirement too narrowly. (Pl. Opp'n at 21). Prof. Colombo is qualified, according to Plaintiff, because his experiences in private practice, as in-house counsel, and as a law professor all contribute to his expertise. (*Id*. at 20). Indeed, Prof. Colombo's recent article on corporate legal ethics analyzed Rules 1.4 and 2.1. (*Id*.) Plaintiff then argues that Defendants failed to address Prof. Colombo's opinions but rather constructed five "strawmen" arguments that cherry pick statements from Prof. Colombo's report but fail to address his substantive arguments. For example, Plaintiff avers that Defendants incorrectly argued that Prof. Colombo relied on ABA Opinion 500 when Prof. Colombo stated that he was drawing from the underlying principles of that opinion. Considering the parties arguments and their evidentiary submissions, the Court finds that Professor Colombo is not qualified as an expert in legal ethics and the practice of law.

Prof. Colombo does not meet the requirements to be qualified as a legal ethics expert. His education, training, and practical experience all fail to distinguish him from other lawyers who only possess a general knowledge of legal ethics. First, Prof. Colombo is not a legal ethics expert by means of education or training. One professional responsibility course, one training for law firm associates, one training for FINRA arbitrators, and a three-year members on a local bar ethics committee constitute Prof. Colombo's education and training in legal ethics. (Prof. Colombo Dep. at 25:13–27:3).[4] This is insufficient to qualify one as an expert. *See Cicero v. Borg-Warner Automotive, Inc.*, 163 F. Supp. 2d 743, 748 (E.D. Mich. 2001) (rejecting a proffered expert who was a law professor and taught six different classes but failed to provide information that he

---

[4] The cases on which Plaintiff relies do not convince the Court otherwise.

"maintain[ed] an up-to-date expertise in any of them."). Here too, Plaintiff failed to show that Prof. Colombo has developed, much less maintained, an expertise in legal ethics. Prof. Colombo also cannot develop expertise through reading the case materials and treatises on legal ethics and professional responsibility. *See Watkins v. Frito-Lay, Inc.*, 2023 WL 11909257, at *10 (N.D. Ga. Mar. 31, 2023) ("Given Dr. Batra's lack of training, education, and experience…he relied heavily on scientific literature to support his opinion on general causation. That itself is problematic.") (citing *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) and *Trilink Saw Chain LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008)).

Second, Prof. Colombo's professional experience is insufficient. As an associate or in house counsel he did not represent a single client in any case, much less a malpractice action, and never advised a client or peer on issues of legal ethics and professional responsibility. (Prof. Colombo Dep. at 18:6–19:20; 107:5–23). As a professor, Prof. Colombo has never taught a course in legal ethics, and neither of his published books or book chapters addresses legal ethics. (ECF 139-2, Appendix C ("Prof. Colombo CV"); Colombo Dep. at 22:11–22; 23:19–25:12; 27:4–16). Indeed, he is not even a member of his own institution's Freedman Institute for the Study of Legal Ethics. (Prof. Colombo Dep. at 22:23–23:5). Put simply, Prof. Colombo's academic expertise is in corporate and securities law, while laudable, has with no overlap with legal ethics. (*See* Prof. Colombo CV). His recent law article, *Duties Regarding Duties*, does not qualify him either. In fact, it furthers the argument that Prof. Colombo is only familiar with the world of corporate and securities law because the article instructs its readers on how to best advise members of institutional corporate boards not attorneys facing ethical legal questions or malpractice

11

actions. (ECF No. 139-10; Colombo Dep. at 40:9–45:18). Prof. Colombo therefore lacks the education, training, and experience to qualify him as an expert in legal ethics and professional responsibility. This lack of expertise manifests itself in Prof. Colombo's unreliable and irrelevant opinions.

III. Prof. Colombo's Opinions Are Irrelevant and Unreliable

Even were the Court to consider Prof. Colombo a qualified expert in legal ethics and professional practice, his testimony would have to be excluded as his opinions are irrelevant and unreliable.

When considering the admissibility of expert testimony under Rule 702, "the focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. However, the court does not have to admit expert testimony where there exists "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citation omitted). Also, the court need not admit expert testimony that is irrelevant. *Gatto*, 986 F.3d at 117; *Binns-Harty-Bolt v. McDonough*, 21-CV-7276 (PAE) (BCM), 2024 WL 4817253, at *2 (S.D.N.Y. Nov. 18, 2024) ("Expert evidence that is not relevant to a party's claims or defenses is inadmissible and may be excluded prior to trial.") (citing *Daubert v. Merell Dow Pharmaceutircals, Inc.*, 509 U.S. 579, 597 (1993)).

A. Prof. Colombo's Opinions Regarding Defendants Engagement and Withdrawal are Irrelevant

Defendants argue Prof. Colombo's opinions regarding their engagement and withdrawal as the Toussies'[5] counsel are irrelevant as "[n]either the SAC nor any of the

---

[5] In his report, Prof. Colombo posits that W&C Defendants' dislike of Plaintiff led them to place conditions on their continued representation which they failed to disclose to Plaintiff (Prof. Colombo Report at 16–17),

12

Toussie's prior two complaints even mentioned purportedly improper circumstances of W&C's engagement or withdrawal, much less challenged them as malpractice." (W&C Mem. at 24). Plaintiff does not appear to respond to this argument. (*See* Pl.'s Opp'n at 22–25). Regardless, the Court agrees that this is an irrelevancy. The circumstances surrounding Defendants entry and exit as the Toussies' counsel has nothing whatsoever to do with their alleged malpractice during their service as counsel.

Plaintiff brings this action complaining of receiving harmful legal advice. (SAC at ¶¶ 110–138). Neither W&C Defendants' retention or withdrawal caused them to provide Plaintiff with the complained of advice. Plaintiff has not shown that the conditions surrounding his retention of W&C Defendants caused them to not more vehemently advise him against pursuing judgment enforcement. Plaintiff, instead, alleges that W&C Defendants did not properly calculate "the value or collectability of the Judgment." (*Id*. at ¶ 111). W&C Defendants' withdrawal could not have caused the alleged harm, because the alleged harm was already committed and completed by the time W&C Defendants withdrew their representation of Plaintiff. Prof. Colombo therefore failed to show how the substance of W&C Defendants' advice was caused by the conditions surrounding their retention and withdrawal.

B. Prof. Colombo's Opinion Regarding <u>Defendants' Legal Advice Is Unreliable</u>

Prof. Colombo failed to use a reliable methodology to provide his opinions and also included speculation as to factors contributing to the breakdown in Plaintiff and W&C Defendants attorney-client relationship. Because Prof. Colombo used unsupported

---

and that W&C Defendants' withdrawal prejudiced Plaintiff because it was made to be effective immediately without notice or prior discussion to possibly avoid withdrawal (*id*. at 33–34).

methodologies—or lacked a clear methodology—the Court finds that his opinions are unreliable and inadmissible.

Prof. Colombo describes the "Relevant Legal Standards and Principles" in Part II of his report. (Prof. Colombo Report at 5). There he states that an "important factor" in determining if a defendant committed legal malpractice is the "degree to which defendants' conduct during their representation…adhered to the applicable standards of professional conduct" and lists Rules 1.0, 1.14, 1.16, and 2.1 (Prof. Colombo Report at 5). Prof. Colombo "supplement[ed]" those standards with his own personal experience. (*Id*. at 6).

Defendants argue that such a methodology is unreliable because it is not supported by the record, involves speculation, and rests on insufficient facts and data. (W&C Defs.' Mot. at 16–22). Among other things, W&C Defendants highlight Prof. Colombo's use of ABA Opinion 500 and Rule 1.14 to show that his methodology veers far from that of legal ethics experts. (W&C Defs.' Mot. at 21–22). Lastly, W&C Defendants argue that Prof. Colombo failed to demonstrate, beyond conclusory statements, how his personal experience informed his expert opinions. (W&C Defs.' Mot. at 22–24).

Plaintiff responded by arguing that W&C Defendants used the logical fallacy of strawman arguments to paint Dr. Colombo's opinions as unreliable. (Pl. Opp'n at 22–25). The burden of proof, however, is on the plaintiff, and Plaintiff, here, failed to provide an affirmative case for why Prof. Colombo's methodology was reliable by a preponderance of the evidence.

The Court thus agrees with W&C Defendants and finds Prof. Colombo's report to be unreliable for three reasons. *First*, Prof. Colombo does not provide a reliable

14

methodology. Prof. Colombo focuses on the standard of the "ordinary and reasonable skill of a member of the legal profession," but this is only the standard for determining if an attorney's conduct was negligent. Indeed, the violation of an ethical rule alone does not constitute a breach of fiduciary duty, much less malpractice. *Yang v. Pagan Law Firm, P.C.*, 75 Misc.3d 757, 760 (N.Y. Sup. Ct., N.Y. Cty 2022) (citing *Guiles v. Simser*, 35 A.D.3d 1054, 1056 (2006) and *Weintraub v. Phillips, Nizer, Benjamin, Krim & Ballon*, 172 A.D.2d 254 (1991)) (citations omitted); *Jiau v. Hendon*, No. 12 Civ. 7335 (PAE), 2014 WL 559004, at *6 (S.D.N.Y. Feb. 12, 2014) (collecting New York state cases); s*ee also* Restatement (Third) of the Law Governing Lawyers § 52(2). Under New York law, a malpractice action has four elements: (1) an attorney-client relationship existed giving rise to a duty of care; (2) the attorney breached the duty of care; (3) the attorney's negligence proximately caused the plaintiff's loss; and (4) the claimant sustained actual and ascertainable damages. *Id*. at 760 (citing *AmBase Corp. v. Davis, Polk & Wardwell*, 8 N.Y.3d 428 (2007) (citation omitted). Prof. Colombo's report therefore risks misleading a jury to believe that the violation of an ethical rule alone can constitute malpractice or a breach of fiduciary duty. Thus, both Rule 702 and Rule 403 counsel this Court to exclude Prof. Colombo's report for failure to provide a reliable methodology.

*Second*, Prof. Colombo makes several speculative leaps throughout his report. The Court finds Professor Colombo's uses of ABA Opinion 500 ("Op. 500"), Rule 1.4, and Rule 1.14 to both require speculation. Indeed, Op. 500 is not only interpreted incorrectly, it is inapplicable because it was not in effect until 2021—years after Defendants withdrew their representation. As to Rules 1.4 and 1.14, Prof. Colombo ignores the plain language of both and attempts to impugn Defendants through those rules' underlying principles.

Prof. Colombo's use of such purported principles however is without legal authority and therefore speculative.

The Court also finds Prof. Colombo's musings that Plaintiff was an "atypical" client for W&C Defendants to be speculative. Prof. Colombo primarily bases his atypicality allegation on the fact that Petrosinelli's Federal Elections Commission's disclosures reveal that he donated to Joe Biden's campaign, (Prof. Colombo Report at 16), and that Plaintiff stated his support for Donald Trump, routinely made brash comments and references, and comes from the Long Island real estate industry. (Prof. Colombo Report at 16, 27). Petrosinelli, therefore, experienced a culture clash that prevented him from properly retaining and communicating with Plaintiff as required by the New York Rules of Professional Conduct. Prof. Colombo concedes, however, that he is not aware of a "typical" client for W&C Defendants nor is he aware of several attorneys in leadership positions within W&C who worked in the Trump administration. (Prof. Colombo Report at 27; Colombo Dep. at 93:22–111:9). Even more, Prof. Colombo concedes to using speculation in this portion of his report. (Colombo Dep. at 94:2–94:7) ("I speculate in my opinion based on the record and based on what I know about attorneys and based on how Mr. Toussie comes across in his deposition[.] I speculate that he's not the most typical person that most of the Williams & Connolly attorneys typically deal with."). Prof. Colombo also failed to show that researching an individual's political donations to learn if an attorney has a different political ideology than their client is an accepted or newly innovative method used by legal ethics experts to support a malpractice claim. For these reasons, the Court deems Prof. Colombo's allegation that Plaintiff was an "atypical" client for W&C Defendants to be speculative and inadmissible.

*Third*, Prof. Colombo's report conflicts with Plaintiff's own admission.[6] In his report, Prof. Colombo asserts that W&C Defendants failed to emphatically advise Plaintiff to settle rather than pursue judgment enforcement. In his report, however, Prof. Colombo quotes an email written by Plaintiff stating that Defendant Petrosinelli's "response to me is, and always had been, settle." Prof. Colombo attempts to downplay Plaintiff's statement by relying on Michael Toussie stating in his deposition that he believed Plaintiff was "exaggerating." Those attempts are futile and devoid of supportive evidence. Indeed, Prof. Colombo's report also includes a May 3, 2017 email in which Defendant Pahl describes both options and states that the option for settlement "provides a clearer path forward." To be sure, departures from the factual record go to the weight of the evidence rather than admissibility. Still, the Court finds that Prof. Colombo's factual errors in combination with his unreliable standard of care and use of speculation together warrant his proffered expert testimony to be stricken and deemed inadmissible in its entirety.

\* \* \*

In sum, the Court finds that Prof. Colombo is not qualified as an expert on legal ethics and the practice of law, and that his specific opinions in this case are irrelevant, unreliable, and therefore inadmissible. Defendants' motions are granted.

---

[6] The Court notes that Prof. Colombo was only provided a "Statement of Assumed Facts" but not the 56.1 Statement on which to base his opinions. His opinions are therefore even weaker as they did not adequately account for which facts are truly undisputed by *all* parties.

17

## **CONCLUSION**

For the reasons set forth above, Defendants' motions to exclude the testimony of Plaintiff's proffered legal ethics expert are granted.

SO ORDERED.

Hon. Ramón E. Reyes, Jr. Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.09.30 16:33:03 -04'00'

_____
RAMÓN E. REYES, JR.
United States District Judge

Dated: September 30, 2025
       Brooklyn, New York